UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

KENNETH S. MITCHELL,       )
          )
        Plaintiff,    )
          )
      v.       )    C.A. No. 06-
          )
WACHOVIA CORPORATION, t/a   )    JURY TRIAL DEMANDED
  WACHOVIA SECURITIES,    )
WACHOVIA SECURITIES, L.L.C.,   )
WACHOVIA SERVICES, INC.,    )
WACHOVIA BANK OF DELAWARE,  )
  N.A.,        )
TODD D. GAUTHIER,      )
LYNN G. MEYER,       )
CAROLYN J. BEAM, and     )
DOROTHY A. DIFEBO,     )
          )
      Defendants.   )

## COMPLAINT

### The Parties

1.    Plaintiff Kenneth S. Mitchell is a citizen of, and resides in, the State of Delaware.

2.    Defendant Wachovia Corporation is an entity organized under the laws of the State of North Carolina which trades under the name "Wachovia Securities" and which engages in the banking, securities, and investment counseling services in Delaware.

3.    Defendant Wachovia Securities, L.L.C. is an entity organized under the laws of the State of Delaware which engages in the banking, securities, and investment counseling business in Delaware.

4.    Defendant Wachovia Services, Inc. is an entity organized under the laws of the State of Delaware which engages in the banking, securities, and investment counseling business in Delaware.

5.    Wachovia Bank of Delaware, N.A., a subsidiary of Wachovia Corporation, is an entity organized under laws of the State of Delaware which engages in the banking, securities, and investment counseling business in Delaware.

6.    Defendants Wachovia Corporation, Wachovia Securities, L.L.C., Wachovia Securities, Inc., and Wachovia Bank of Delaware, N.A. shall be referred to collectively as "Wachovia" unless otherwise specified individually.

7.    Defendant Todd D. Gauthier resides at 2660 Bethany Church Road, Alpharetta, Georgia 30004.  Defendant Gauthier was an employee of Wachovia at all times relevant to the allegations in the complaint, and he was formerly the Regional Sales Manager for Wachovia in charge of Wachovia's Delaware branch offices, including the "Prices Corner" and "Capitol Trail" branch offices at which plaintiff has worked.

8.    Defendant Lynn G. Meyer resides a 125 Bells Walk Court, Holly Springs, North Carolina 27540.  Defendant Meyer was an employee of Wachovia at all times relevant to the allegations in the complaint, and she is a Regional Bank Director for Wachovia.

9.    Defendant Carolyn J. Beam resides at 9 Sadsbury Lane, Gap, Pennsylvania 17527.  Defendant Beam was an employee of Wachovia, serving as a Financial Services Leader, until she left the company in 2005.

10.    Defendant Dorothy A. DiFebo resides at 17 Champlain Avenue, Wilmington, Delaware 19804.  Defendant DiFebo was an employee of Wachovia at all times relevant to the allegations in the complaint, and she remains the manager of Prices Corner.

## Jurisdiction and Venue

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as well as under 42 U.S.C. §§1981, 1985, 1986, 1988, and 2000e.  Supplemental jurisdiction over the related state law claims asserted in this Complaint is based on 28 U.S.C. §1367.

12.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

## Wachovia's Structure and Employees

13.    In August 2002, plaintiff, an African-American male, was hired by Wachovia as a Financial Adviser.  Plaintiff was initially assigned to work out of Capitol Trail and Prices Corner.  These two offices were within minutes of each other on Kirkwood Highway between Wilmington, Delaware and Newark, Delaware.

14.    Prices Corner had client deposits in an amount that was roughly double that of Capitol Trail.  At the times during which the discriminatory conduct to be described below occurred, Prices Corner had approximately $57 million in client deposits as opposed to about $27 million in client deposits at Capitol Trail.

15.    In general, a branch with higher client deposits presents a Financial Advisor with greater opportunities for professional development and success than a branch with lower client deposits.

16.    The Wachovia chain of command at Prices Corner and Capitol Trail was divided into two hierarchies: banking and securities.

17.    Plaintiff, a Financial Advisor, worked in the securities aspect of Wachovia's activities.

18.    Defendant Gauthier was Wachovia's Regional Sales Manager and, as such, he was in charge of the securities aspects of branch offices in which plaintiff worked.  Defendant

Gauthier was plaintiff's direct supervisor although he worked out of an office in Pennsylvania and rarely traveled to Delaware.

19.    Defendant Meyer was Wachovia's Regional Bank Director and, as such, she was in charge of the banking aspects of the branch offices in which plaintiff worked.

20.    Defendant Beam was a Wachovia Financial Services Leader who reported to defendant Meyer.  Defendant Beam directly supervised other Wachovia employees, including Financial Specialist Ladan Amini, who worked with plaintiff.

21.    Defendant DiFebo was the Bank Branch Manager for Prices Corner, and as such she was in charge of the banking aspects of business at Prices Corner.  Defendant DiFebo had authority over the day-to-day workings of the branch including the handling of personnel matters between employees.

22.    Among the Wachovia employees reporting to defendants Beam and/or DiFebo was Ladan Amini, a Financial Specialist at Prices Corner.  As part of her normal job duties, Ms. Amini referred clients to plaintiff, a Financial Advisor, for advice on financial services available through Wachovia Securities.

23.    At all times relevant to the allegations in this action, plaintiff was the only black male Financial Advisor with Wachovia in the State of Delaware.

24.    At all times relevant to the allegations in this action, plaintiff worked exclusively with female employees with respect to his interactions with Wachovia's banking section.  All of the clients plaintiff came into contact with through Wachovia's banking section came from Ms. Amini, who worked in a branch managed by Ms. DiFebo, and whose next two level supervisors were Ms. Beam and Ms. Meyer.

<u>Discriminatory and Hostile Work Environment</u>

25.     Plaintiff commenced work at Prices Corner and Capitol Trail in about August 2002.  As a Financial Advisor, plaintiff engaged in investment and financial services advice for Wachovia's clients.  In addition to bringing new clients to Wachovia, plaintiff would receive referrals of existing clients from Wachovia Financial Specialists such as Ms. Amini.  To a large degree, plaintiff's ability to succeed as a Financial Advisor with Wachovia was dependent upon receiving referrals of Wachovia's existing clients.

26.     Plaintiff split his time between Prices Corner and Capitol Trail, but, as time passed, he spent more time at Prices Corner.  Plaintiff was required to achieve certain production goals set by Wachovia management.  The goals differed from branch to branch and, for plaintiff, they were higher at Prices Corner due in part to the higher level of client assets at that branch.

27.     Following the first few months of his start with Wachovia, plaintiff met or exceeded his target goals for production at both Prices Corner and Capitol Trail.  For some period of time, plaintiff ranked third of twenty seven Financial Advisors in the region in terms of production.  Plaintiff was motivated, working hard, and looking forward to a bright and successful future with Wachovia.

28.     Also in his first months with Wachovia, plaintiff had experienced cordial, if not actually friendly, working relationships with Ms. Amini and Ms. DiFebo.  As he worked on a day-to-day basis almost exclusively with women, and as he was the only African-American male Wachovia Financial Advisor in Delaware, plaintiff perceived a somewhat chilly work atmosphere and a reluctance by the female defendants to accept him as part of the Wachovia "team."

29.     In particular, the Prices Corner manager, defendant DiFebo, with whom plaintiff was in contact on a nearly daily basis, rarely spoke to plaintiff, often glared at him, and in general gave him the impression that he was not welcome in her branch.  Plaintiff noticed that Ms. DiFebo's relationship and interactions with Ms. Amini were much warmer and cordial.

30.     In or about May 2003, Ms. Amini scheduled a meeting with an existing client who had substantial funds (in excess of $400,000.00) in accounts with Wachovia.  Plaintiff met the client and scheduled follow up appointments to address various investment opportunities that would be beneficial to the client.

31.     On or about June 20, 2003, at a meeting attended by the client, Ms. Amini, and plaintiff, the client expressed displeasure at a $6.00 charge on a mutual fund statement.  Plaintiff asked Ms. Amini if Wachovia could delete the charge and she replied that such a change was not possible.   Plaintiff offered to personally reimburse the client $6.00, and he even called Wachovia's Operations Manager to arrange the transaction.  Ms. Amini expressed anger towards plaintiff for offering such an unconventional solution to a problem, but plaintiff was merely attempting to satisfy a client who had been a client for more than 40 years and who had substantial accounts with Wachovia.

32.     Approximately one week later, on or about June 26, 2003, plaintiff called Ms. Amini to discuss Ms. Amini's purchase of an annuity for a Wachovia client.  Plaintiff was concerned that a disproportionate amount of the client's funds (in excess of 70%) were invested in annuities, thereby making the funds subject to penalties if amounts had to be withdrawn early.  Ms. Amini became angry at plaintiff, and she contacted her supervisors to make complaints about plaintiff.

33.    On or about July 9, 2003, plaintiff received a telephone call from defendant Meyer in which she accused plaintiff of acting improperly towards Ms. Amini in connection with the annuity incident.  Defendant Meyer also criticized plaintiff for his handling of the $6.00 client reimbursement incident even though he had saved a valuable client.  It was apparent that Ms. Meyer was criticizing plaintiff without knowing the details of both incidents and without even asking for his side of the story.

34.    In addition to criticizing plaintiff, defendant Meyer contacted Frank Consalo, the manager above defendant Gauthier (two levels above plaintiff), reporting the allegations against plaintiff.  That lead, on or about July 16, 2003, to plaintiff receiving a telephone call from defendant Gauthier, his direct supervisor.

35.    In that conversation, defendant Gauthier accused plaintiff of making an ethnic slur against Ms. Amini, an individual of Iranian descent.  Plaintiff asked defendant Gauthier where this accusation had originated, and defendant Gauthier replied that he had learned of the accusation from defendant Beam who had purportedly heard it from defendant DiFebo who had purportedly heard it from Ms. Amini.

36.    When asked about the alleged ethnic slur, Ms. Amini denied that the incident had ever occurred, and confirmed that there had simply been a misunderstanding of an entirely innocuous nature.  Notwithstanding the denial of the incident from the alleged victim, no one bothered to apologize to plaintiff for spreading a false and malicious rumor even though that rumor had been spread by management personnel themselves.

37.    On or about July 24, 2003, plaintiff received a telephone call from Marti Michalec, of Wachovia Human Resources, concerning the incidents described above.  Ms. Michalec did not apologize, but she conceded that defendant Gauthier had jumped the gun and

had not checked the facts before accusing plaintiff of misconduct.  Ms. Michalec concluded the conversation by saying that defendant Gauthier would be speaking to him shortly.

38.    On or about July 31, 2003, defendant Gauthier came to plaintiff's office and apologized for the incident involving the alleged slur against Ms. Amini.  He admitted that he had spoken too soon, without checking the facts, and he broke down into tears and said that plaintiff should not leave Wachovia.

39.    About one week later, on or about August 5, 2003, defendant Gauthier again came to plaintiff's office and asked him not to leave Wachovia.  It was apparent that his true concern was not about plaintiff, however, because he told plaintiff that if plaintiff left Wachovia, defendant Gauthier might lose his job.  Defendant Gauthier broke down into tears again. Plaintiff stated that he did not know why these false accusations were being brought against him because his production numbers were exceeding goals and there was no reason for any discontent with him.

40.    On or about August 25, 2003, plaintiff spoke again with Ms. Michalec and reiterated his concerns that false and malicious accusations were being brought against him.  He raised concerns that defendants Gauthier, Beam, and Meyer had acted without full knowledge of the facts and without even stopping to consider his position.  By now, the environment at Prices Corner was distinctly hostile.

41.    By way of contrast, plaintiff experienced no such problems at Capitol Trail. Plaintiff was accepted by the employees at that branch, and he had good working relationships with them.  Plaintiff's work ethic and methods did not change when he traveled between branches (they were less than one mile apart), and he perceived that his problems at Prices Corner were due to discriminatory practices engaged in by the individual defendants.

42.    On or about September 4, 2003, plaintiff met with defendant Gauthier.  Plaintiff expressed concerns that he perceived a hostile environment at Prices Corner, despite his excellent production numbers and despite his lack of any such problems at the Capitol Trail branch.  At no time did defendant Gauthier state that the motives of the other individual defendants would be investigated by Wachovia, and he completely ignored the fact that plaintiff faced an entirely benign environment at Capitol Trail.  Plaintiff was frustrated by the blatantly disrespectful and discriminatory atmosphere at Prices Corner and Wachovia management's refusal to do anything about the situation.

43.    Following the June and July 2003 incidents with Ms. Amini, plaintiff received fewer referrals of business from her.  Until July 2003, in excess of 60% of plaintiff's business was generated at the Prices Corner office with the balance being generated at Capitol Trail.  Ms. Amini was the only Financial Specialist at Prices Corner, and apparently neither she nor her supervisors, the female individual defendants, had any inclination to correct their discriminatory conduct towards plaintiff.  As a result, plaintiff's production figures at Prices Corner began to slip.  Plaintiff's income was tied directly to his production, so he suffered direct financial harm through the discriminatory conduct of the individual defendants.

44.    In September 2003, plaintiff had several meetings with defendant Gauthier and Mr. Consalo who was defendant Gauthier's supervisor.  Despite the possible adverse economic ramifications to him, plaintiff had expressed interest in leaving Prices Corner and accepting a position with Wachovia's "Wealth Management" office in Wilmington, Delaware.

45.    In early October 2003, Marti Mihalic of Wachovia's human resources department, told plaintiff that he "no longer had to worry about Lynn Meyer."  Also around that time, defendants Gauthier and Beam apologized to plaintiff for making the accusations against him

several months earlier.    Notwithstanding the verbal apologies, no actual changes were implemented by Wachovia and plaintiff's relationships with other employees, and the overall atmosphere at Prices Corner, remained exactly the same.

46.    In late October 2003, Mr. Consalo and defendant Gauthier informed plaintiff that he would not be receiving the transfer to the "Wealth Management" office.    There was some discussion of moving plaintiff out of Prices Corner to another office, but no action was taken. Plaintiff mentioned that he intended to follow up with Wachovia's human resources department about the underlying problems at Prices Corner.

47.    On or about October 31, 2003, plaintiff spoke to a human resources representative about the discriminatory and wrongful conduct he was experiencing at Prices Corner, and he expressed dissatisfaction with the fact that human resources and management had, to date, done nothing to correct the problem other than  to contemplate moving him to a different office.

48.    On or about November 17, 2003, plaintiff received a letter from Wachovia human resources stating that it was Wachovia's practice to maintain confidentiality concerning any actions taken with respect to the employees who had engaged in the discriminatory conduct towards him.

49.    During 2004, plaintiff continued to experience a hostile work environment. Despite all the meetings and conversations during 2003, Wachovia had essentially done nothing to correct the situation.    Plaintiff struggled to produce at Prices Corner amidst the now frosty work environment.    The female employees with whom he continued to work, namely, defendant DiFebo and Ms. Amini, barely spoke to him and his business referrals plummeted.    Plaintiff continued to meet his production goals, but business was more difficult to generate due to the lack of cooperation from Wachovia's other employees.    By contrast, as before, plaintiff

experienced no such problems at Capitol Trail. The Capitol Trail office represented less of an opportunity for a Financial Advisor, however, as its client deposits were only about one-half of the deposits at Prices Corner.

50. At some time during 2004, defendant Gauthier informed plaintiff that a change was planned under which Financial Advisors would operate out of only one branch. Although the environment continued to be hostile at Prices Corner, plaintiff wished to stay there due to its superior financial asset base and, hence, greater opportunity for success.

51. Until December 2004, plaintiff had not had an assigned physical office at Prices Corner. Plaintiff had operated at that branch by utilizing any office that happened to be vacant. On December 6, 2004, defendant was finally able to set up his own office at Prices Corner. On or about December 9, 2004, only three days after setting up his office at Prices Corner, defendant Gauthier took over direct control of operations at Prices Corner. Defendant Gauthier immediately notified plaintiff to cease his activities at Prices Corner. Plaintiff asked the reason for these changes, and defendant Gauthier expressly denied that the change had anything to do with plaintiff's performance. Instead, defendant Gauthier stated: "The staff at Prices Corner don't like you. That branch is not right for you."

52. Plaintiff's replacement at Prices Corner was to be James Meehan, a white male. There was no legitimate business reason to replace plaintiff other than to replace the one African-American male Financial Advisor, who had never been accepted by that branch's white female personnel, with a white male. Wachovia had fixed the discrimination and hostile work environment at the Prices Corner branch by removing the victim and leaving the perpetrators in place. This act also constituted retaliation for plaintiff's attempts to get Wachovia management to address the fundamental issues involved in his discrimination.

53.     Following his involuntary removal from Prices Corner, plaintiff worked exclusively at Capitol Trail.  His relationships with his coworkers at that branch remained good, and he experienced none of the discrimination he had undergone at Prices Corner.  However, plaintiff suffered emotionally from Wachovia's wrongful treatment, as well as that office's inherently lower deposit base, and his production plunged precipitously.  For the first time, plaintiff consistently failed to meet his production goals.

54.     As a direct result of the wrongful conduct he experienced, plaintiff needed psychiatric counseling to deal with depression.  He had never before needed such treatment.

55.     In January 2005, plaintiff filed his charges of discrimination with the EEOC. Plaintiff continued to fail to meet his production goals throughout 2005 and 2006.

56.     During late 2005, plaintiff learned that defendant Beam had been demoted and that she subsequently left the company.  Plaintiff also learned that defendant Gauthier had been demoted and transferred to a different region of the country.  These internal changes had no effect whatsoever on plaintiff and served in no way to allay the discriminatory and wrongful conduct that he had suffered under the supervision of defendants Gauthier and Beam.

57.     In October 2006, Wachovia closed Capitol Trail and transferred its client accounts to Prices Corner.  Despite the fact that those accounts represented many of his clients, including clients he brought to Wachovia from his previous position with another securities firm, plaintiff was not transferred back to Prices Corner.  Instead, plaintiff was transferred to Wachovia's "Meadowood" office, another office on Kirkwood Highway located only a few miles from Prices Corner.

58.     Plaintiff has been accepted by the Wachovia employees at "Meadowood" just as he had been at "Capitol Trail."   "Meadowood" is managed by an African-American woman.  As

with Capitol Trail, however, the client deposits at Meadowood are not as large as at Prices Corner, so plaintiff has an inherently smaller economic foundation for his work.

<u>Requisites</u>

59.    At all times relevant to the allegations in the complaint, Wachovia continuously engaged in an industry affecting commerce within the meaning of 42 *U.S.C.* §2000e(g) and (h).

60.    Plaintiff has complied with all the requirements of 42 *U.S.C.* §2000e, *et seq.* and 19 *Del.C.* §710 *et seq.* for the filing of this legal action in that a charge of discrimination was filed with the Office of the Equal Employment Opportunity Commission ("EEOC") alleging that he had suffered discrimination and retaliation in violation of Title VII, 42 *U.S.C.* §2000e, *et seq* and19 *Del.C.* §710 *et seq.*

61.    On or about December 29, 2005, the Division of Industrial Affairs of the Department of Labor of the State of Delaware issued a decision holding that there was reasonable cause to believe that an unlawful employment practice occurred with respect to plaintiff's employment with Wachovia.  The matter was then submitted to the EEOC for review and, on about September 20, 2006, the EEOC issued a "right to sue" notice to plaintiff.

COUNT 1
DISCRIMINATION
(<u>Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq.*</u>)

62.    Plaintiff reasserts the allegations in paragraphs 1-61 above.

63.    Defendants engaged in conduct and actions constituting discrimination against plaintiff based on his race and gender.

64.    Defendants created a hostile work environment through their wrongful and discriminatory conduct towards plaintiff.

13

65.    Defendants' wrongful and discriminatory conduct denied plaintiff the opportunity to continue working at Prices Corner where there were more customers, more assets, and a greater opportunity for advancement and, through such practices, created a hostile working environment for plaintiff.

66.    Defendants' wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of his rights.

67.    Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq*. and 19 *Del.C.* §710 *et seq.,* entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 2
## RETALIATION
### (Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq.*)

68.    Plaintiff reasserts the allegations in paragraphs 1-67 above.

69.    Plaintiff was denied the opportunity to continue working at Prices Corner due to his race and his gender.

70.    Defendants retaliated against plaintiff for expressing concerns about the improper and disparate treatment he received from other Wachovia employees, including the named defendants in this action, as well as the hostile work environment created by such employees.

71.    Defendants retaliated against plaintiff by denying him the opportunity to continue working at Prices Corner where there were more customers, more assets, and a greater opportunity for advancement and, through such practices, created a hostile working environment for plaintiff.

72.     Defendants' wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of his rights.

73.     Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq*. and 19 *Del.C.* §710 *et seq.,* entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 3
## VIOLATION OF EQUAL RIGHTS UNDER THE LAW
### (42 *U.S.C.* §1981)

74.     Plaintiff reasserts the allegations in paragraphs 1-73 above.

75.     Defendants' wrongful actions against and conduct towards plaintiff, namely, defendants' refusal to let plaintiff continue working at Prices Corner, were motivated by plaintiff's race and, therefore, violated plaintiff's rights and privileges in connection with his relationship with defendant Wachovia.

76.     Defendants' wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of his rights.

77.     Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress and are a violation of Title VII, 42 U.S.C. ¶1981, *et seq*. entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 4
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (42 *U.S.C.* §1985)

78.    Plaintiff reasserts the allegations in paragraphs 1-77 above.

79.    The Individual Defendants acted individually and in concert with each other, and in concert with other agents and employees of Wachovia, in order to deny him the opportunity to continue working at Prices Corner, to spread unsubstantiated and untruthful rumors about plaintiff, and to affect adversely plaintiff's ongoing employment relationship with Wachovia, based on plaintiff's race and gender.

80.    The Individual Defendants agreed between and among themselves that they would discriminate and retaliate against plaintiff because of his race and his gender, and because plaintiff had raised complaints to Wachovia's human resources and/or other management personnel about his improper and discriminatory treatment.

81.    Defendants' wrongful actions against and conduct towards plaintiff, which occurred in concert, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress and constitute a conspiracy to violate plaintiff's rights guaranteed by 42 U.S.C. ¶1981, and, thus, are a violation of 42 U.S.C. ¶1985. Such wrongful actions entitle plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 5
## NEGLECT OR REFUSAL TO PREVENT CONSPIRACY
### 42 *U.S.C.* §1986

82.    Plaintiff reasserts the allegations in paragraphs 1-81 above.

83.     The Individual Defendants occupied supervisory and/or management level positions with defendant Wachovia, and each of them had the power and authority to prevent or aid in preventing the commission of the conspiracy to deprive plaintiff of his civil rights.

84.     The Individual Defendants had knowledge of the conspiracy to violate plaintiff's civil rights.

85.     The Individual Defendants refused, or neglected to prevent or aid in preventing, the conspiracy to violate plaintiff's civil rights.

86.     Individual Defendants' wrongful actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress and are a violation of Title VII, 42 U.S.C. ¶1986, *et seq.* entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

COUNT 6
STATE LAW TORT - FRAUD AND DECEIT

87.     Plaintiff reasserts the allegations in paragraphs 1-86 above.

88.     Defendants, and other employees, servants, and agents of defendant Wachovia, including but not limited to Individual Defendant Gauthier, informed plaintiff that his removal from Prices Corner was not due to performance issues, but to the fact that he was not liked  by, and did not get along with, other Wachovia employees at that branch, including defendant DiFebo.  Such purported grounds were false in that the true reason for plaintiff's removal from Prices Corner was wrongful and discriminatory conduct perpetrated by defendants based on plaintiff's race and gender.

89.     Defendant Gauthier's representations to plaintiff were fraudulent and deceitful in that the Individual Defendants were acting with the intent to wrongfully deny plaintiff the opportunity to continue working at Prices Corner due to his race and his gender as well as due to his complaints about wrongful conduct to Wachovia human resources personnel and/or other management level personnel.

90.     Defendants' wrongful actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

COUNT 7
STATE LAW CLAIM - *PRIMA FACIE* TORT

91.     Plaintiff reasserts the allegations in paragraphs 1-90 above.

92.     Defendants have committed *prima facie* tort by intentionally, maliciously, and without justification harming plaintiff by:

(a)     Falsely representing to him that he was being moved from Prices Corner for legitimate reasons when the real reason was due to his race and/or gender;

(b)     Knowingly fabricated or manufactured false reasons for his transfer to a branch office other than Prices Corner;

(c)     Engaged in employment practices and acts towards plaintiff based on his race and/or his gender;

    (d)    Retaliated against plaintiff due to his reporting of the wrongful conduct against him to Wachovia's human resources and/or other management level personnel; and

    (e)    Denying plaintiff the opportunity to continue working at the Prices Conner branch office in order to replace him with a white male.

93.    Defendants' wrongful, intentional, and malicious actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 8
## STATE LAW CLAIM - CONSPIRACY

94.    Plaintiff reasserts the allegations in paragraphs 1-93 above.

95.    The Individual Defendants agreed between and among themselves and other employees of defendant Wachovia that they would take actions that amount to:

    (a)    A breach of the covenant of good faith and fair dealing which is present in every employment contract in the State of Delaware;

    (b)    Intentional, deceitful, and fraudulent misrepresentation to plaintiff with respect to his job with Wachovia;

    (c)    Intentional infliction of harm on plaintiff without any excuse or justification;

    (d)    Intentional and wrongful replacement of plaintiff, at Prices Corner, with a white male.

96. The Individual Defendants undertook overt acts in furtherance of their agreement to breach the covenant of good faith and fair dealing, commit *prima facie* tort against plaintiff; and engage in fraudulent and deceitful acts directed at plaintiff and with the aim of replacing him with a white male.

97. The conspiracy between or among the defendants was a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future loss of income and emotional and mental distress entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

THEREFORE, plaintiff demands that judgment be entered in his favor and against defendants, jointly and severally, as follows:

(1) Compensatory damages for past, present, and future lost wages, bonuses, and other elements of income derived from his employment relationship with Wachovia, and for emotional and psychological harm;

(2) Punitive damages;

(3) Equitable relief in the form of reinstatement to his position at the Prices Corner branch office;

(4) Costs of this action;

(5) Reasonable attorneys fees;

(6) Prejudgment and postjudgment interest at the applicable legal rate(s);

(7) Such other relief as the Court deems just and appropriate.

BIGGS AND BATTAGLIA


 /s/  Steven F. Mones
Victor F. Battaglia, Sr. (Del. Bar No. 156)
Steven F. Mones (Del. Bar No. 2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff


December 1, 2006

℥JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Kenneth S. Mitchell

**(b)** County of Residence of First Listed Plaintiff   New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Victor F. Battaglia, Biggs & Battaglia
921 N. Orange Street, Wilmington, Delaware
19801 302-655-9677

## DEFENDANTS

Wachovia Corporation, et. al.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                  and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title VII (42 U.S.C. §§ 2000e, 1981, 1983, 1986)

Brief description of cause:
Hostile Work Environment and racial/gender discrimination

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE   12/01/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ *8* _____ COPIES OF AO FORM 85.

_____12/01/06_____

(Date forms issued)

_____

(Signature of Party or their Representative)

_____Steven F. Moues_____

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action