Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

conclude otherwise.[FN7]

FN7. Ms. Hall argues that her retaliation claim is similar to *Zelinski v. Pennsylvania State Police*, 108 Fed. Appx. 700, 707 (3d Cir.2004), where our Court of Appeals reversed an order granting summary judgment in favor of the employer on the plaintiff's retaliation claim. However, *Zelinski* is distinguishable on two bases. First, the plaintiff in *Zelinski* was subjected to "unfair criticism" following her complaints of sexual harassment from Corporal Altieri, to whom she reported the complaints in the first instance. *Id.* at 702. The alleged retaliatory transfer was ordered by supervisors within Corporal Altieri's chain of command. *Id.* Thus, there was an evidentiary basis to connect the intervening antagonism with the decision-makers who ordered the transfer. Here, by contrast, there is insufficient evidence linking the intervening antagonism at SCI-Mahanoy and the decision by Major Miller and Deputy Superintendent Kerestes of SCI-Frackville to deny the promotion.

Second, in *Zelinski*, there were multiple, inconsistent reasons for the transfer. *Id.* at 707. Here, Major Miller and Deputy Superintendent Kerestes have never wavered from their reasons why each decided against promoting Ms. Hall. (*Compare* Defendants's Exhibit 67 (Feb. 28, 2002, Interview Matrix of Deputy Superintendent Kerestes; explains that Ms. Hall is "unprofessional") *and* Defendant's Exhibit 73 (Apr. 4, 2002, Interview Matrix of Deputy Superintendent Kerestes; explains Ms. Hall was "unprofessional"), *with* TR-3, at 64 (Deputy Superintendent Kerestes testified that Ms. Hall exhibited an "unprofessional demeanor"); *compare* Defendant's Exhibit 68 (Feb. 28, 2002, Interview Matrix of Major Miller; explains that Ms. Hall's "thoughts [were] unorganized") *and* Defendant's Exhibit 74 (Apr. 4, 2002, Interview Matrix of Major Miller; explains that Ms. Hall's "train of thought for situation ques. unorganized"), *with* TR-3, at 50 (Major Miller testified that "I had felt that her thoughts were disorganized").)

In summary, the evidence, viewed in the light most favorable to Ms. Hall, reveals the existence of a retaliatory animus at SCI-Mahanoy in the wake of Ms. Hall's discrimination complaints, but Ms. Hall has failed to connect this atmosphere to the denial of the promotion at SCI-Frackville. As such, the record does not contain the "minimum quantum of evidence upon which a jury might reasonably afford relief." Therefore, the Department's motion for judgment as matter of law with respect to Ms. Hall's retaliation claim will be granted.

**2. The Hostile Work Environment Claim**

The Department also argues that it is entitled to judgment as a matter of law on Ms. Hall's hostile work environment claim. Ms. Hall alleged that her experience at SCI-Mahanoy was plagued by hostile treatment and discrimination on the basis of sex. The jury returned a verdict in her favor on this claim. The Department challenges two elements of the prima facie case: detrimental effect upon Ms. Hall and employer liability. (*See* Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 37-38.)

Under Title VII, an unlawful employment practice includes "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...."42 U.S.C. § 2000e-2(a)(1). The Supreme Court stated in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986), that this language is not "limited to 'economic' or 'tangible' discrimination." Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 65, 67). *See also id.* at 24 (Scalia, J., concurring).

To establish a claim for a hostile work environment, the plaintiff must prove five elements: (1) she suffered intentional discrimination because [of her sex]; (2) the discrimination was severe or pervasive;[FN8] (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

FN8. The Third Circuit had required that discriminatory harassment be "pervasive and regular." *See, e.g., Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir.2001); *Abramson v. William Paterson College of New Jersey*,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

260 F.3d 265, 276-77 (3d Cir.2001). In *Pennsylvania State Police v. Suders,* the Supreme Court of the United States made it clear that the harassment must be "sufficiently severe or persuasive to alter the conditions of [the complainant's] employment." 542 U.S. 129, 133-34 (2004); *see also Jensen v. Potter,* 435 F.3d 444, 449 n. 3 (3d Cir.2006).

*Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir.2006), *implied overruling on other grounds recognized by Moore v. City of Philadelphia,* --- F.3d ----, 2006 WL 2492256, at *8-9 (3d Cir. Aug. 30, 2006); *see also Morrison v. Carpenter Technology Corp.,* No. 05-1922, 2006 WL 2413657, at *4 (3d Cir. Aug. 22, 2006). "The record must be evaluated as a whole when [the Court] considers whether [Ms. Hall] proved her case." *Durham Life Insurance Co. v. Evans,* 166 F.3d 139, 149 (3d Cir.1999). The Department's motion for judgment as a matter of law challenges only elements three-the discrimination's detrimental effect upon Ms. Hall-and five-respondeat superior liability. (See Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 37-38 .) The Court will address each issue in turn.

a) Detrimental Effect Upon Ms. Hall

*9 The Department argues Ms. Hall failed to produce evidence that she was detrimentally affected by the discriminatory acts, or that her conditions of employment were altered. (Id. at 38.) The Department contends that Ms. Hall's complaints were limited to feelings of embarrassment. (Id. at 38-39.) The record, however, does contain sufficient evidence from which the jury could reasonably conclude that Ms. Hall was detrimentally affected by the harassment.

A plaintiff need not have a nervous breakdown to recover for a hostile work environment claim. *Harris,* 510 U.S. at 22. "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.* As long as the employee perceives the work environment as hostile, it is unnecessary for the environment to be "psychologically injurious." *Id.*

Of course, that a psychological injury is unnecessary does not dispense with the requirement that plaintiff must show she has been detrimentally affected in *some* manner. " 'The subjective factor is crucial because it demonstrates that the alleged conduct injured this particular plaintiff giving her a claim for judicial relief.' " *Spain v. Gallegos,* 26 F.3d 439, 447 n. 10 (3d Cir.1994) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1483 (3d Cir.1990)).

In *Spain,* the plaintiff alleged she was the victim of sexual harassment because she was the target of false rumors that she was having a sexual affair with a supervisor, gaining influence as a result. *Id.* at 447. The rumors arose over time because the plaintiff and her superior were often observed together in private meetings. *Id.* The meetings were in fact convened by the supervisor to solicit improper loans from the plaintiff. *Id.* at 442. After plaintiff became aware of the rumors, she complained to the supervisor and urged him to stop the rumors. *Id.* However, the meetings continued and the rumors did not dissipate, which strained the plaintiff's working relationship with her co-workers and other supervisors. *Id.* Plaintiff became miserable and unable to effectively confront the situation. *Id.* After the plaintiff ceased the loans, the superior escalated his harassment and eventually denied the plaintiff a promotion. *Id.*

On appeal, the court held the plaintiff established a prima facie case on her hostile work environment claim, including a jury question on the issue of whether she was detrimentally affected. *Id.* at 449. The plaintiff perceived the situation as hostile, and she introduced evidence of the effect the environment had on her. The plaintiff's reputation was impugned by the rumors; she was generally embarrassed and miserable; her relationship with her coworkers and supervisors deteriorated, resulting in negative performance evaluations; and she was denied a promotion because of the rumors. *Id.* at 447-48. Therefore, the plaintiff adequately demonstrated "an abusive environment as manifested through her co-workers' and supervisors' interaction with her." *Id.* at 449. *See also Abramson v. William Paterson College of New Jersey,* 260 F.3d at 270-71 & 280 (3d Cir.2001) (jury could reasonably conclude that the plaintiff was detrimentally affected by the hostile work environment of religious discrimination where she devoted considerable energy defending her reputation, experienced " 'continu[ous] and unwarranted negativism,' " and one of her colleagues

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

declared she was a " 'beaten puppy' "); *Hightower v. Roman, Inc.*, 190 F.Supp.2d 740, (D.N.J.2002) (in the wake of numerous racial epithets and jokes, employee felt " 'humiliated, disrespected, and angry' ").

*10 In *Hall v. Bell Atlantic Corp.*, 152 F.Supp.2d 543, 544 (D.Del .2001), the plaintiff claimed he was subjected to a hostile work environment on the basis of racial discrimination. On the issue of subjective detrimental effect, he argued that he was denied, while white employees were given, opportunities to work in the field (as opposed to behind a desk in a office) to earn overtime as well as additional job-related training. *Id.* at 550. Furthermore, he asserted that his employer threatened him with termination and loss of benefits. *Id.* The court determined there was insufficient evidence to show that the employee was detrimentally affected by the defendant's conduct because the plaintiff was still employed at a high salary level disproportionate to his actual duties, and he continued to receive benefits and training. *Id.* at 551. See also *Bishop v. National Railroad Passenger Corp.*, 66 F.Supp.2d 650, 665 (E.D.Pa.1999) (although plaintiff was fearful that she could be fired, which caused sleepless nights, plaintiff never alleged that "the behavior interfered with her work performance, nor that she felt physically threatened or humiliated").

As this discussion illustrates, the question of whether a plaintiff has been detrimentally affected by a hostile work environment is fact-intensive. In this case, the evidence presented by Ms. Hall as to the subjective effect the hostile work environment had on her is sufficient to sustain the jury's verdict. The jury was entitled to conclude (if it chose) that Ms. Hall was embarrassed and humiliated by the harassment she endured. Ms. Hall's troubles went back as far as November 1994, when Ms. Hall participated in a hostage training exercise. Ms. Hall volunteered to play the role of a hostage; however, she never expected to be left outside in the rain for three hours. (TR-2, at 9-10; TR-2, at 120.) Ms. Hall recounted the time she arrived at work and discovered the shameful Christmas greeting that referred to the female anatomy. (TR-1, at 77-79.) There was the incident when Ms. Hall received the certificate of recognition from her co-workers for her ascension to "complete a-hole." (*Id.* at 79-81.) Ms. Hall had opened an envelope containing the certificate, addressed to her, and in the presence of other officers; she was "very embarrassed and upset." (*Id.* at 81.) She was subjected to a pat-down by a male corrections officer while two supervisors stood nearby and observed the incident. (*Id.* at 88-90.) Afterwards, one of the supervisors expressed amusement. (*Id.* at 91.) Furthermore, male corrections officers would utter vulgarity and other derogatory remarks in her presence. (*See, e.g., id.* at 90.) From this testimony, viewed in Ms. Hall's favor, the jury could find Ms. Hall was detrimentally affected by the hostile work environment of SCI-Mahanoy.

The Department argues that embarrassment does not equate to having one's employment altered. (*See* Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 39; Transcript of Oral Argument, Sept. 15, 2005, Dkt. Entry 129, at 36.) However, *Abramson, Spain,* and *Hightower* state that feelings of embarrassment and humiliation may constitute the detrimental effect necessary to prevail on a hostile work environment claim. The jury could infer that the embarrassment and humiliation felt by Ms. Hall altered her approach to her job, how she perceived her role at SCI-Mahanoy, and her relationships with her co-workers.

*11 Moreover, Ms. Hall presented evidence that the sexual harassment she endured at SCI-Mahanoy did alter the conditions of her employment. Ms. Hall was forced to proceed with caution as she was subjected to harsh discipline at times, and her work performance was carefully scrutinized by her superiors and others. In 2001, a factfinder was convened to investigate the incident with Officer Mushalko in which Ms. Hall was accused of "disrupting the orderly running of [the breakfast] mainline," taunting several inmates, and endangering the safety of fellow corrections officers and inmates alike. (TR-1, at 113-14.) It was later determined that Ms. Hall followed Department policy. (*Id.* at 115.) Ms. Hall was criticized by Lieutenant Lencovich because she was unwilling to complete a form about an incident she did not personally observe. (*Id.* at 116-18.) Lieutenant Baddick was confrontational with Ms. Hall on several occasions, including the time Ms. Hall held inmates at the gate leading to the prison yard, (*id.* at 119-21); the time Ms. Hall modified the schedule when inmates would clean the showers in the C-Block, (TR-2, at 20-25); and the time when Ms. Hall was told she was not permitted to work in the control room, (*id.* at 29-30). Thus, Ms. Hall's working conditions were altered because she devoted time defending herself and incurred, at times, "unwarranted negativism." *See*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

*Abramson*, 260 F.3d at 270, 280.

In summary, Ms. Hall presented the "minimum quantum of evidence" necessary for the jury to conclude that she was detrimentally affected by the hostile work environment. At times Ms. Hall was embarrassed and humiliated; other times, her experience was similar to the plaintiff in *Spain*, and she adequately demonstrated "an abusive environment as manifested through her co-workers' and supervisors' interaction with her." *Spain*, 26 F3d at 449. Therefore, the Department is not entitled to judgment as a matter of law on this basis.

**b) Employer Liability**

Additionally, the Department objects to the jury's verdict on the ground that Ms. Hall failed to establish a basis for employer liability. The Department argues that it responded to Ms. Hall's complaints, no matter how trivial, with swift action. (*See* Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 39, 42.)

In general, an employer is not strictly liable for a hostile work environment. *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir.1998). Instead, liability may be imposed where the employer " 'knew or should have known of the harassment and failed to take adequate remedial action.' " *Id.* (quoting *Andrews*, 895 F.2d at 1486). Where the employer has actual notice of the harassment and the remedial measures it implements are effective, i.e., stops the harassment, there can be no Title VII liability. *Id.* at 294; *Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 110 (3d Cir.1994). *See also Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3d Cir.1997) (employer cannot be liable where the "remedy is reasonably calculated to prevent future instances of harassment"). In *Kunin*, the employee notified her supervisor of a co-worker's derogatory statements. *Kunin*, 175 F.3d at 294. Because the supervisor promptly instructed the co-worker to avoid any contact with the complainant, who experienced no further harassment, this notice could not establish employer liability. *Id*.

*12 It is important to emphasize that the employer must take *some* remedial measure subsequent to its receipt of notice of the allegedly unlawful conduct. In *Kunin*, the employer's supervisor promptly met with the co-worker and instructed him to stay away from the complainant. *Id.* In *Knabe*, a waitress complained that her manager committed various acts of sexual harassment. *Knabe*, 114 F.3d at 408-09. An investigation was conducted in which the manager denied the allegations, and other employees reported they had not observed any of the alleged misconduct. *Id.* at 409. The investigation concluded the allegations were unfounded, based upon the mistaken assumption that corroborating evidence was necessary. *Id.* Nevertheless, the manager was reminded that the restaurant does not tolerate sexual misconduct, and any violations may result in suspension or discharge. *Id.* The court held that, while the investigation was imperfect and the manager was not disciplined, the warning he received was "reasonably calculated to prevent further harassment." *Id.* at 413.

Employer liability may arise, however, where the employer merely investigates the complaint without taking any remedial action, or the investigation is so flawed that any remedial measures are destined to fail. *Id.* at 414. *See also Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir.1995). In *Fuller*, a police department's internal affairs division investigated a report of sexual harassment by a recently promoted male officer against a female officer. *Fuller*, 47 F.3d at 1526. Among the misconduct included angry, threatening telephone calls on a regular basis. *Id.* at 1525. The investigation resulted in a finding of "unfounded," which meant the evidence proved the allegations did not occur. *Id.* at 1526. The findings were predicated, in part, on the absence of any harassing telephone calls subsequent to the commencement of the investigation. *Id.* After the investigation, the police department did not take any remedial action against the officer, although, by happenstance or otherwise, the officer apparently stopped his harassing conduct. *Id.* The court held the employer nonetheless could be liable, rejecting the argument that simply because the harassment ceased, the employer's response was reasonable. *Id.* at 1528. Since the court found the existence of a hostile work environment, which was known or should have been known by the police department, "a remedial obligation kick[ed] in." *Id.* The court was troubled by the inadequate investigation, and was equally distressed by the failure of the department to take any remedial measures:

An employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have "remedied" what happened. Denial does not constitute a remedy. Nor

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

does the fact of investigation alone suffice; an investigation is principally a way to determine whether any remedy is needed and cannot substitute for the remedy itself.

*13 *Id.* at 1529.

Even when the employer does not have actual notice of the harassment, the employer may be on constructive notice of such conduct and, consequently, be liable. In *Kunin*, the court set forth two instances of constructive notice. First, the "employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer."*Kunin*, 175 F.3d at 294. Second, the "harassment is so pervasive and open that a reasonable employer would have been aware of it."*Id.*

The court in *Kunin* found insufficient evidence of constructive notice because the alleged harassment occurred over a short period of time-approximately three weeks-and there was limited interaction between the two employees since they did not work together on a daily basis. *Id.* at 295. Furthermore, the harassment was not easily ascertainable by management because the offensive conduct was directed at the plaintiff personally and outside the presence of management. *Id.* Therefore, the employer was not liable.

In the matter *sub judice*, the Department initially took some remedial action following Ms. Hall's complaints of harassment. The Department required Officers Lowe and Hocking to undergo a counseling session following the 1997 incident in which the duo impeded Ms. Hall's access to the control room and smashed oranges using an automated door. (TR-1, at 52.) After the unflattering Christmas greeting in 1998, the Department posted a memorandum to all employees advising them that items of an offensive nature will not be tolerated and violations will be punished. (*Id.* at 78-79; *see also* Plaintiff's Exhibit 62.) Following the pat-down of Ms. Hall by a male corrections officer, Lieutenant Baddick, who was present at the time, was required to account for the incident by Major Erickson. (TR-3, at 89.) And, after Sergeant Ireland's inappropriate use of vulgarity during roll call, he apologized to Ms. Hall. (TR-1, at 95.) In this regard, the Department's remedial measures were similar to the employer's response in *Kunin* and *Knabe* in that the measures were either effective or at least "reasonably calculated to prevent further harassment."

Nevertheless, this case is distinguishable from *Kunin* and *Knabe*. Ms. Hall does not allege that she was victimized by just one or two perpetrators. Instead, the hostile work environment here was systemic and involved co-workers and supervisors alike. In this respect, the Department's remedial measures were neither effective nor "reasonably calculated to prevent further harassment." The Department's actions in 1997, 1998, or 1999 did nothing to halt or remedy the ongoing gender-motivated conduct directed at Ms. Hall. And, while Ms. Hall did not notify the Department of all cases of harassment, particularly in the latter part of the relevant time period, there was sufficient evidence for the jury to conclude that the Department should have known of the harassment yet failed to take prompt and adequate remedial measures.

*14 As noted in *Kunin*, an employer is deemed to have constructive notice when the "harassment is so pervasive and open that a reasonable employer would have been aware of it."*Kunin*, 175 F.3d at 294. Here, unlike *Kunin*, the harassment was suffered over an extended period of time.[FN9] Several of these incidents involved Lieutenant Baddick, Lieutenant Wetzel, and Lieutenant Lencovich. Since the perpetrators of the harassment were often Ms. Hall's supervisors, the jury could conclude that the Department should have known of the misconduct but failed to take adequate remedial measures.

FN9. The harassment need not be sexual in nature, but has to be motivated by sex. *See Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 148 (3d Cir.1999) ("[F]acially neutral mistreatment plus the overt sex discrimination, both sexual and non-sexual, in sum constitute[s] the hostile work environment."). Therefore, the Department's contention that it could not have known of the misconduct after 1999 because the misconduct was not enmeshed in sexual overtones, (see Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 43), is without merit.

In addition to constructive notice, the Department had actual notice of Lieutenant Baddick's more recent harassment. In 2002, Ms. Hall accused Lieutenant Baddick of harassment after the C-Block

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

shower incident. Ms. Hall changed the time for the inmates to clean the showers after conferring with Lieutenant Baddick. (TR-2, at 22-23.) However, Lieutenant Baddick harshly reprimanded Ms. Hall for her actions, although he previously acquiesced in her decision. (*Id.* at 23-24.)Ms.Hall complained to the personnel director about Lieutenant Baddick. (*Id.* at 19.)The Department concluded that Ms. Hall was not harassed or otherwise subjected to a hostile work environment. (*Id.* at 25.)Ms. Hall continued to have problems with Lieutenant Baddick, most notably the incident where Lieutenant Baddick told Ms. Hall she was not permitted in the control room. (*Id.* at 29-30; TR-3, at 93, 107.) The jury could conclude that the Department's investigation was inadequate and had emboldened Baddick to persist in his discriminatory treatment. The Department's inaction cannot shield it from liability. *See Fuller,* 47 F.3d at 1528-29.

An employer is liable under Title VII when the employer knew, or should have known, of the harassment and failed to take prompt and adequate remedial measures. In this case, the record contains the "minimum quantum of evidence upon which a jury might" reasonably conclude that the Department should have known of the harassment and failed to take any remedial action. Accordingly, the Department's motion for judgment as a matter of law will be denied.

**B. Defendant's Motion for a New Trial**

In the alternative, the Department moves for a new trial under Federal Rule of Civil Procedure 59(a),[FN10] premised on several grounds. "The decision to grant or deny a new trial is within the sound discretion of the trial court...."*Cordis Corp. v. Boston Scientific Corp.,* 431 F.Supp.2d 442, 447 (D.Del.2006). *See also Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282, 289-90 (3d Cir.1993). The Court may grant a new trial where the "jury's verdict is against the clear weight of the evidence," or where there has been "improper conduct by an attorney or the court [that] unfairly influenced the verdict."*Cordis Corp.,* 431 F.Supp.2d at 448. A motion for a new trial may also be granted where the admission or rejection of evidence resulted in substantial error. *Tristrata Technology, Inc. v. Mary Kay, Inc.,* 423 F.Supp.2d 456, 468 (D.Del.2006) (citing *Goodman v. Pennsylvania Turnpike Commission,* 293 F.3d 655, 676 (3d Cir.2002)).

FN10.Rule 59(a) provides, in part:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....
Fed.R.Civ.P. 59(a)(1).

*15 The Department asserts four grounds in its motion for a new trial. First, the Court erred by admitting the 1994 Erickson and Phillips memoranda. (Defendant's Post-Trial Motion, Dkt. Entry 93, at ¶ 11(a).) Second, the Department argues the submission of the retaliation claim to the jury" irreversibly infected" the hostile work environment claim. (*Id.* at ¶ 11(b); Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 23.) Third, the Department contends the Court allowed testimony concerning highly prejudicial material that was not disclosed to the Department during discovery. (Defendant's Post-Trial Motion, Dkt. Entry 93, at ¶ 11(d).) Finally, the Department asserts that the jury verdict was the product of passion and prejudice. (*Id.* at ¶ 11(c).)

**1. Erickson and Phillips Memoranda**

The Department argues it was error to allow the admission of two memoranda, prepared in 1994, written by Major Erickson and Deputy Superintendent Phillips, respectively. In the first memorandum, Major Erickson wrote to Deputy Superintendent Phillips that Ms. Hall should not be granted a permanent promotion to Sergeant. (*See* Plaintiff's Exhibit 31.) The second, addressed to SCI-Mahanoy Superintendent Dragovich from Deputy Superintendent Phillips, concurred in Major Erickson's assessment and stated that, due to Ms. Hall's attitude, the most efficacious manner to change one's attitude is to "humbl[e]" him or her so he or she suffers a "significant emotional event." (Plaintiff's Exhibit 32.) The Department moved *in limine* to exclude the memoranda, which the Court denied. (*See* Order of Court, June 29, 2004, Dkt. Entry 53 .) In its motion for a new trial, the Department asserts the memoranda was not relevant background information and, in any event, the Department was prejudiced by their admission. (*See* Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 17-22.)

The Federal Rules of Evidence provide that "[a]ll relevant evidence is [generally]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

admissible." *Fed.R.Evid. 402.* Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed.R.Evid. 401.*

In *Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 195 (3d Cir.1994), our Court of Appeals reversed the district court's decision that prevented the plaintiff from introducing evidence of prior discriminatory acts against the defendant that occurred outside of the statutory limitations period. In reversing, the court noted the "judicial inhospitability to blanket evidentiary exclusions in discrimination cases." *Id.* The court quoted with approval the Eighth Circuit's explanation of this "judicial inhospitability":

The effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of his own motives.

* * * *

*16 Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices-evidence which in other cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

*Id.* (quoting *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir.1998), overruled in part on other grounds, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). The *Glass* court concluded the proffered evidence was relevant to enable the plaintiff to establish that the employer's legitimate nondiscriminatory reason was pretextual. *Id.* at 194-95. *See also National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, (2002) (prior acts of discrimination, which are not actionable because a claim is time-barred, can be introduced as "background evidence in support of a timely claim").

In the case at bar, the Erickson and Phillips memoranda were highly relevant background evidence that placed the conduct of the Department in an appropriate context. The memoranda are probative of the Department's attitude towards Ms. Hall and whether it acted with a discriminatory intent. The memoranda, when viewed in light of Superintendent Shannon's previous remarks to Ms. Hall when she was first employed that the Department is no place for women, reveals an atmosphere in the Department condoning invidious discrimination against Ms. Hall.

The Department counters unpersuasively that the memoranda cannot be relevant because Ms. Hall was not denied the promotion to the position of Sergeant as a result of the memoranda. It is true that Ms. Hall was not demoted from Sergeant, and Deputy Superintendent Phillips did not take any adverse action against Ms. Hall. However, Ms. Hall was subjected to discriminatory conduct after that point, and the memoranda help explain why the conduct was permitted to continue unabated by the Department's supervisors. The Department's attitude and its desire to humble Ms. Hall is probative in explaining why Ms. Hall was left outside in the rain for three hours during a hostage training exercise, or why Ms. Hall was subjected to a pat-down by a male corrections officer in the presence of two supervisors, or why Lieutenant Baddick was constantly confrontational with Ms. Hall. As such, the memoranda were relevant and properly admitted.

The Department also argues that the memoranda were not relevant because Ms. Hall was not aware of their existence until 2000. In support, the Department cites *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir.1997). In *Konstantopoulos*, the plaintiff asserted a hostile work environment claim arising from discriminatory conduct between April 1989 to August 1989. *Id.* at 712. Following a leave of absence for several months, the plaintiff returned in April 1990, and she alleged further harassment. *Id.* at 713. Noting a "plaintiff must subjectively perceive the environment to be hostile or abusive," *id.* at 715, the court concluded that harassment occurred from April 1989 to August 1989, but that the plaintiff was not subjected to a hostile work environment when she returned in April 1990, *id.* at 716. The court reasoned that the "passage of nearly seven months [was] significant" because the "hiatus provided an opportunity for the lingering effects of the prior incidents to dissipate." *Id.* The court never addressed, nor was presented with, the issue of admissibility of prior acts as background evidence to support a hostile work environment claim. The court simply held that the intervening passage of time was too great to enable the April 1990 conduct to be connected to the discriminatory acts in 1989, which the court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

concluded was a hostile work environment. Therefore, the Department's reliance on *Konstantopoulos* is misplaced.

*17 In summary, the Erickson and Phillips memoranda were properly admitted as relevant background evidence. The Department's motion for a new trial on this ground will be denied.[FN11]

FN11. The Department argues it was prejudiced by Ms. Hall's attorney's repeated references to the memoranda. The Department argues that Ms. Hall's attorney, Mr. Loftus, in fact made the memoranda the "centerpiece" of her case. Mr. Loftus questioned several witnesses about the memoranda, and referred to the same in his opening statement and closing argument, as a backdrop to explain the Department's attitude in regards to subsequent events for which Ms. Hall sought damages. Ms. Hall could not recover on the basis of the memoranda, but she could emphasize the memoranda to explain the intent behind the Department's subsequent actions and inaction.

### 2. Impact of the Improper Retaliation Verdict

The Department argue that submission of the retaliation claim to the jury "irreversibly infected" the hostile work environment verdict. (*See* Defendant's Post-Trial Motion, Dkt. Entry 93, at ¶ 11(b); Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 23.) As support, the Department cites *Rush v. Scott Specialty Glass, Inc.*, 113 F.3d 476 (3d Cir.1997).

In *Rush*, the plaintiff asserted that her employer discriminated against her regarding promotion and training decisions on the basis of sex, subjected her to a hostile work environment, and constructively discharged her. 113 F.3d at 477-78. Prior to trial, the employer moved for summary judgment, arguing that the plaintiff's claims that accrued more than 300 days before she filed her second EEOC complaint, such as the promotion decision, were time-barred. *Id.* at 479-80. The district court denied the employer's motion, and the case proceeded to trial where the jury returned a verdict in her favor on most of her claims, including the failure to promote and train claim. *Id.* at 480. The jury awarded the plaintiff one aggregate damage award on all the claims, rather than an apportionment of damages to each claim. *Id.* On appeal, the court held the district court's denial of the employer's motion for summary judgment on the failure to promote and train claim was erroneous because the claim was time-barred. *Id.* at 484-85. Because the jury was not required to allocate specific portions of the damages to each claim, it was impossible to determine which portion of the damage award was attributable to the time-barred failure to promote and train claim. *Id.* at 485. Hence, the damage award was reversed. Moreover, because the evidence presented on the failure to promote and train claim may have prejudiced the hostile work environment and constructive discharge claims, the court reversed the verdicts on those claims. *Id.*

The Department's reliance on *Rush* is misplaced. In *Rush*, the district court's denial of the employer's motion for summary judgment was erroneous because the failure to promote and train claim was time-barred. But for the district court's decision, evidence of this claim would never have been presented to the jury, thereby eliminating the prejudicial effect on the liability verdict and damage award. Here, by contrast, the Department never filed a motion for summary judgment in this case. Thus, Ms. Hall would have presented evidence to the jury on her retaliation claim because the Department took no action to prevent its introduction in the first place.

Additionally, the Department's argument that the retaliation claim's prejudicial effect is most acute on the issue of damages is hard to fathom given the Department's failure to object to the special verdict questions submitted to the jury. The special verdict questions addressed the failure to promote, hostile work environment, and retaliation claims in separate interrogatories; if the jury found the Department liable on any of the claims, the jury was to proceed to special interrogatory number four, which called for one damage award for all claims in which liability was found. (*See* Jury Verdict, Dkt. Entry 77.) On the morning of closing arguments, the Court met with counsel and discussed the special verdict form. After allowing counsel the opportunity to review the form, the Court asked both attorneys whether either objected to the form. Mr. Doyle, the Department's attorney, responded *"They're fine."* (TR-4, at 10 (emphasis added).*See also* Transcript of Oral Argument, Sept. 15, 2005, Dkt. Entry 129, at 35 (Mr. Doyle acknowledges he did not request a special verdict form for the retaliation claim).) Therefore, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

Department's motion for a new trial on this ground is without merit.

### 3. Testimony Not Disclosed to the Department

*18 The Department argues a new trial should be granted because it was prejudiced by Ms. Hall's testimony relating to her interaction with Lieutenant Wetzel. The Department contends that, when asked through interrogatories or at her deposition to identify any individual who allegedly sexually harassed her, Ms. Hall did not disclose Lieutenant Wetzel's name. (See Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 24). Furthermore, Ms. Hall did not identify Lieutenant Wetzel as an individual likely to have discoverable information as part of her Federal Rule of Civil Procedure 26 disclosures.[FN12] (Id. at 24-25.)

> FN12. Specifically, Rule 26(a)(1)(A) provides, in part:
> (1) ... [A] party must, without awaiting a discovery request, provide to other parties:
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.
> Fed.R.Civ.P. 26(a)(1)(A).

At trial, however, there were several references to the alleged misconduct by Lieutenant Wetzel. First, Ms. Hall was testifying to the incident with Officer Mushalko and Lieutenant Wetzel's involvement in the subsequent pre-disciplinary conference. Though not in response to a question from her attorney, Ms. Hall gratuitously offered that Lieutenant Wetzel had continuously asked her out. (See TR-1, at 112.) The Department objected solely on the basis that the "testimony ha[d] nothing to do with the incident," the incident being the one involving Officer Mushalko. (Id.) The Court overruled the objection, and Ms. Hall testified that Lieutenant Wetzel was married and that she rebuffed his advances. (Id.) Second, Ms. Hall was asked about any altercations she had with Lieutenant Wetzel, to which she replied of an incident in the prison dining hall. (TR-2, at 117.) Ms. Hall testified that one day Lieutenant Wetzel entered the dining room, was "clowning around," and once again asked Ms. Hall out. (Id.) Ms. Hall told him, "I wasn't interested, and he reached over, and I consequently ended up with a bloody knows [sic]."(Id.)The Department raised no objections during this testimony. Next, James Petch, formerly employed at SCI-Mahanoy, testified about the dining room incident with Lieutenant Wetzel. (Id. at 124.)He was then asked whether he know about Lieutenant Wetzel's overtures to Ms. Hall. (Id.) The Department objected solely on the basis that the question was leading; the Court overruled the objection. (Id.) Finally, Ms. Hall's attorney referred to Lieutenant Wetzel briefly in his closing argument. (See Transcript of Trial, Day Four ("TR-4"), Dkt. Entry 100, at 19.) The Department did not object. In her brief in opposition to the Department's post-trial motions, Ms. Hall argues that "[n]othing precluded the [Department] from objecting at trial and requesting that the testimony be excluded if [the Department] felt that the information was improperly withheld."(Plaintiff's Brief in Opposition to the Defendant's Post-Trial Motions, Dkt. Entry 111, at 8.)

"[A] party may not seek a new trial on the basis of objections not raised in the original trial."*Boston Scientific Scimed, Inc. v. Cordis Corp.,* 434 F.Supp.2d 308, 318 (D.Del.2006). See also *Waldork v. Shuta,* 142 F.3d 601, 629 (3d Cir.1998); *Finch v. Hercules Inc.,* 941 F.Supp. 1395, 1416 (D.Del.1996). In *Finch,* the plaintiff objected to statistical evidence presented by the defendant's expert witness because the testimony was not previously disclosed during discovery. *Finch,* 941 F.Supp. at 1416.At trial, the plaintiff did not object to the "allegedly new and previously undisclosed material," and instead cross-examined the expert witness on the unanticipated statistical evidence. *Id.* The plaintiff's first objection was in the form of a motion for a new trial. *Id.* The court declined to reach the merits of the plaintiff's argument since his "failure to object must be deemed a waiver of his right to assert the new argument post-trial."*Id.*

*19 The Department did not object to the testimony about Lieutenant Wetzel on the ground that Ms. Hall had failed to disclose her allegations of sexual harassment against him during discovery. The Department objected twice, but on unrelated grounds of relevance and that a question was leading. The Department conceded at oral argument that it did not object at trial on the basis that the testimony was a complete surprise, nor did the Department request a sidebar conference. (See Transcript of Oral Argument, Sept. 15, 2005, Dkt. Entry 129, at 22.) Moreover, that the Department was capable of objecting on this ground is manifested by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

following exchange, where the Department objected to Ms. Hall's attempt to testify about a late-night telephone call:

[Ms. Hall]. During one such night, I was at home sleeping, and my phone rang, and I had answered the phone, and I heard, in a whispering voice, What do you have on?

[Department's attorney] Mr. Doyle: Your Honor, I'm going to object.

The Court: I'm going to sustain the objection. I'll see counsel.

(Sidebar discussion on the record.)

The Court: How does she tie this up-

[Ms. Hall's attorney] Mr. Loftus: It was one of the Commissioned Officers.

Mr. Doyle: Your Honor, I asked her six ways to Sunday about every instance of harassment, during her deposition, and this never came out. And it's not the kind of thing I can impeach. I can't flop the deposition on the table and say, Tell me where you mentioned this.

The Court: Was this previously disclosed, this incident?

Mr. Loftus: Not that I recall.

The Court: Well, I won't allow it then.

(Sidebar discussion concluded.)

(TR-2, at 54-55.)

No similar exchange occurred when Ms. Hall testified about Lieutenant Wetzel constantly asking her out, or when she and James Petch testified to the dining room incident where Lieutenant Wetzel allegedly made contact with Ms. Hall, causing her nose to bleed. Neither Mr. Loftus nor the Court would have been on notice of this challenge when the Department merely objected that the testimony was unrelated to the Officer Mushalko incident, or that Mr. Loftus asked Mr. Petch a leading question. Consequently, the introduction of this evidence does not warrant a new trial. *See Finch*, 941 F.Supp. at 1416.

**4. Improper Argument to the Jury**

Finally, the Department argues for a new trial on the basis that the verdict was the result of passion and prejudice. The jury awarded damages of $1,000,000, which was reduced to $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D). The Department argues that, because the only evidence Ms. Hall presented on the issue of damages were feelings of "embarrassment" and being "upset," something else must have caused the jury to award $1,000,000.[FN13] (*See* Defendant's Brief in Support of its Post-Trial Motions. Dkt. Entry 108, at 29-30.) That "something else," claims the Department, was (1) Mr. Loftus' statement during closing argument that the jury should light a "bonfire" under the Department, (TR-4, at 20), and (2) Mr. Loftus' alleged misrepresentations of the record during his closing argument.[FN14] (*See* Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 30-33.) Ms. Hall counters that the Department failed to object to the allegedly improper arguments and, therefore, this ground is waived. (*See* Plaintiff's Brief in Opposition to the Defendant's Post-Trial Motions, Dkt. Entry 111, at 9)

FN13. The fact that the jury awarded a substantial sum of compensatory damages does not, on its own, establish that the award was the product of "passion and prejudice." *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 352 (3d Cir.2001). However, a compensatory damages award must be supported by the evidentiary record, and the Court has an obligation to ensure "the jury did not 'abandon analysis for sympathy.' " *Id.* (quoting *Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 773 (3d Cir.1987)). Here, the jury heard about the embarrassment and humiliation Ms. Hall endured, the deterioration of her working relationship with others, and the frequent disciplinary confrontations. *See* Part II-A-2-a), *supra*. Additionally, the jury observed Ms. Hall's demeanor and could infer that, despite her strong personality and devotion to her job, the experience at SCI-Mahanoy had led to frustration over a seemingly never-ending cycle of conflict and hostility.

FN14. It is proper to note that the jury's passion may have been inflamed by *defense counsel's* closing argument, which consisted largely of an attack on Ms. Hall's character and an appeal to the jury that she deserved to be treated poorly. (*See, e.g.,* TR-4, at 27-28.) A jury, concluding that a plaintiff had been the *victim* of an abusive working environment, may indeed have a harsh reaction to the kind of attack on the victim that defense counsel pursued in his closing argument.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

*20 As previously stated, it is well-settled within the Third Circuit that a party's objection at trial is a prerequisite to complain post-trial. *Lyles v. Flagship Resort Development Corp.*, 371 F.Supp.2d 597, 603 (D.N.J.2005) (citng *Waldorf*, 142 F.3d at 629; *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir.1979); *Boehringer Ingelheim Vetmedica, Inc. v. Schering Polough Corp.*, 166 F.Supp.2d 19, 40 (D.N.J.2001)). An attorney's allegedly improper statements during closing argument are not immune from this principle. In *Waldorf*, the plaintiff, who was left a quadriplegic following an accident that was the subject matter of the litigation, challenged the defense attorney's remarks during closing argument. 142 F.3d at 628-29. The attorney referred to another witness, also a quadriplegic, and his remarkable perseverance following his catastrophic injuries to earn bachelor's and master's degrees. *Id.* at 629. The attorney referenced these facts in the context of the plaintiff's failure to pursue any employment or education subsequent to his accident. *Id.* However, the plaintiff did not object during the trial. *Id.* As such, the district court declined to consider this ground for the first time in a post-trial motion, and our Court of Appeals affirmed, reasoning that a party waives the right to complain post-trial on matters which a party failed to interpose an objection during the trial. *Id.; see also Murray*, 610 F.2d at 152 (refusing to consider whether counsel's reference during closing argument to a specific sum of damages was improper where no objection was found in the record).

In the case at bar, the Department did not interpose an objection during Mr. Loftus' closing. At oral argument, the Department's counsel conceded that he did not object at the time of the closing; that he did not ask for a sidebar conference to avoid having to object in the presence of the jury; and that he did not approach the bench after Mr. Loftus' closing argument and request a mistrial. (*See* Transcript of Oral Argument, Sept. 15, 2005, Dkt. Entry 129, at 41.) Like the testimony regarding Lieutenant Wetzel, the first time the Department objected to Mr. Loftus' closing argument was in its motion for a new trial.[FN15] Therefore, the Department will not be heard to complain on this ground as a basis for post-trial relief.[FN16]

FN15. In *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 207 n. 26 (3d Cir.1992), our Court of Appeals found no error in the district court's conclusion that the party "was not required to object to each and every objectionable remark because requiring such action would have unnecessarily created even more prejudice to [the party] in the eyes of the jury." In *Fineman*, the party moved *in limine* to limit the attorney's closing argument, placed several objections on the record during the closing argument, and moved for a mistrial following the closing argument. *Id.* Here, the Department took none of these steps, nor any other action, to preserve its objection.

FN16. Even if the Department did not waive this ground, Mr. Loftus' closing argument was not so prejudicial as to warrant a new trial. "A new trial may be granted only where the improper statements 'made it reasonably probable that the verdict was influenced by prejudicial statements.' " *Greenleaf v. Gerlock, Inc.*, 174 F.3d 352, 363-64 (3d Cir.1999) (quoting *Fineman*, 980 F.2d at 207). However, a combination of improper remarks is necessary to establish prejudicial impact, such as:

"(1) [the attorney] attempt[s] to prejudice the jurors through repeated inappropriate references to the defendants' wealth; (2) [the attorney] assert[s] his personal opinion of the justness of his client's cause; (3) [the attorney] prejudicially refer[s] to facts not in evidence; and (4) without provocation or basis in fact, [the attorney makes] several prejudicial, vituperative[,] and insulting references to opposing counsel."

*Fineman*, 980 F.2d at 207-08 (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir.1978)).

At the outset, Mr. Loftus' statement of lighting a "bonfire" is not per se prejudicial, entitling the Department to a new trial. *See Greenleaf*, 174 F.3d at 364 n. 9 (attorney's statement to the jury that a verdict in favor of the plaintiff would "send a message" to the defendant does not justify a new trial). Furthermore, Mr. Loftus did not refer to the Department's wealth or ability to pay damages; did not personally opine as to the justness of Ms. Hall's cause; and he did not launch "vituperative and insulting" statements at Mr. Doyle. And, although Mr. Loftus' statement that Major Erickson testified "we can't keep track of everybody" was erroneous-a fact acknowledged by Mr. Loftus, (*see* Transcript of Oral Argument, Sept. 15, 2005, Dkt. Entry 129, at 42-43)-the other alleged misrepresentations are reasonable inferences drawn from the testimony.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

Accordingly, even if the Department had not waived this ground, the verdict was not influenced by improper statements.

**C. Remittitur**

The Department argues that the Court should require remittitur of the damage award. The jury awarded Ms. Hall $1,000,000 in compensatory damages on her retaliation and hostile work environment claims. This award was reduced by the Court to $300,000 pursuant to statutory limitations. The Department argues the award was not rationally based upon the evidence and that Ms. Hall's testimony concerning her emotional distress was "insubstantial." (Defendant's Brief in Support of its Post-Trial Motions, Dkt. Entry 108, at 33.)

The use of remittitur is committed to the sound discretion of the district court judge. *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 354 (3d Cir.2001). In determining an appropriate award, the prudent course is to evaluate the record in light of damage awards for pain and suffering and emotional distress rendered in other cases. *See, e.g., Delli Santi v. CNA Insurance Cos.*, 88 F.3d 192, 206 (3d Cir.1996). The means employed should enable the Court to attain its objective of setting damages at the " 'maximum recovery that does not shock the judicial conscience.' " *Evans*, 273 F.3d at 355 (quoting *Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 774 (3d. Cir.1987)).

*21 In *Evans*, the jury rendered a verdict in favor of the plaintiff on a race discrimination claim and awarded compensatory damages of $1.15 million.*Id.* at 350.The district court concluded that the jury award did not result from passion or prejudice, but nevertheless held that remittitur of $740,000 was warranted. *Id.* at 353.In reaching this conclusion, the district court observed that plaintiff endured the discrimination for many years, and was forced to observe her colleagues with less experience get promoted through routes to which plaintiff was denied access. *Id.* at 355.The court noted the plaintiff began to doubt herself and questioned whether the ordeal was worth it. *Id.* She referred to herself as a "grouch," and the discrimination had taken a toll on her relationship with her husband and children. *Id.* at 352 n. 5 & 355.Plaintiff was designated to train individuals for positions that plaintiff herself was more qualified to take. *Id.* at 355.Although plaintiff had a strong personality, the court concluded that the jury could have understood the environment and atmosphere that fostered the racial discrimination that plaintiff endured for many years. *Id.* The supervisors called her lawsuit a "joke," and throughout the proceedings exhibited arrogance. *Id.* The $375,000 damage award, after the remittitur, was a substantial amount, but the Court of Appeals emphasized that the plaintiff's emotional trauma could not be ignored. *Id.* at 355-56.

In *Valentin v. Grozer-Chester Medical Center*, 986 F.Supp. 292, 296-97 (E.D.Pa.1997), the plaintiff brought an action under Title VII for unlawful national origin discrimination and retaliation, the relevant events occurring over a period of approximately two years. Following a trial, the jury rendered a verdict in plaintiff's favor and awarded her damages of, *inter alia*, $209,000 for pain and suffering. *Id.* at 297.The district court ordered remittitur of three-fourths of the pain and suffering damages, thereby reducing the award to $52,250. *Id.* at 305.The court recognized that evidence on plaintiff's emotional distress was limited to her testimony. *Id.* at 304-05.The plaintiff testified that she was depressed and upset because of her termination, and it was humiliating to have to explain the circumstances of her termination to prospective employers. *Id.* at 305.However, the plaintiff was functioning well enough to obtain subsequent employment in a matter of a few months. *Id.* Where the only evidence on emotional distress is the plaintiff's testimony, and there is no "evidence of physical damage or the need for professional care, there must be a 'reasonably probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred.' " *Id.* (quoting *Spence v. Board of Education of Christiana School District*, 806 F.2d 1198, 1201 (3d Cir.1986)). While the plaintiff's testimony sufficed to justify pain and suffering damages, $209,000 was "grossly excessive," particularly where the court granted judgment as a matter of law to the defendants on the national origin discrimination claim and part of the retaliation claim. *Id.* at 302 & 304.Therefore, the court awarded the plaintiff one-quarter of the jury award of pain and suffering damages, or $52,250. *Id.* at 305.

*22 In *Shesko v. City of Coatesville*, 324 F.Supp.2d 643, 647 (E.D . Pa.2004), the plaintiff sued her employer for unlawful sex discrimination, alleging she was denied a promotion because of her

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

gender. The jury returned a verdict in plaintiff's favor, *id.* at 648, and awarded compensatory damages of $20,000, *id.* at 652. The court denied the defendant's request for remittitur. The court acknowledged that the necessity of a "reasonable probability" that damages were incurred for emotional distress where plaintiff's testimony is the only evidence on that issue. *Id.* However, the court ruled that plaintiff's testimony that she was sad and depressed, had difficulty observing others in the position which she was denied, and that being denied a promotion generally made it difficult to perform her duties on a regular basis was sufficient to conclude the jury's award was rationally based. *Id.*

After a review of the record, the Court concludes that a remittitur of $225,000, or three-fourths, is appropriate in light of the evidence and foregoing case law. Ms. Hall's receipt of $75,000 is adequate to compensate her for the damages incurred. Ms. Hall sufficiently established the existence of a hostile work environment, which she endured for an extended period of time, and Ms. Hall presented evidence of her injury. Certainly, Ms. Hall's emotional damages are more extensive than the harm sustained by the plaintiffs in *Shesko* and *Valentin.* The embarrassment, humiliation, and mental anguish from the Christmas greeting; the certificate of recognition; the pat-down by a male corrections officer in the presence of an amused supervisor; the decision to modify a particular position after Ms. Hall expressed interest and applied for the position; the scrupulous oversight and harsh discipline by her supervisors; and the deterioration of her working relationship with fellow officers and supervisors is more severe than the minimal damage inflicted in *Shesko* and *Valentin,* particularly where those two cases ultimately allowed recovery for single discrete acts. *Cf. Shesko,* 324 F.Supp.2d at 652 (failure to promote claim; plaintiff testified to being "sad" and "depressed" and found it difficult to work after being passed over for the promotion); *Valentin,* 986 F.Supp. at 305 (judgment as a matter of law granted to defendant on all claims except for retaliatory termination; plaintiff testified she was depressed and upset by the termination, and found it humiliating to explain the circumstances surrounding the termination to prospective employers). And, although Ms. Hall's testimony was the sole evidence on the issue of damages, she has adequately demonstrated a "reasonably probability" that emotional distress and pain and suffering damages were actually incurred.

On the other hand, a recovery in excess of $75,000 is not sustainable based upon the record. Although Ms. Hall testified to the effect the conditions at SCI-Mahanoy had on her personally, as well as the interaction with her co-workers and supervisors, she did not present any evidence that the hostile work environment affected her life outside of SCI-Mahanoy. For instance, neither Ms. Hall nor any other witness testified to how her relationship with family members has been impacted. *Cf. Evans,* 273 F.3d at 352 n. 5 (plaintiff testified that the defendant's actions caused her to be "moody" and "irritable," which affected her relationship with her husband and children). Ms. Hall presented no competent evidence that the Department's conduct necessitated psychological counseling or otherwise required hospitalization or medical treatment. To be sure, such evidence is not essential to the issue of liability for a hostile work environment claim; however, such evidence surely is relevant to the damages that can be recovered. Additionally, Ms. Hall had not taken any leave of absence from work because of the hostile work environment, which also militates against an award exceeding $75,000. *See Hurley v. Atlantic City Police Department,* 933 F.Supp. 396, 423-25 (D.N.J.1996) (in reducing compensatory damages from $575,000 to $175,000, the district court considered, *inter alia,* that "[plaintiff] was compelled to leave work on stress leave for a year"). Furthermore, her employment performance evaluations remained satisfactory throughout her tenure.

*23 The decision to reduce Ms. Hall's award to $75,000 is buttressed by the decision granting the Department's motion for judgment as a matter of law with respect to the retaliation claim. The existence of that claim may have influenced the jury's compensatory damage award, and the Court cannot ignore this when determining an appropriate order of remittitur. *See Valentin,* 986 F.Supp. at 305 (in reducing compensatory damage award, the court noted that "[j]udgment as a matter of law has been granted on claims that may have improperly influenced the damage award").

Accordingly, although an award of compensatory damages for pain and suffering and emotional distress is warranted, $300,000 is "clearly excessive." Therefore, the Department's motion for remittitur will be granted, and Ms. Hall will be required to remit $225,000. In the event Ms. Hall declines to accept an award of $75,000, the Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2772551 (M.D.Pa.)
(Cite as: Slip Copy)

Page 20

alternatively grants a new trial limited to the issue of damages for the hostile work environment claim.

### III. CONCLUSION

The Department's motion for judgment as a matter of law will be granted as to Ms. Hall's retaliation claim, but denied with respect to the hostile work environment claim. The Department's motion for a new trial will be denied. Finally, the Department's motion for remittitur will be granted. Should Ms. Hall decline to accept $75,000 as compensatory damages, the Court grants a new trial limited to the issue of damages on Ms. Hall's hostile work environment claim. An appropriate Order follows.

### ORDER

**NOW, THIS 25th DAY OF SEPTEMBER, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Judgment as a Matter of Law (Dkt. Entry 93) is **GRANTED** as to the retaliation claim and judgment thereon is to be entered in favor of Defendant

2. Defendant's Motion for Judgment as a Matter of Law (Dkt. Entry 93) as to the hostile work environment claim is **DENIED.**

3. Defendant's Motion for a New Trial (Dkt. Entry 93) is **DENIED** .

4. Defendant's Motion for a Remittitur (Dkt. Entry 93) is **GRANTED** as follows:
   a) The Plaintiff shall **REMIT** $225,000 of the compensatory damage award; and
   b) Should the Plaintiff refuse to accept $75,000 in compensatory damages, a new trial on the issue of damages on the hostile work environment claim shall be conducted.

5. Plaintiff shall inform the Court and opposing counsel in writing no later than October 5, 2006 as to whether the remittitur is accepted. In the event the remittitur is not accepted, a telephonic conference shall be conducted on **October 12, 2006, at 10:30 a.m.** Counsel for Plaintiff shall be responsible for making the arrangements for the conference call.

M.D.Pa.,2006.
Hall v. Pennsylvania Dept. of Corrections
Slip Copy, 2006 WL 2772551 (M.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.