IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :
KENNETH S. MITCHELL,                        :
                                            :
              Plaintiff,                     :
                                            :          Civil Action No. 06-725 (GMS)
       v.                                    :
                                            :
WACHOVIA CORPORATION, t/a                    :
     WACHOVIA SECURITIES,                    :
WACHOVIA SECURITIES, L.L.C.,                 :
WACHOVIA SERVICES, INC.,                     :
WACHOVIA BANK OF DELAWARE, N.A.,             :
TODD D. GAUTHIER, LYNN G. MEYER,             :
CAROLYN J. BEAM, and                         :
DOROTHY A. DIFEBO,                           :
                                            :
              Defendants.                    :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**


P. Clarkson Collins, Jr., (Bar I.D. #739)       David Bennet Ross (admitted *pro hac vice*)
pcollins@morrisjames.com                        dross@seyfarth.com
David H. Williams (Bar I.D. #616)               Devjani Mishra (admitted *pro hac vice*)
dwilliams@morrisjames.com                       dmishra@seyfarth.com
James H. McMackin, III (Bar I.D. #4284)         Tara Smith Williams (admitted *pro hac vice*)
jmcmackin@morrisjames.com                       tawilliams@seyfarth.com

MORRIS JAMES LLP                                SEYFARTH SHAW LLP
500 Delaware Avenue, Suite 1500                 620 Eighth Avenue
P.O. Box 2306                                   New York, New York 10018-1405
Wilmington, DE  19899                           (212) 218-5500
(302) 888-6800

Dated: January 29, 2008

Attorneys for Defendants

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .......................................................................................................3

I.      WACHOVIA CORPORATION, WACHOVIA SERVICES, INC.
        AND WACHOVIA BANK OF DELAWARE CANNOT BE LIABLE TO
        PLAINTIFF AND HIS CLAIMS AGAINST THEM SHOULD BE DISMISSED ...........3

        A.      The Other Corporate Defendants Exercised No Control Over
                Wachovia Securities Concerning Mitchell's Employment..................... 3

        B.      The Corporate Defendants Do Not Constitute A "Single Employer." ................... 5

II.     MITCHELL REMAINS UNABLE TO ESTABLISH A PRIMA FACIE
        CASE OF RACE OR GENDER DISCRIMINATION OR RETALIATION
        UNDER TITLE VII, SECTION 1981 OR DELAWARE LAW ....................................7

        A.      Mitchell Fails To Show That The Challenged Conduct Occurred
                Because Of His Race Or Gender. ..........................................................7

                1.      Mitchell Presents No Evidence Of Harassment Based On
                        His Race Or Gender .....................................................................8

                2.      Mitchell's Section 1981 Claim Is Both Factually And Legally
                        Insufficient ...............................................................................12

                3.      The Mitchell And Finney Affidavits Should Be Disregarded ...................13

        B.      Mitchell Fails To State A Prima Facie Case Of Retaliation
                Because He Did Not Engage In Any Protected Activity Prior
                To The Allegedly Retaliatory Action ..................................................15

III.    WITH NO SECTION 1985 AND 1986 CLAIMS, MITCHELL'S STATE LAW
        CONSPIRACY CLAIM AUTOMATICALLY MUST BE DISMISSED ....................... 17

CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

Pages

## CASES

Andreoli v. Gates,
482 F.3d 641 (3d Cir. 2007)..................................................................16

Andrews v. City of Philadelphia,
895 F.2d 1469 (3d Cir. 1990)..................................................................8

Calloway v. E.I. DuPont de Nemours & Co.,
2000 U.S. Dist. LEXIS 12642 (D. Del. August 8, 2000)......................................9

Carter v. Delaware State Univ.,
C.A. No. 99-642-GMS, 2002 U.S. Dist. LEXIS 3116, (D. Del. Feb. 27, 2002),
aff'd, 65 Fed. Appx. 397 (3d Cir. 2003)......................................17

Childress v. Dover Downs, Inc.,
C.A. No. 98-206-SLR, 2000 U.S. Dist. LEXIS 4881 (D. Del. Mar. 31, 2000)...................7

Equal Employment Opportunity Comm'n v. Metal Serv. Co.,
892 F.2d 341 (3d Cir. 1990)..................................................................13

Fantazzi v. Temple Univ. Hosp., Inc.,
2002 WL 32348277 (E.D. Pa. Aug. 22, 2002) ............................................3, 4

Harley v. McCoach,
928 F. Supp. 533 (E.D. Pa. 1996) ......................................................17

Johnson v. Diamond State Port Corp.,
C.A. No. 99-153-GMS, 2001 WL 873229 (D. Del. Aug. 2, 2001),
aff'd, 50 Fed. Appx. 554 (3d Cir. 2002) ......................................7

Kautz v. Met-Pro Corp.,
412 F.3d 463 (3d Cir. 2005)..................................................................15

Koschoff v. Henderson,
C.A. No. 98-2736, 1999 WL 907546 (E.D. Pa. Oct. 7, 1999).............................16

Lacy v. AMTRAK,
C.A. No. 07-3374, 2007 U.S. App. LEXIS 27279 (3d Cir. Nov. 26, 2007) .................13

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,
503 F.3d 217 (3d Cir. September 19, 2007) ........................................16

Love v. U.P.S.,
C.A. No. 2:04-cv-964, 2006 WL 2806565 (W.D. Pa. Sept. 28, 2006).............................15

NY1 26500021.3

McKay v. Delaware State Univ.,
    Civ. A. No. 99-219-SLR, 2000 U.S. Dist. LEXIS 14653 (D. Del. 2000)..........................12

McLaughlin v. Diamond State Port Corp.,
    C.A. No. 03-617-GMS, 2004 WL 3059543 (D. Del. Dec. 30, 2004) ...............................14

Mosca v. Cole,
    C.A. No. 05-4350, 2007 U.S. App. LEXIS 3286 (3d Cir. Feb. 14, 2007) ...................9, 10

Nesbit v. Gears Unlimited, Inc.,
    347 F.3d 72 (3d Cir. 2003).........................................................................................3, 5, 6

Oncale v. Sundowner Offshore Servs., Inc.,
    523 U.S. 75 (1998) ...........................................................................................................8

Phoenix Canada Oil Co. Ltd. v. Texaco Inc.,
    560 F. Supp. 1372 (D. Del. 1983)..................................................................................17

Rajoppe v. GMAC Corp. Holding Corp.,
    C.A. No. 05-2097, 2007 U.S. Dist. LEXIS 18956 (E.D. Pa. Mar. 19, 2007).....................3

Reed v. Agilent Techs., Inc.,
    174 F. Supp. 2d 176 (D. Del. 2001)................................................................................10

Shaner v. Synthes (USA),
    204 F.3d 494 (3d Cir. 2000)............................................................................................16

Sharp v. Whitman Council, Inc.,
    C.A. No. 05-4297, 2006 U.S. Dist. LEXIS 54582 (E.D. Pa Aug. 4, 2006)...................5, 6

Slagle v. County of Clarion,
    435 F.3d 262, 265 (3d Cir. 2006)...................................................................................16

Spain v. Gallegos,
    26 F.3d 439, 449-50 (3d Cir. 1994) .................................................................................9

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502, 125 L. Ed. 2d 407 (1993) ........................................................................13

Thimons v. PNC Bank, N.A.,
    C.A. No. 06-3815, 2007 U.S. App. LEXIS 24895 (3d Cir. Oct. 23, 2007) ....................14

Tucker v. Merck & Co.,
    C.A. No. 04-3023, 2005 U.S. App. LEXIS 9087 (3d Cir. May 19, 2005) .......................11

Wimberly v. Severn Trent Servs.,
    C.A. No. 05-2713, 2006 U.S. Dist. LEXIS 59938 (E.D. Pa. Aug. 22, 2006)....................4

**STATUTES**

Fed. R. Evid. 404(b)...................................................................................................................14

Defendants submit this reply brief in further support of their motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all claims asserted herein.[1]

## PRELIMINARY STATEMENT

As set forth in Defendants' moving papers and opening brief, the record lacks any evidence that Plaintiff suffered any cognizable racial or gender-based harassment, that he experienced any retaliatory action or that Defendants committed any other unlawful act. This conclusion is only confirmed by Plaintiff's Answering Brief ("Pl. Br."), which is rife with self-serving speculation and fails to cite any admissible evidence. Mitchell largely ignores both the well-settled case law and the undisputed facts, offering instead a dramatic rendition of his claims that fails to create a genuine issue for trial. Though Mitchell clearly takes issue with various events during his employment, the absence of supporting facts demonstrates that he cannot show that any of these incidents occurred *because* of his race or gender, his involvement in any statutorily protected activity or for any other improper reason.

The record is clear: Mitchell, who was hired by a white male manager to replace a white male Financial Advisor, and who was never subjected to any racial or sex-based derogatory statements, does not show – because he cannot – that Defendants bore any animus against males or African Americans. Nor can Plaintiff show that any similarly situated employee outside of his protected category was treated more favorably than he was at any time. These key elements of any discrimination case appear nowhere in Plaintiff's Answering Brief, suggesting that Mitchell has abandoned his disparate treatment claim in its entirety.

What the Answering Brief does show is that following an interpersonal – but not discriminatory – conflict with a co-worker, Mitchell refused to work with, and *voluntarily*

---

[1] For the Court's convenience, all terms and abbreviations defined in Defendants' moving papers and opening brief are used herein as defined therein.

isolated himself from, the very individuals he claims discriminated against him. By his own account, Mitchell had as few as three interactions with Defendants DiFebo and Beam and his co-worker Amini in a period of more than eighteen months. Notwithstanding that he hardly saw these individuals from mid-2003 to 2004, much less worked with them, Mitchell attempts to cobble together a hostile work environment claim. However, Mitchell's admittedly limited exposure to the Prices Corner branch or the individuals who worked there precludes Mitchell from arguing that such individuals engaged in severe and pervasive behavior that would render his work environment "hostile." Moreover, Mitchell completely fails to identify any conduct that was directed at him *because of* his race or gender, further vitiating his discrimination claim.

Further, Mitchell's Answering Brief concedes that he cannot make out a *prima facie* case of retaliation. As stated in Defendants' moving papers, Mitchell's retaliation claim founders on the central element of causation, because he admits that he made no claim of discrimination, and therefore engaged in no protected activity, *prior to* Wachovia Securities' decision to assign him to the Capitol Trail branch exclusively. Mitchell fails to address this argument in his Answering Brief, and hence must be deemed to have waived his retaliation claim.

Finally, in an effort to escape his admissions under oath, Mitchell submits a self-serving affidavit that purports to contradict his deposition testimony ("Mitchell Aff.") as well as an irrelevant "affidavit" from James Finney ("Finney Aff."), a former Bank teller who vaguely alleges discrimination by individuals not involved in the instant case. Plainly, these submissions cannot withstand summary judgment because they are suffused with conclusory allegations and speculation, and therefore fail to meet the standards of Rule 56(e) and the Delaware courts. As such, these affidavits simply fail to show that there is any *genuine* issue of material fact requiring trial in this case. For the reasons set forth below and in Defendants' moving papers, Mitchell's

NY1 26500021.3

claims remain legally insufficient and factually unsupportable, and the Court should dismiss such claims in their entirety and grant summary judgment to Defendants.

## ARGUMENT

## I.

## WACHOVIA CORPORATION, WACHOVIA SERVICES, INC. AND WACHOVIA BANK OF DELAWARE CANNOT BE LIABLE TO PLAINTIFF AND HIS CLAIMS AGAINST THEM SHOULD BE DISMISSED.

Mitchell concedes that he has not worked for any of the Corporate Defendants other than Wachovia Securities, and has failed to present any legal or factual basis for holding Wachovia Corporation, Wachovia Services or Wachovia Bank liable in this action.  His Answering Brief identifies no genuine issue of fact as to whether the Corporate Defendants constitute an integrated enterprise or joint employer.  As such, Mitchell's claims against Wachovia Corporation, Wachovia Services and Wachovia Bank should be dismissed.

**A.    The Other Corporate Defendants Exercised No Control Over Wachovia Securities Concerning Mitchell's Employment.**

As stated in Defendants' moving papers, the majority of courts in this circuit analyzing the integrated enterprise test focus on the third factor of that test: centralized control of labor or employment relations.  Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 84 (3d Cir. 2003). Specifically, courts analyze whether a corporate parent either (i) controlled the day-to-day employment decisions of the subsidiary, or (ii) directed the subsidiary to take the employment action that gave rise to the discrimination claim.  Rajoppe v. GMAC Corp. Holding Corp., C.A. No. 05-2097, 2007 U.S. Dist. LEXIS 18956, at *18 (E.D. Pa. Mar. 19, 2007) (citing Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357 (E.D. Pa. 1998)).  Courts have found this factor lacking where the parent only retains control over certain employment decisions, but not over the day-to-day employment decisions of the subsidiary.  See e.g., Fantazzi v. Temple Univ. Hosp.,

Inc., 2002 WL 32348277, at *4 (E.D. Pa. Aug. 22, 2002) (finding that the control of labor relations was insufficiently centralized where the "controlling" entity lacked the ability to discipline or terminate employees of the "controlled" entity. Mitchell cannot meet his burden of establishing an integrated enterprise.

Here, it is undisputed that Mitchell is an employee only of Wachovia Securities, and that he was never employed by Wachovia Corporation, Wachovia Bank or Wachovia Services. (Def. Br. at. 4-5). Moreover, Mitchell admitted under oath that he was recruited, hired, and assigned to the Capitol Trail branch solely by Gauthier, who worked only for Wachovia Securities. (Def. Br. at pp. 6-8). Although Wachovia Securities denies unlawful conduct, it concedes that it is Mitchell's sole employer, and as such, is the only properly named entity in this matter. Nonetheless, Mitchell chooses in his opposition brief to focus on the few, discrete and dubious controls that may have been exercised by Wachovia Corporation and Wachovia Services, Inc., such as employment application forms, letterhead, and payroll systems and servicing. (Pl. Br. at 19-21). Mitchell thus elevates form over substance, ignoring the "day-to-day employment decisions" that are controlled solely by his employer Wachovia Securities, including his recruitment, assignment, and supervision, and the considerable evidence that Wachovia Securities and Wachovia Bank maintain entirely distinct management hierarchies. (Def. Br. at pp. 4-5). The fact remains, however, that a piece of letterhead or a pay stub "does not demonstrate an interrelation of operations, common management, or common ownership and financial control between the … Defendants." Wimberly v. Severn Trent Servs., C.A. No. 05-2713, 2006 U.S. Dist. LEXIS 59938, at *10-11 (E.D. Pa. Aug. 22, 2006). As such, the court should dismiss the claims against Wachovia Corporation, Wachovia Services and Wachovia Bank.

NY1 26500021.3

**B.**     **The Corporate Defendants Do Not Constitute A "Single Employer."**

In addition to the "integrated enterprise" test, the Third Circuit has adopted the single employer test to determine whether nominally separate entities constitute a "single employer" for purposes of employment discrimination liability.  "Single employer treatment is appropriate: (1) when a company has split itself into separate entities for the purpose of evading Title VII; (2) when a parent company directed a subsidiary's discriminatory acts; and (3) where two or more entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." Sharp v. Whitman Council, Inc., C.A. No. 05-4297, 2006 U.S. Dist. LEXIS 54582, at *17 (E.D. Pa. Aug. 4, 2006) (citing Nesbit, 347 F.3d at 85-86).  Here, there is no evidence of any kind that the other Corporate Defendants were split into separate entities for the purpose of evading Title VII.  To the contrary, the undisputed record shows that Wachovia Securities was formed as a joint venture of Wachovia Corporation and Prudential Financial, a wholly independent company.  (Def. Br. at 4).  Further, there is no evidence that Wachovia Corporation, Wachovia Services or Wachovia Bank directed or could direct Wachovia Securities to act in a discriminatory matter.

Thus, "the focus of the inquiry for Title VII purposes should be on the degree of operational entanglement --whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." Sharp, 2006 U.S. Dist. LEXIS 54582, at *17 (citing Nesbit, 347 F.3d at 87). "Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management, (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other." Id. at *17-18. As stated above with

5

respect to the integrated enterprise test, the operational factors do not point to a finding of a single employer. It is undisputed that Mitchell was recruited and hired, and at all times supervised, solely by Todd Gauthier, a Wachovia Securities employee, without any involvement of the other Corporate Defendants. (See Def. Br. at pp. 6-8). Further, notwithstanding his allegations against the Individual Defendants, who worked for Wachovia Bank, the evidence shows that none of those individuals managed Mitchell or had any control over his employment at any time. (Def. Br. at 6-7; Pl. Br. at 21). Moreover, despite the fact that Plaintiff's office inside Wachovia Bank space, the record shows that Wachovia Securities paid rent for the use of that space. (Def. Br. at 13). Finally, though Mitchell was expected to "partner" with Bank employees in selling products, it is undisputed that Mitchell performed functions distinct from any Bank employee, that Bank employees were unable to perform Mitchell's job functions, and that each entity provides a distinct service and/or product that the other does not. (Def. Br. at 4-7). On these facts, it cannot be said that the various named entities "present themselves as a single company such that third parties dealt with them as one unit," or that one entity covers the financial obligations of the other. Nesbit, 347 F.3d at 87. As such, the Court should dismiss Mitchell's claims against Wachovia Corporation, Wachovia Services and Wachovia Bank. See also Sharp v. Whitman Council, Inc., 2006 U.S. Dist. LEXIS 54582 (finding no evidence whatsoever that the single employer factors had been met).

## II.

### MITCHELL REMAINS UNABLE TO ESTABLISH A *PRIMA FACIE* CASE OF RACE OR GENDER DISCRIMINATION OR RETALIATION UNDER TITLE VII, SECTION 1981 OR DELAWARE LAW

**A.    Mitchell Fails To Show That The Challenged Conduct Occurred *Because Of* His Race Or Gender.**

Although Mitchell devotes the bulk of his brief to arguing that he was treated unfairly by the personnel at the Prices Corner branch, his papers fail to show that he was subjected to any challenged conduct ***because of*** his race and gender.  First, Plaintiff fails to provide any evidence concerning the treatment of similarly situated white or female employees.  As set forth in Defendants' moving papers, the record actually shows the contrary, *i.e.*, that white and female Financial Advisors were treated the *same* as Mitchell and had branches taken away from them. (Def. Br. at 27-28).  Based upon these undisputed facts, the Court should summarily dismiss Mitchell's disparate treatment claim.  Johnson v. Diamond State Port Corp., C.A. No. 99-153-GMS, 2001 WL 873229, at *4 (D. Del. Aug. 2, 2001) (granting summary judgment to employer where plaintiff "has failed to demonstrate that similarly situated Caucasian employees received a benefit he was denied because of his race"), aff'd, 50 Fed. Appx. 554 (3d Cir. 2002); Childress v. Dover Downs, Inc., C.A. No. 98-206-SLR, 2000 U.S. Dist. LEXIS 4881, at *41 (D. Del. Mar. 31, 2000) (holding that plaintiff did not establish a *prima facie* case of gender discrimination where she failed to show that similarly situated males were treated more favorably and she did not suffer adverse employment actions.)

Mitchell's hostile work environment claim should similarly be dismissed, because there is no showing that any of the complained of acts were based on plaintiff's race, gender or any other discriminatory reason.

7

1.    **Mitchell Presents No Evidence Of Harassment Based On His Race Or Gender.**

As noted in Defendants' moving papers, this Court has long required that a plaintiff alleging harassment or discrimination must show that he suffered intentional discrimination because of his membership in a protected class.    (Def. Mem. at 21-22).    It is insufficient to simply state, as Plaintiff does in his Answering Brief, that "The only logical inference that fits the evidence is that Mitchell suffered discrimination based on his status as an African American male." (Pl. Br. at 23).    Instead, he must actually proffer *evidence* that his race and gender was a "substantial factor" in Defendants' decisions. Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990) (requiring plaintiff to "show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner").

Even assuming *arguendo* that Gauthier and Beam mismanaged the 9/11 incident, and that Plaintiff was upset by being placed exclusively at Capitol Trail, such facially neutral actions, unconnected in any way to Mitchell's membership in a protected class, cannot establish a hostile work environment claim.    The Supreme Court has made clear that "the critical issue . . . is whether members of one sex [or race] are exposed to disadvantageous terms or conditions of employment to which members of the other sex [or another race] are not exposed." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S. Ct. 367 (1993)).    Moreover, this very Court has held that even where "plaintiff did not get along with co-workers or supervision and ... was the target of unwelcome attention," if "there is no evidence in the record ... indicating that the facially gender-neutral conduct plaintiff alleges was based on perceptions about [man]hood or gendered stereotypes of appropriate [male] behavior rather than factors individual to plaintiff," there can be no finding of

8

unlawful harassment. Calloway v. E.I. DuPont de Nemours & Co., C.A. No. 98-669-SLR, 2000

U.S. Dist. LEXIS 12642, at *17 (D. Del. Aug. 8, 2000) (footnote omitted).  The Calloway court

further stated:

> Although plaintiff alleges instances of unprofessional and spiteful behavior on the part of her co-workers and supervisors, her allegations are devoid of any incidents wherein she was confronted with negative, gender-related comments. Nor does she complain of the use of insulting or derogatory language relating to women generally or herself as a women specifically. Evaluating the record as a whole and in a light most favorable to plaintiff, the court finds no evidence from which a reasonable jury could infer that the harassment plaintiff suffered was motivated by gender-based animus.

Id.  Here, the record lacks any evidence that the "harassment" of which Mitchell complains was

motivated by race or gender-based animus.

Mitchell's speculation cannot overcome this lack of proof.   In support of his

"harassment" claim, Mitchell principally alleges that someone spread false rumors that he made

an insulting comment to Amini about 9/11, and that Wachovia failed to thoroughly investigate

who spread such rumor and discipline that person.  However, the record contains no evidence

that Mitchell's race or gender had anything to do with management's handling of this incident.

At the outset, the rumor itself had nothing to do Mitchell's race or gender, and therefore is not

indicative of any animus per se.  Cf. Spain v. Gallegos, 26 F.3d 439, 449-50 (3d Cir. 1994)

(finding discrimination where plaintiff alleged she was the subject of pervasive rumors that she

was involved in a sexual relationship with her superior).

Beyond that, it is immaterial that Mitchell personally disagrees with management's

handling of the alleged rumors arising out of the 9/11 incident.   In an employment

discrimination case, "it is not enough for a plaintiff to show that the employer's decision was

wrong or mistaken, because the issue is whether the employer acted with discriminatory

animus." Mosca v. Cole, C.A. No. 05-4350, 2007 U.S. App. LEXIS 3286 (3d Cir. Feb. 14, 2007)

(citing Abramson v. William Paterson Coll., 260 F.3d 265, 283 (3d Cir. 2001)); Reed v. Agilent Techs., Inc., 174 F. Supp. 2d 176 (D. Del. 2001) ("A plaintiff may not avoid summary judgment merely by showing that the employment decision was wrong, or even mistaken"). In Mosca, a reverse discrimination case, plaintiff, who was Caucasian, claimed that a co-worker spread a rumor that he had made a derogatory remark about his superior. Mosca, 2007 U.S. App. LEXIS 3286, at *3. Although plaintiff denied making the remark, he believed it was an obstacle in his hiring and that the employer's failure to conduct a formal investigation into the alleged rumor - as compared to full investigations of other complaints of harassment - was evidence of reverse discrimination. Id. at *10. The court found that plaintiff "fail[ed] in his contention that the absence of a formal investigation into the alleged rumor shows his employer's tendency to treat Caucasians less well than others," because his remark was "not equivalent to the allegations of sexual harassment and other discrimination" that were the subject of formal investigations. Id. at **11.

Here, as set forth in Defendants' moving papers, Mitchell conceded that his complaint regarding the 9/11 rumors was not a complaint of discrimination. (Def. Br. at 28-29). Therefore, Wachovia's investigation of these rumors cannot properly be compared to its investigation as to whether Mitchell had made an offensive comment to Amini, and any difference between the two fails to show discriminatory intent. In general, it makes little sense for Plaintiff to "compare the treatment of Mitchell by his supervisor with that afforded Amini by hers" (Pl. Br. at 26), when the two had different positions in distinct companies and were managed by different people; they were in no way similarly situated. More importantly, it is not enough for Mitchell to complain of the mishandling of the 9/11 incident and "rumor" without showing that Amini, DiFebo, Beam or Gauthier actually acted with discriminatory animus.

Furthermore, Plaintiff attempts to save his claim by repeatedly asserting that unlike his experience at the Prices Corner branch, he has had no problems at the Capitol Trail and Meadowood branches, where the Branch Managers were or are African-American rather than white.  This contention has absolutely no basis in case law.  Should the Court allow such an argument to proceed to trial, it would be similar to allowing any plaintiff to use the lack of discrimination at a subsequent workplace to imply that a prior employer or manager had committed unlawful harassment.  The sole fact that different managers may have different standards or differences of opinion regarding resolving a conflict does not amount to unlawful discrimination.     This happenstance argument falls far short of establishing *intentional discrimination* on the part of the accused and should be rejected.

Finding no support in the record, Plaintiff attempts to argue that he need not have direct proof of discrimination.  (Pl. Br. at 23).  While direct evidence is not always necessary, Plaintiff nevertheless must adduce *some* evidence that allegedly hostile treatment was discriminatorily motivated.  The decision in Tucker v. Merck & Co., C.A. No. 04-3023, 2005 U.S. App. LEXIS 9087, at **12 (3d Cir. May 19, 2005) provides helpful guidance.  As the Third Circuit stated therein:

> In his hostile work environment claim, plaintiff cannot cite a single incident
> involving the utterance of a racial epithet, the use of a racist symbol, or *any* direct
> comment concerning race. Rather, plaintiff raises eight separate incidents where
> Merck made determinations regarding benefits issues raised by him. These
> incidents were each employment decisions or actions not linked directly with
> conduct regarding race. As discussed earlier, plaintiff failed to establish a prima
> facie case of intentional discrimination for each of the decisions. He has no direct
> evidence of discrimination and points to no similarly situated individual treated
> more favorably. *Plaintiff's subjective disagreement with these decisions, and
> even his opinion that they were racially motivated and were offensive, is
> insufficient as a matter of law to establish a hostile work environment.*

11

Id. (emphasis added). Because Tucker had not produced any evidence that any decision taken by Merck was racially motivated, he had not made a *prima facie* case of hostile work environment discrimination, and the Court therefore affirmed the District Court's grant of summary judgment to Merck.

Here too, Mitchell relies on nothing more than his unhappiness with management decisions and speculation that his race and gender were motivating factors. At his deposition, Mitchell admitted that his only reason for alleging race discrimination in connection with the decision to remove him from new account responsibility at Prices Corner is that "I can't think of any other reason." (Mitchell Tr. 159:5-14, 162:24-163:4). Similarly, Mitchell stated that his reason for alleging gender discrimination is that "I just felt that [DiFebo] didn't want to have a male in the office" and that DiFebo and Amini allegedly "resented the fact that I was a male figure in a supervisory position," but admitted that neither DiFebo nor Amini ever said anything to indicate that either of them actually felt this way. (Mitchell Tr. 189:14-23, 190:14-192:1). As stated in Defendants' opening brief, such speculation is insufficient to defeat a summary judgment motion.

## 2. **Mitchell's Section 1981 Claim Is Both Factually And Legally Insufficient.**

As set forth in Defendants' moving papers, Mitchell cannot "point to facts of record which, if proved, would 'establish that defendants' actions were racially motivated and intentionally discriminatory" McKay v. Delaware State Univ., C. A. No. 99-219-SLR, 2000 U.S. Dist. LEXIS 14653, at *38 (D. Del. Sept. 29, 2000). For the reasons stated above with respect to Mitchell's hostile work environment claim, there simply is no evidence that Defendants acted with discriminatory animus or that Mitchell would have been treated differently if he were white or female.

NY1 26500021.3

Mitchell fails to realize that at all times, the ultimate burden of persuading the trier of fact of the defendant's discriminatory intentions remains with the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). On this record, he has not shown that the individual defendants "singled [him] out and treated [him]less favorably than others similarly situated on the basis of an impermissible criterion." Equal Employment Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990). Mitchell therefore cannot prevail on his Section 1981 claim and it should be dismissed.

3.      **The Mitchell And Finney Affidavits Should Be Disregarded.**

Lacking any evidence from which a jury could infer racial or gender animus against him, Mitchell attempts to save his case with an affidavit from James Finney, a former teller in the Prices Corner branch. At the outset, Finney's affidavit solely concerns his own employment with Wachovia, rather than any first-hand observations about Mitchell's. Such allegations are plainly not material to Mitchell's claims. Moreover, Finney's allegations concern physical contact by his supervisor, Petra Rash, but fail to specify what made this alleged contact discriminatory. See Finney Aff. ("During the time I worked at Prices Corner, I was subjected to harassing and discriminatory conduct by Petra Rash, a white woman serving as Wachovia Teller Manager, as well as by other white female teller managers. Such conduct involved being touched inappropriately and being struck with papers."). These allegations are in no way similar to Mitchell's and more importantly, involve none of the same actors. See Finney Aff. To the extent that Finney's affidavit concerns persons other than Mitchell and the remaining individual defendants, it is irrelevant and should be disregarded. Lacy v. AMTRAK, C.A. No. 07-3374, 2007 U.S. App. LEXIS 27279, at *6 (3d Cir. Nov. 26, 2007) (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002)) (holding that co-worker affidavits submitted by plaintiff, which do not refer to specific instances of harassment and merely set forth conclusory

13

statements regarding discriminatory motive, were insufficient to withstand summary judgment ). See generally Fed. R. Evid. 404(b) (requiring exclusion of evidence concerning "other crimes, wrongs or acts" by a party).

Likewise, the Court should not give any weight to Mitchell's "affidavit." As the Third Circuit has made abundantly clear, a "self serving affidavit, without support, cannot create an issue of fact and cannot defeat summary judgment." Thimons v. PNC Bank, N.A., C.A. No. 06-3815, 2007 U.S. App. LEXIS 24895, at *6 (3d Cir. Oct. 23, 2007) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Yet this is exactly what Mitchell seeks to do. For example, Mitchell states in his affidavit that he "*believes* that Prices Corner was being taken away from me for the improper reason that the white women at the branch did not like me or want to work with me because I was an African American male." Yet Mitchell offers absolutely no evidence, apart from his own say-so, from which a jury could also draw this conclusion. Mitchell's beliefs are insufficient to oppose the instant motion; he "can not avoid summary judgment simply by arguing that the fact-finder need not believe the Defendant's proffered legitimate explanations." Id. (citing Fuentes, 32 F.3d at 764). Importantly, Mitchell conceded at his deposition that no one at Prices Corner said anything negative, derogatory or discriminatory to him on the few occasions when he was at that branch between November 2003 and December 2004 (Mitchell Tr. 145:10-16), and that no employee of any Wachovia entity ever said anything to him about his or anyone else's race or gender. (Mitchell Tr. 161:24-162:23, 170:7-20, 193:24-194:5, 206:13-16). Mitchell's speculation as to whether various individuals "liked" him, without any accompanying evidence of bias, is precisely the sort of non-evidence that this very Court has rejected in the past as insufficient to withstand summary judgment. McLaughlin v. Diamond State Port Corp., C.A. No. 03-617-GMS, 2004 WL 3059543, at *8 (D. Del. Dec. 30, 2004) ("At

14

best, [plaintiff's] speculation about the motives of her supervisors would only support an inference that they did not like her in particular, as opposed to women generally.").

Finally, Mitchell's detailed effort to defend his job performance at Prices Corner is insufficient to show that Wachovia Securities and Gauthier's stated reason for placing him exclusively at Capitol Trail, *i.e.*, his lack of production, was a pretext for discrimination. Even by Mitchell's self-serving account, he was not meeting his personal performance goals at the Prices Corner Branch. (Pl. Br. at 30). Given that Mitchell is an at-will employee with no contractual entitlement to any specific assignment Wachovia Securities was well within its rights to change Mitchell's assignment for performance reasons. Mitchell's subjective assessment of his performance is irrelevant; it is well-settled that courts may not second-guess employers' performance-based decision or substitute their own business judgment for that of management. Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) ("[W]e will not second guess the method an employer uses to evaluate its employees."); Love v. U.P.S., C.A. No. 2:04-cv-964, 2006 WL 2806565, at *5 (W.D. Pa. Sept. 28, 2006) ("The anti-discrimination laws do not transform this Court into a super-personnel department vested with the authority to second-guess the wisdom of business decisions"). Quite simply, the Court should not entertain Mitchell's efforts to recast his performance in a more favorable light when the numbers so plainly speak for themselves.

**B.      Mitchell Fails To State A *Prima Facie* Case Of Retaliation Because He Did Not Engage In Any Protected Activity Prior To The Allegedly Retaliatory Action.**

As set forth in Defendants' moving papers, Mitchell cannot establish a *prima facie* case of retaliation because he admits that he did not engage in any protected activity prior to his exclusive placement at Capitol Trail in December 2004. In his Answering Brief, but contrary to his deposition testimony, Mitchell boldly asserts that his "act of reporting the hostile conduct to

Human Resources in July 2003 constitutes protected activity for purposes of a retaliation claim." (Pl. Br. at 34). Yet Mitchell cites no supporting case law for this plainly incorrect conclusion and makes no attempt to undermine the cases cited in Defendants' Brief establishing that "a general complaint of unfair treatment does not translate into a charge of illegal discrimination, and is not protected conduct under Title VII." Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006). (Def. Br. at 28-29). Given Mitchell's admission that he did not make his first complaint of discrimination until January 2005, no action taken in December 2004 could have been retaliatory as a matter of logic.

Further, even if Mitchell could establish that his July 2003 complaint constituted protected activity – which he cannot, as it did not assert any discrimination – the extended time lapse between that complaint and his exclusive placement at Capitol Trail in December 2004 negates any inference of causation. Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, courts in this circuit have found that gaps as short as three months may defeat an inference of causation. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, at *39 (3d Cir. Sept. 19, 2007) (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)) (rejecting inference of causation where the events were three months apart); Andreoli v. Gates, 482 F.3d 641 (3d Cir. 2007) (holding that five-month period between employee's complaint and first adverse action did not support inference of causation); Shaner v. Synthes (USA), 204 F.3d 494, 505 (3d Cir. 2000) ("[T]he passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period."); Koschoff v. Henderson, C.A. No. 98-2736, 1999 WL 907546, at *16 (E.D. Pa. Oct. 7, 1999) ("[I]f at least four months pass after the protected action, without employer reprisal, there is no inference of

causation."); <u>Harley v. McCoach</u>, 928 F. Supp. 533, 542 (E.D. Pa. 1996) (granting summary judgment based on lack of causation where reassignment occurred eight months after internal complaint).

On this record, Plaintiff's retaliation claim fails and should be dismissed.

### III.

### WITH NO SECTION 1985 AND 1986 CLAIMS, MITCHELL'S STATE LAW CONSPIRACY CLAIM AUTOMATICALLY MUST BE DISMISSED

Plaintiff has voluntarily withdrawn his Section 1985 and 1986 federal conspiracy claims (which have since been dismissed), yet still attempts to advance his state law conspiracy claim. (Pl. Br. at 38-40). This position is untenable. As this Court has recognized, "if neither of these [federal] statutes are implicated, the claim for civil conspiracy must be dismissed because civil conspiracy claims cannot stand alone without some independent statutory violation." <u>Carter v. Delaware State Univ.</u>, C.A. No. 99-642-GMS, 2002 U.S. Dist. LEXIS 3116, at *25 (D. Del. Feb. 27, 2002), <u>aff'd</u>, 65 Fed. Appx. 397 (3d Cir. 2003); <u>see</u> <u>Phoenix Canada Oil Co. Ltd. v. Texaco Inc.</u>, 560 F. Supp. 1372, 1388 (D. Del. 1983) (explaining, "Delaware courts do not recognize independent actions for civil conspiracies"). Having withdrawn his federal conspiracy claims, Mitchell has also conceded his civil conspiracy claim, which fails as a matter of law and must be dismissed.

NY1 26500021.3

## CONCLUSION

For the foregoing reasons and those set forth in Defendants; moving papers, the Court should enter an order: (i) granting summary judgment to Defendant with respect to each of Mitchell's claims, and (ii) granting to Defendant such other and further relief as the Court may deem just and proper.

MORRIS JAMES LLP

*James H. McMackin*

P. Clarkson Collins, Jr. (#739)
pcollins@morrisjames.com
David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800

SEYFARTH SHAW LLP

David Bennet Ross (admitted *pro hac vice*)
Devjani Mishra (admitted *pro hac vice*)
Tara Smith Williams (admitted *pro hac vice*)
620 Eighth Avenue, Suite 3100
New York, NY 10018
(212) 218-5500

Attorneys for Defendants

Dated: January 29, 2008