UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH S. MITCHELL,                  ) | | |
|         Plaintiff,    ) | | |
| ) | | |
| v.                                                         ) | C.A. No. 06-12-725 (GMS) | |
| ) | | |
| WACHOVIA CORPORATION, t/a    ) | JURY TRIAL DEMANDED | |
|    WACHOVIA SECURITIES,              ) | | |
| WACHOVIA SECURITIES, L.L.C.,  ) | | |
| WACHOVIA SERVICES, INC.,          ) | | |
| WACHOVIA BANK OF DEL, N.A.,  ) | | |
| TODD D. GAUTHIER,                        ) | | |
| CAROLYN J. BEAM, and                   ) | | |
| DOROTHY A. DIFEBO,                    ) | | |
|         Defendants.  ) | | |

PLAINTIFF'S TRIAL BRIEF


                                            BIGGS AND BATTAGLIA
                                            Victor F. Battaglia, Sr. (Del. Bar #156)
                                            Steven F. Mones (Del. Bar #2611)
                                            921 N. Orange Street
                                            P.O. Box 1489
                                            Wilmington, DE  19899-1489
                                            Tel:  302-655-9677
                                            Fax:  302-655-7924
                                            smones@batlaw.com
                                            Attorneys for Plaintiff

March 31, 2008

TABLE OF CONTENTS

Table of Citations ................................................................................................................ iii

Introduction (Nature of the Case) ........................................................................................ 1

Nature and Stage of Proceedings ......................................................................................... 2

Facts Plaintiff Expects to Prove ........................................................................................... 4

Plaintiff's Theory of Liability ............................................................................................... 9

Plaintiff's Theory of Damages ............................................................................................ 12

Possible Motion for Directed Verdict ................................................................................ 13

Conclusion .......................................................................................................................... 14

TABLE OF CITATIONS

Cases

*Al-Khazraji v. Saint Francis College*,
784 F.2d 505 (3d Cir. 1986) ............................................................................................. 11

*Burlington N. & S.F. Ry. Co. v. White*,
126 S.Ct. 2405 (2006) ...................................................................................................... 10

*Cole v. Delaware Technical & Com. College*,
459 F.Supp. 296 (D.Del. 1996) ......................................................................................... 9

*Marzano v. Computer Science Corp.*,
91 F.3d 497 (3d Cir. 1996) ............................................................................................... 11

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) .......................................................................................................... 9

*Nicolet v. Nutt*,
525 A.2d 146 (Del. 1987) ................................................................................................ 11

*Price v. Dept. of Correction*,
40 F.Supp. 544 (D.Del. 1999) ......................................................................................... 10

Statutes

42 *U.S.C.* §1981 ............................................................................................................... 3, 9, 10

42 *U.S.C.* §1985 ....................................................................................................................... 3

42 *U.S.C.* §1986 ....................................................................................................................... 3

42 *U.S.C.* §2000e ............................................................................................................ 3, 9, 10

19 *Del.C.* §710 ................................................................................................................ 3, 9, 10

Rules

Federal Rule of Civil Procedure 56 ........................................................................................... 3

## INTRODUCTION (NATURE OF THE CASE)

This case involves the racial and gender discrimination claims of plaintiff Kenneth S. Mitchell, an African-American male employed as a Financial Advisor with Wachovia.

Plaintiff was the victim of a campaign of discrimination and harassment by a group of white female employees at Wachovia's Prices Corner branch. Defendant Dorothy DiFebo, defendant Carolyn Beam, and Ladan Amini made or deliberately spread malicious accusations against plaintiff that were completely false. Wachovia management acquiecsed in the racial and gender discrimination and took no steps to correct the individuals responsible for such conduct even when the allegations were proven demonstrably false. Despite being exonerated of all the false and malicious accusations, plaintiff was removed from the Prices Corner branch by his manager, defendant Todd D. Gauthier, and replaced by a White male. Prior to plaintiff being at Prices Corner, the branch had been serviced by White Financial Advisor. Mr. Gauthier told Mr. Mitchell that Prices Corner "was not right for him," and that the staff did not like him and did not want to work with him. In effect, the victim, not the perpetrators, was punished.

Defendants argue that Mr. Mitchell's problems at Prices Corner were simply trivial personality conflicts. Mr. Mitchell had no such conflicts with personnel at either the Capitol Trail or Meadowood branches. Both of those branches were managed by African-American women. Prices Corner, by contrast, was managed by a White woman, defendant DiFebo, who went out of her way to isolate and cause conflict with Mr. Mitchell. Ms. Beam, who was Ms. Amini's supervisor, also took no action against Ms. Amini's demonstrably false accusations and antagonism. The White female employees stopped referring business to Mitchell and generally isolated him.

As a result of suffering the discriminatory conduct on the part of the defendants, and having his employer turn a deaf ear to his repeated complaints, plaintiff developed depression which has necessitated treatment from his family physician, a psychiatrist, and a psychologist. Plaintiff also takes prescription medication for depression and anxiety. Plaintiff had never before suffered symptoms of depression or taken any antidepression or antianxiety mediations.

Due to his depression, plaintiff has not been able to perform his duties as a Financial Advisor to the same extent as before the discriminatory conduct. As a result, plaintiff has suffered lost earnings, is continuing to suffer such losses, and will continue to in the future.

In addition to the facts and other information contained within this Trial Brief, Plaintiff incorporates by reference the facts and other information recited in Plaintiff's answering brief in opposition to Defendants' motion for summary judgment, and the facts and other information recited by Plaintiff in the Pretrial Order submitted jointly by the parties.

NATURE AND STAGE OF PROCEEDINGS

On December 1, 2006, plaintiff Kenneth S. Mitchell filed a Complaint against the individual and entity defendants alleging racial and gender discrimination under Title VII, 42 *U.S.C.* §2000e *et seq.*, 42 *U.S.C.* §1981, 19 *Del.C.* §710 *et seq.,* civil conspiracy, and other federal and state laws, in connection with his employment with Wachovia.

On February 23, 2007, 2007, defendants filed an Answer to the Complaint. The parties subsequently engaged in extensive discovery involving production of documents and depositions of witnesses.

On January 7, 2008, defendants filed a Motion for Summary Judgment pursuant to F.R.C.P. 56 as to all claims in plaintiff's Complaint. The parties duly filed their answering and reply briefs, and plaintiff requested oral argument on the motion. The matter is pending with the Court.

The claims against individual defendant Lynn Meyer were voluntarily dismissed by stipulation filed with and approved by the Court. Plaintiff also voluntarily dismissed claims under 42 *U.S.C.* §§1985 and 1986, state law fraud, and *prima facie* tort. Plaintiff is continuing to pursue claims under 42 *U.S.C.* §2000e *et seq.*, 42 *U.S.C.* §1981, 19 *Del.C.* §710 *et seq.,* and for civil conspiracy.

A jury trial is scheduled to commence on May 12, 2008. Plaintiff expects the trial to take 4-5 days. The pretrial conference is scheduled for April 21, 2008, at 9:30 a.m. This is Plaintiff's Trial Brief to accompany the Pretrial Order submitted by the parties.

## FACTS PLAINTIFF EXPECTS TO PROVE

(1)     Plaintiff Kenneth S. Mitchell was hired by defendant Wachovia in August 2002 in the position of Financial Advisor at the level of Vice President.

(2)     The Wachovia entity defendants operate securities and banking facilities around the country including Delaware.

(3)     Mr. Mitchell was first assigned to work out of the Wachovia Capitol Trail financial center ("branch"), and he also had responsibility for providing Financial Advisor services at the Wachovia Prices Corner branch.

(4)     Mr. Mitchell's immediate supervisor from 2002 through 2005 was defendant Todd D. Gauthier who held the title of Regional Sales Manager.

(5)     The Financial Center Manager for the Prices Corner branch, at all times relevant to this litigation, has defendant Dorothy DiFebo.

(6)     The Financial Center Manager for the Capitol Trail branch, from 2002 to 2006, was Gloria Sharp.

(7)     Mr. Mitchell, a Financial Advisor, was expected to work in partnership and cooperation with Wachovia Financial Specialists at the Prices Corner and Capitol Trail branches.

(8)     The Financial Specialist at Prices Corner with whom Mr. Mitchell worked from 2002 to 2004 was Ladan Amini.

(9)     Ms. Amini's supervisor with Wachovia from 2002 to 2004 was Carolyn Beam who held the title of Financial Sales Leader.

(10)    Ms. Beam's supervisor with Wachovia from 2002 to 2004 was Lynn Meyer who held the title of Retail Bank Director.

(11) Mr. Gauthier's supervisor with Wachovia, from 2002 to 2005, was Frank Consalo who held the title of Regional President.

(12) Financial Advisors and Financial Specialists earned commissions on financial trades they engaged in together.

(13) In June 2003, Mr. Mitchell and Ms. Amini were involved in an incident with a customer who disputed a $6.00 charge on a trade.

(14) Also in June 2003, Mr. Mitchell raised concerns about certain annuity trades engaged in by Ms. Amini; several weeks later, Mr. Mitchell was criticized by Ms. Meyer about this incident and was told that Ms. Amini feared for her job.

(15) On July 16, 2003, Mr. Gauthier called Mr. Mitchell about a purported incident in which Mr. Mitchell allegedly made ethnic slurs towards Ms. Amini (the "9/11 Incident"). Later, Mr. Gauthier called Mr. Mitchell and said that it had been determined that Mr. Mitchell had not made the alleged statements.

(16) The conversation between Mr. Mitchell and Ms. Amini, during which the alleged ethnic slurs were uttered, occurred in April or May 2003 which is several months before the matter was mentioned to Mr. Mitchell by Mr. Gauthier.

(17) Ms. Amini mentioned the 9/11 Incident to Ms. DiFebo, who urged Ms. Amini to call Wachovia Human Resources or to take some other action against Mr. Mitchell.

(18) Mr. Gauthier learned of the 9/11 Incident from Ms. Beam who had learned of it from Ms. DiFebo.

(19) During a conversation with Mr. Gauthier and Ms. Beam, Ms. Amini denied that Mr. Mitchell had made the alleged ethnic slurs.

(20) Although the conversation between Ms. Amini and Mr. Mitchell in which 9/11

was allegedly raised occurred months earlier, it was not until after later incidents involving Ms. Amini and Mr. Mitchell that the 9/11 Incident was brought to the attention of Wachovia management.

(21) Following his conversations with Mr. Gauthier, including learning that he could have been fired as a result of the alleged 9/11 Incident, Mr. Mitchell contacted Wachovia Human Resources and asked that the matter be investigated.

(22) Following the 9/11 Incident, Ms. Amini stopped referring clients to Mr. Mitchell and stopped engaging in the partnering process in which Financial Advisors and Financial Specialists were to engage.

(23) Following the 9/11 Incident, during the time that Wachovia was allegedly investigating the incident, Mr. Mitchell had no reason to go to Prices Corner branch because the White employees had isolated him.

(24) After he returned to the Prices Corner branch, the relationship between Mr. Mitchell and Ms. Amini never recovered fully. Ms. Amini no longer referred clients to Mr. Mitchell, and Mr. Mitchell's financial production figures from Prices Corner began to decrease.

(25) Although Mr. Mitchell enjoyed a good relationship with all personnel at Capitol Trail, and was exceeding his financial goals there, his production figures at Prices Corner diminished due to friction he experienced from Ms. Amini, Ms. Beam, and Ms. DiFebo.

(26) During 2004, Mr. Gauthier advised Mr. Mitchell that he should leave Prices Corner. Mr. Gauthier told Mr. Mitchell that Wachovia had a new policy of one branch per Financial Advisor, and he thought Mr. Mitchell should leave Prices Corner and choose Capitol Trail as his one branch. Mr. Mitchell wanted to remain at Prices Corner as he believed there was more opportunity there than at Capitol Trail.

(27)   Mr. Mitchell had long sought office space at Prices Corner so that he could better serve Wachovia clients and also be present more often so as to improve his relationships with the employees at that branch.

(28)   On November 18, 2004, Ms. Amini complained to Ms. Beam about Mr. Mitchell not following a Wachovia procedure. Ms. Beam reported this to Mr. Gauthier. Mr. Gauthier advised Ms. Beam that he had personal knowledge of the matter and that Ms. Amini was engaging in "fabrication." concerning Mr. Mitchell's conduct. No action was ever taken against Ms. Amini for this incident.

(29)   On December 6, 2004, Mr. Mitchell began to work out of an office at Prices Corner.

(30)   On December 9, 2004, Mr. Gauthier called Mr. Mitchell and said that he had decided to remove Mr. Mitchell from the Prices Corner branch. Mr. Gauthier said that Mr. Mitchell was "not right for that branch," and that the personnel there did not like him or want to work with him.

(31)   After having had the Prices Corner branch taken away from him, Mr. Mitchell worked out of the Capitol Trail branch. Mr. Mitchell began suffering symptoms of depression and began seeking medical attention. Mr. Mitchell had never before suffered these symptoms.

(32)   In 2006, the Capitol Trail branch was closed, and Mr. Mitchell was transferred to the Meadowood branch. Since moving to Meadowood, Mr. Mitchell has experienced no problems of any kind with any personnel there.

(33)   The Financial Center Managers at Capitol Trail and Meadowood were African-American women, and Mr. Mitchell has never experienced any interpersonal problems of any kind at either branch.

(34)     The Financial Center Manager at Prices Corner was a White woman (Ms. DiFebo), and Mr. Mitchell experienced continual interpersonal problems with her and other white female employees at that branch (*e.g.*, Ms. Amini).  Mr. Mitchell was the only African-American male at Prices Corner during the time he worked there.

(35)     Due to his depression, Mr. Mitchell has not been able to focus or concentrate on restoring his financial production; he never had those problems prior to his experiences with Ms. DiFeo, Ms. Beam, and Ms. Amini.

(36)     As a result of the wrongful and discriminatory conduct against him, Mr. Mitchell has had to seek health care from his primary care physician (Dr. Agard), a psychiatrist (Dr. Pereira-Ogan), and a psychologist (Dr. Kozma).  Mr. Mitchell has been diagnosed with depression as a result of his experiences at his workplace.

(37)     As a result of the wrongful and discriminatory conduct against him, Mr. Mitchell has had to take medications for depression.  Mr. Mitchell never before suffered depression or had to take medications to control depression or anxiety.

(38)     Mr. Mitchell has suffered economic harm in the form of lost earnings, past, present, and future.  The amount of such lost earnings shall be presented through expert testimony of Robert F. Minnehan, Ph.D., and are consistent with the report prepared by Dr. Minnehan and previously produced to defendants.

PLAINTIFF'S THEORY OF LIABILITY

1. Race and Gender Discrimination under Title VII, 42 U.S.C. §2000e, *et seq.*, and 19 *Del.C*. §710, *et seq.*

Defendants engaged in discriminatory acts against plaintiff based on his race and his gender. Defendants created a hostile work environment and denied plaintiff an opportunity to remain at the branch office, Prices Corner, to which he had been assigned.

Defendant DiFebo did not want to work with an African-American Financial Advisor, and she treated plaintiff with disrespect and hostility, which is different from how she treated the White Financial Advisors who had formerly worked in that branch. Defendant DiFebo also created or spread false and malicious rumors about plaintiff. Defendant Beam spread false and malicious rumors about plaintiff, including contacting plaintiff's immediate supervisor (defendant Gauthier), without having checked the facts which were readily ascertainable. Defendant Gauthier took action against plaintiff that was unfounded and not based on fact, and he subsequently removed plaintiff from the Prices Corner branch which exacerbated the discriminatory conduct plaintiff suffered from the other individual defendants.

The entity defendants failed to properly investigate the matters. When it was discovered that false and malicious accusations had been made against plaintiff, they took no action against the individuals responsible for the actions, and they upheld plaintiff's removal from his assigned branch.

Plaintiff's claims are supported by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Cole v. Delaware Technical & Com. College*, 459 F.Supp. 296 (D.Del. 1996), and the statutes cited above.

2.  Retaliation under Title VII, 42 U.S.C. §2000e, *et seq*., and 19 *Del.C.* §710, *et seq*.

When plaintiff refused to refrain from seeking formal investigation of the false and malicious accusations made against him, defendants removed him from the Prices Corner branch, where he had been assigned and which was his first choice of branches. Defendants took no action against those individuals who had created and spread malicious and false rumors about plaintiff, and instead acted against him to exacerbate the hostile work environment and the discriminatory conduct.

Plaintiff's claims are supported by *Burlington N. & S.F. Ry. Co. v. White*, 126 S.Ct. 2405 (2006), *Price v. Dept. of Correction*, 40 F.Supp. 544 (D.Del. 1999), and the statutes cited above.

3.  Violation of Equal Rights under 42 *U.S.C.* §1981

The discriminatory and other illegal actions taken against plaintiff by defendants were based on his race and, therefore, violated plaintiff's rights and privileges under federal law.

Plaintiff's immediate supervisor, defendant Gauthier, told plaintiff that the staff at the Prices Corner branch, including defendant DiFebo, did not want to work with him. Defendant Gauthier also told plaintiff that he "was not right for that branch." Plaintiff was also working at another branch at that time, which had an African-American woman manager, and he experienced no discriminatory or hostile acts there. Later, when plaintiff was transferred to another branch managed by an African-American woman manager, he also experienced no interpersonal difficulties of any kind.

The only discriminatory conduct plaintiff has experienced occurred when he worked at the Prices Corner branch which was managed by a defendant DiFebo, a White woman, who

manifested open hostility and discriminatory conduct towards plaintiff. Plaintiff was transferred from a branch that he had wanted to work at due to conflict he experienced with defendant DiFebo and other employees exclusively due to his race and gender.

Plaintiff's claims are supported by *Al-Khazraji v. Saint Francis College*, 784 F.2d 505 (3d Cir. 1986), *Marzano v. Computer Science Corp.*, 91 F.3d 497 (3d Cir. 1996), and the statutes cited above.

### 4. State Law Conspiracy

Individual defendants Gauthier, Beam, and DiFebo engaged in intentionally wrongful conduct against plaintiff based on his race and gender. The actions of the individual defendants was designed expressly to remove plaintiff from the Prices Corner branch where he was unwelcome due to his race and gender. The individual defendants, acting with the authority of plaintiff's employer, breached the covenant of good faith and fair dealing that is present in every employment relationship in the State of Delaware. The individual defendants intentionally and wrongfully removed plaintiff from a work location to which he had been assigned based solely on his race and gender.

Plaintiff's claims are supported by *Nicolet v. Nutt*, 525 A.2d 146 (Del. 1987).

PLAINTIFF'S THEORY OF DAMAGES

Plaintiff is entitled to the following elements of monetary damages:

1. Compensatory damages for past, present, and future loss of earnings, including bonuses and related income, that he would have earned had he not been subjected to the hostile work environment and illegal racial and gender discrimination by defendants. As a result of the illegal conduct of defendants, plaintiff developed depression which has affected his ability to perform his duties to the same level as previously. The amount of lost earnings is quantifiable and shall be presented through expert testimony of Robert F. Minnehan, Ph.D. Plaintiff is entitled to damages to put him in the economic position he would have been in had defendants not violated his rights. *Cuffee v. The Dover Wipes Co.*, C.A. No. 03-276 (SLR) (D.Del. 2004 (Joint Proposed Jury Instructions).

2. Compensatory damages in an amount to be determined by the jury for the emotional distress that was proximately caused by defendants' wrongful and illegal conduct towards plaintiff. Plaintiff developed depression as a result of the conduct directed towards him by the defendants. Plaintiff has seen, and is continuing to see, a psychiatrist (Dr. Pereira-Ogan) and a psychologist (Dr. Kozma) for treatment of his depression. In addition, plaintiff's primary care physician (Dr. Agard) has provided treatment for the depression including prescriptions for medications. The expert testimony of the above health care providers will establish the causal relationship between plaintiff's work experiences and his depression.

3. Punitive damages in an amount to be determined by the jury for the outrageous, unjustified, and intentionally wrongful or recklessly indifferent conduct of defendants. In particular, but not exclusively, defendants took no action against the individuals who engaged in

the discriminatory conduct towards plaintiff even after it was determined, on more than one occasion, that the allegations made against him were patently false. Plaintiff was removed from his primary place of business, the Prices Corner branch, and the individuals who engaged in the wrongful conduct suffered no repercussions or affects on their careers.

    4.    Reasonable attorneys fees due to the egregious nature of defendants' conduct.

    5.    Court costs and litigation costs.

    6.    Prejudgment interest on any economic loss award, and postjudgment interest on all damages.

Possible Motion for Directed Verdict

Defendants have already moved for summary judgment on all claims in the case. The matter has been fully briefed, oral argument has been requested, and the motion is pending with the Court. If the Court denies defendants' motion in whole or in part, plaintiff believes that the remaining claims will proceed to the jury and that a motion for directed verdict it not likely.

## CONCLUSION

Plaintiff expects to prove that defendants engaged in egregious racial and gender discrimination that has caused him physical harm, requiring medical and psychological care, as well as actual economic harm. Plaintiff believes that the evidence and witness testimony will support his claims, and that the jury will return a verdict in his favor.

        BIGGS AND BATTAGLIA

        /s/  Steven F. Mones
        Victor F. Battaglia  (Del. Bar #156)
        Steven F. Mones  (Del. Bar #2611)
        921 N. Orange Street
        P.O. Box 1489
        Wilmington, DE  19899-1489
        302-655-9677
        smones@batlaw.com
        Attorneys for Plaintiff Kenneth S. Mitchell

March 31, 2008