UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH S. MITCHELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-725 (GMS) |
| | ) | |
| WACHOVIA CORPORATION, t/a | ) | JURY TRIAL DEMANDED |
| WACHOVIA SECURITIES, | ) | |
| WACHOVIA SECURITIES, L.L.C., | ) | |
| WACHOVIA SERVICES, INC., | ) | |
| WACHOVIA BANK OF DEL., N.A., | ) | |
| TODD D. GAUTHIER, | ) | |
| CAROLYN J. BEAM, and | ) | |
| DOROTHY A. DIFEBO, | ) | |
| Defendants. | ) | |

## FINAL PRETRIAL ORDER

This matter having come before the Court at a pretrial conference held pursuant to Fed.R.Civ.Pro. ("Rule") 16, and Steven F. Mones of Biggs and Battaglia, 921 N. Orange Street, P.O. Box 1489, Wilmington, DE 19899-1489, 302-655-9677, having appeared as counsel for plaintiff, and James H. McMackin, III, of Morris James LLP, 500 Delaware Avenue, Suite 1500, P.O. Box 2306, Wilmington, DE 19899-2306, having appeared as counsel for defendants, and Devjani Mishra of Seyfarth Shaw, LLP 620 Eighth Avenue, New York, NY 10018-1405, having appeared as counsel for defendants through admission *pro hac vice*, the following actions were taken:

1.      This is an action for racial and gender discrimination and retaliation. Jurisdiction of the Court is involved under 28 *U.S.C.* §§1331 and 1343, as well as under §§1981, 1988, and

1724628/1

2000e.  Supplemental jurisdiction over the related state law claims is based on 28 *U.S.C.* §1391(b). [1]

2.      The following stipulations and statements were submitted and are attached to and made a part of this Order:

(a)     A comprehensive stipulation of uncontested facts which will become a part of the evidentiary record in this case and which may be read to the jury by the Court or any party; [2]

(1)     Plaintiff Kenneth S. Mitchell was hired by defendant Wachovia Securities, L.L.C. ("Wachovia Securities") in August 2002 in the position of Financial Advisor and the level of Vice President.

(2)     Wachovia Securities is a joint venture by Wachovia Corporation and Prudential Financial, Inc.

(3)     Wachovia Securities is in the securities brokerage business and maintains operations around the country, including Delaware.

(4)     Defendant Todd Gauthier, who worked for Wachovia Securities as a Regional Sales Manager during the relevant time period, recruited Mr. Mitchell through both phone and in-person contact.

---

[1] In diversity cases or other cases requiring a jurisdictional amount in controversy, the Order shall contain either a stipulation that $75,000 is involved or a brief written statement citing evidence supporting the claim that such sum could be reasonably awarded.

[2] Counsel for Plaintiffs has the responsibility to prepare the initial draft of a proposed stipulation dealing with allegations in the complaint.  Counsel for any counter-, cross- or third-party complainant has the same responsibility to prepare a stipulation dealing with allegations in that party's complaints.  If the admissibility of any uncontested fact is challenged, the party objection and the grounds for objection must be stated.

(5)    Mr. Mitchell's offer letter did not guarantee him a position in any specific Wachovia Securities office.

(6)    Mr. Mitchell was first assigned to work out of the Wachovia Capitol Trail financial center ("branch"), and he also had responsibility for providing Financial Advisor services at the Wachovia Prices Corner branch.

(7)    Prior to Mr. Mitchell's assignment to the Capitol Trail and Prices Corner branches, these branches had been serviced by Ed Duffy, a white male.

(8)    Mr. Mitchell's immediate supervisor from 2002 through 2005 was defendant Todd D. Gauthier, whose office was located in Philadelphia, and who held the title of Regional Sales Manager.

(9)    Mr. Mitchell did not report to anyone located at either Capitol Trail or Prices Corner, and was not responsible for supervising any employees in either branch.

(10)   Mr. Gauthier's supervisor with Wachovia Securities, from 2003 to 2005, was Frank Consalo who held the title of Regional President.

(11)   The Financial Center Manager for the Prices Corner branch, at all times relevant to this litigation, has been defendant Dorothy DiFebo.

(12)   The Financial Center Manager for the Capitol Trail branch, from 2002 to 2006, was Gloria Sharp.

3

(13)    Mr. Mitchell, a Financial Advisor, was expected to work in partnership and cooperation with Wachovia Financial Specialists at the Prices Corner and Capitol Trail branches.

(14)    The Financial Specialist at Prices Corner with whom Mr. Mitchell worked from 2002 to 2004 was Ladan Amini, an employee of Wachovia Bank who also worked under Wachovia Securities for certain aspects of her duties relating to securities trading.

(15)    Ms. Amini's supervisor with Wachovia Bank from 2002 to 2004 was Carolyn Beam who held the title of Financial Sales Leader.

(16)    Ms. Beam's supervisor with Wachovia Bank from 2002 to 2004 was Lynn Meyer who held the title of Retail Bank Director.

(17)    Financial Advisors and Financial Specialists earned joint commissions on securities brokerage trades that they engaged in together.

(18)    Mr. Mitchell spent most of his time at the Capitol Trail branch, and only went to the Prices Corner branch on occasions when he had a joint appointment there with Ms. Amini and a customer.

(19)    Mr. Mitchell had a regular office at the Capitol Trail branch, but not at the Prices Corner branch.

(20)    During 2002 and the beginning of 2003, Mr. Mitchell's working relationship with Ms. Amini was pleasant and cordial.

4

(21)   In June 2003, Mr. Mitchell and Ms. Amini were involved in an incident with a customer, Richard Herrmann, who disputed a $6.00 charge on a trade.

(22)   On July 16, 2003, Mr. Gauthier called Mr. Mitchell about a purported incident in which Mr. Mitchell allegedly told Ms. Amini that "her people destroyed the World Trade Center buildings in New York" (the "9/11 Comment").

(23)   Later, the same day (July 16, 2003), Mr. Gauthier called Mr. Mitchell and stated that Ms. Amini had informed him that Mr. Mitchell did not make the comments in question.

(24)   Mr. Gauthier had learned of the 9/11 Comment from Ms. Beam.

(25)   Following his conversations with Mr. Gauthier, Mr. Mitchell contacted Wachovia Human Resources and asked that the matter be investigated.

(26)   Mr. Mitchell also told Mr. Gauthier that he would not go back to the Prices Corner branch until the matter had been investigated by Wachovia Human Resources.

(27)   Ms. Amini did not refer new business to any Financial Advisor other than Mr. Mitchell during the time that he was assigned to Prices Corner.

(28)   After investigating the matter, Wachovia Human Resources concluded that Mr. Gauthier should not have asked Mr. Mitchell whether the 9/11 Comment had been made based upon the

information that Mr. Gauthier had at the time, and so advised Mr. Mitchell on or about July 24, 2003.

(29)    On or about July 31, 2003, Mr. Gauthier apologized to Mr. Mitchell in person for having asked him about the alleged comment to Ms. Amini. In November 2003, both Mr. Gauthier and Ms. Beam apologized to Mr. Mitchell in person for the fact that he had been accused in July 2003 of making the comment to Ms. Amini.

(30)    Although Mr. Mitchell enjoyed a good relationship with all personnel at Capitol Trail, and was exceeding his financial goals there, his production figures at Prices Corner diminished after July 2003.

(31)    In February 2004, Mr. Gauthier held a meeting with Mr. Mitchell and various Bank employees from both the Capitol Trail and Prices Corner branches to discuss performance expectations and develop an investment prospecting and referral strategy for improving securities investment performance at each branch.

(32)    Mr. Mitchell did not request any specific assistance with improving his performance during this meeting, other than to ask that a regular office space be assigned to him at Prices Corner.

(33)    In March 2004, Mr. Gauthier suggested to Mr. Mitchell that he hire a broker-funded sales assistant to help him work with prospects

6

and clients at both branches, but Mr. Mitchell refused to consider it.

(34)    In July 2004, Mr. Gauthier and Ms. Beam met with him in person and discussed the fact that 80% of his production as an FA was coming from the Capitol Trail branch, where he was exceeding his sales goals, and only 20% of his production was coming from the Prices Corner branch.

(35)    Therefore, Mr. Gauthier advised Mr. Mitchell that he should leave Prices Corner.  Mr. Gauthier told Mr. Mitchell that Wachovia Securities was instituting a policy of assigning one branch per Financial Advisor, and he thought Mr. Mitchell should leave Prices Corner and choose Capitol Trail as his one branch based upon his performance at Capitol Trail.

(36)    Mr. Mitchell wanted to remain at Prices Corner as he believed there was more opportunity there than at Capitol Trail.

(37)    On December 6, 2004, Mr. Mitchell began to work out of an office at Prices Corner that became available after the departure of a Wachovia Bank employee.

(38)    On December 9, 2004, Mr. Gauthier directed Mr. Mitchell to work out of the Capitol Trail branch exclusively.

(39)    On January 27, 2005, an HR representative advised Mr. Mitchell that HR had investigated his complaint and had not found any

7

evidence of unfair treatment or discrimination. HR subsequently confirmed this conclusion by letter dated February 12, 2005.

(40)    In 2006, the Capitol Trail branch was closed, and Mr. Mitchell was transferred to the Meadowood branch. Since moving to Meadowood, Mr. Mitchell has experienced no problems of any kind with any personnel there.

(41)    The Financial Center Managers at Capitol Trail and Meadowood were African-American women, and Mr. Mitchell has never experienced any interpersonal problems of any kind at either branch.

8

(b)    An agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested facts or law not agreed to:

Statement by Plaintiff (contested facts and law):

(1)    Whether Defendants and other Wachovia employees created a hostile work environment.

(2)    Whether the individual defendants engaged in conspiracy with respect to wrongful acts against Mr. Mitchell.

(3)    Whether Defendants engaged in discrimination against Mr. Mitchell based on his race.

(4)    Whether Defendants engaged in discrimination against Mr. Mitchell based on his gender.

(5)    Whether Mr. Mitchell was treated differently at Prices Corner than at other Wachovia branches.

(6)    Whether Mr. Mitchell suffered emotional distress as a result of the treatment he received by defendants and other Wachovia employees.

(7)    Whether Wachovia took appropriate and sufficient actions to investigate Mr. Mitchell's charges that he was subjected to wrongful conduct and hostile work environment.

1724628/1

(8)   Whether Wachovia took appropriate and sufficient actions to investigate Mr. Mitchell's charges that he suffered discrimination due to his race and gender.

(9)   Whether Mr. Mitchell is entitled to receive compensatory damages.

(10)  Whether Mr. Mitchell is entitled to receive punitive damages.

(11)  Whether Defendants' actions toward Mr. Mitchell were motivated by good faith and legitimate business reasons.

(12)  Whether Mr. Mitchell mitigated his damages under the circumstances.

(13)  Whether all of the Wachovia entities are proper party defendants.

(14)  In June 2003, Mr. Mitchell raised concerns about certain annuity trades engaged in by Ms. Amini; these trades were then referred to Wachovia Securities' Compliance Department.

(15)  Mr. Mitchell was criticized by Ms. Meyer about the $6.00 and annuity trade incidents with Ms. Amini, and she told him that Ms. Amini feared for her job.

(16)  On December 9, 2004, Mr. Gauthier told Mr. Mitchell that he was removing Mr. Mitchell from the Prices Corner branch because he was "not right for that branch" and that the personnel there did not like him or want to work with him.

(17)  Prior to July 16, 2003, Ms. Amini complained to Ms. DiFebo about the "9/11 Incident" comments allegedly made by Mr. Mitchell, and

whether Ms. DiFebo then informed Ms. Beam about the alleged comments.

*Defendant objects on the ground of hearsay.*

(18)    Ms. Amini mentioned the 9/11 Incident to Ms. DiFebo, who urged Ms. Amini to call Wachovia Human Resources or to take some other action against Mr. Mitchell.

*Defendant objects on the ground of hearsay.*

(19)    The conversation between Mr. Mitchell and Ms. Amini, duriing which the 9/11 Comment was allegedly made occurred in April or May 2003, which is several months before the matter was mentioned to Mr. Mitchell by Mr. Gauthier.

(20)    On July 16, 2003, Mr. Gauthier and Ms. Beam met with Ms. Amini to discuss the alleged 9/11 Comment made by Mr. Mitchell.

(21)    Although the conversation between Ms. Amini and Mr. Mitchell in which 9/11 was allegedly raised occurred months earlier, it was not until after later incidents involving Ms. Amini and Mr. Mitchell that the 9/11 Incident was brought to the attention of Wachovia management.

(22)    During the July 16, 2003 conversations between Mr. Mitchell and Mr. Gauthier, Mr. Gauthier said that Mr. Mitchell could have been fired if he had made the alleged 9/11 Incident comments to Ms. Amini.

11

(23)    Following the 9/11 Incident, Ms. Amini stopped referring clients to Mr. Mitchell and stopped engaging in the partnering process in which Financial Advisors and Financial Specialists were to engage.

(24)    Mr. Mitchell did not work at Prices Corner between July 16, 2003 and November 2003 as he did not want to return to that branch until Wachovia Human Resources had completed its investigation.

(25)    After he returned to the Prices Corner branch, the relationship between Mr. Mitchell and Ms. Amini never recovered fully. Ms. Amini no longer referred clients to Mr. Mitchell, and Mr. Mitchell's financial production figures from Prices Corner began to decrease.

(26)    Mr. Mitchell had long sought office space at Prices Corner so that he could better serve Wachovia clients and also be present more often so as to improve his relationships with the employees at that branch.

(27)    On November 18, 2004, Ms. Amini complained to Ms. Beam about Mr. Mitchell not following a Wachovia procedure. Ms. Beam reported this to Mr. Gauthier. Mr. Gauthier advised Ms. Beam that he had personal knowledge of the matter and that Ms. Amini was engaging in "fabrication." concerning Mr. Mitchell's conduct. No action was ever taken against Ms. Amini for this incident.

12

*Defendant objects on the ground of relevance.*

(28)    On December 9, 2004, Mr. Gauthier called Mr. Mitchell and directed him to work out of the Capitol Trail branch exclusively. Mr. Gauthier said that Mr. Mitchell was "not right for that branch," and that the personnel there did not like him or want to work with him.

(29)    After having had the Prices Corner branch taken away from him, Mr. Mitchell worked out of the Capitol Trail branch. Mr. Mitchell began suffering symptoms of depression and began seeking medical attention. Mr. Mitchell had never before suffered these symptoms.

(30)    The Financial Center Manager at Prices Corner was a white woman (Ms. DiFebo), and Mr. Mitchell experienced continual interpersonal problems with her and other white female employees at that branch (*e.g.*, Ms. Amini). Mr. Mitchell was the only African-American male at Prices Corner during the time he worked there.

(31)    Due to his depression, Mr. Mitchell has not been able to focus or concentrate on restoring his financial production; he never had those problems prior to his experiences with Ms. DiFeo, Ms. Beam, and Ms. Amini.

(32)    Mr. Mitchell developed depression and anxiety as a result of the treatment he experienced at work.

13

     (33)    Mr. Mitchell has required medical and mental health treatment and incurred expenses, including office visits to his primary care physician (Dr. Agard), psychiatrist (Dr. Pereira-Ogan), and psychologist (Dr. Kozma), and need for prescription mediations, are causally related to the treatment he experienced at work.

     (34)    Whether the individual defendants engaged in a conspiracy to violate his rights.

Statement by Defendants:

Defendants respectfully note that there is a case-dispositive motion pending before this Court. In lieu of a trial brief, Defendants respectfully refer the Court to their moving and reply papers submitted in conenction with that motion (Docket Nos. 37-40, 50, 51), which fully set forth Defendants' position as to the legal issues remaining in this case. The following is Defendants' statement of the legal issues remaining in this case:

     (1)    Whether Wachovia Corporation, Wachovia Services, Inc. or Wachovia Bank can be held liable to Mr. Mitchell as a matter of law.

     (2)    Whether Mr. Gauthier, Ms. DiFebo, or Ms. Beam can be held individually liable to Mr. Mitchell under Title VII or 42 U.S.C. Section 1981 as a matter of law.

     (3)    Whether any defendant engaged in discrimination against Mr. Mitchell baed on his race.

14

(4)     Whether any defendant engaged in discrimination against Mr. Mitchell baed on his gender.

(5)     Whether any defendant created a discriminatorily hostile work environment for Mr. Mitchell.

(6)     Whether any defendant engaged in unlawful retaliation against Mr. Mitchell.

(7)     Whether any defendant can be held liable for civil conspiracy under Delaware law.

(8)     Whether Mr. Mitchell has suffered compensatory damages.

(9)     Whether Mr. Mitchell is entitled to punitive damages.

(10)    Whether Mr. Mitchell's economic expert or treating physician may be permitted to opine as to the ultimate legal issues in this case in relation to any damages Mr. Mitchell claims to have suffered.

(11)    Whether any information pertaining to the Charge of Discrimination filed by James Finney is admissible in this action or should be excluded pursuant to Fed.R.Evid. 404(b).

Defendant also submits that the evidence will show the following facts:

(1)     Mr. Mitchell has never been employed by Wachovia Corporation, Wachovia Services, or Wachovia Bank of Delaware, N.A.

(2)     Mr. Gauthier was the hiring manager for Mr. Mitchell's position, and Mr. Mitchell did not meet with anyone other than Mr. Gauthhier during the hiring process.

15

(3)    At the time Mr. Mitchell left Merril Lynch, he and another FA were enjoined from commencing work at Wachovia Securities based upon a legal dispute between Merrill Lynch and Wachovia Securities.

>    *Plaintiff objects on grounds of relevance and unfair prejudice*

(4)    In April 2003, Wachovia Securities paid Merrill Lynch a settlement of more than $150,000 to resolve the dispute and allow Mr. Mitchell and the other FA to work for Wachovia Securities.

>    *Plaintiff objects on grounds of relevance and unfair prejudice*

(5)    A Financial Specialist refers new securities brokerage business to the Financial Advisor assigned to the Financial Specialist's own branch only, and to no other Wachovia Securities employees.

(6)    In June 2003, Mr. Mitchell and Ms. Amini were involved in an incident with a customer, Richard Herrmann, who disputed a $6.00 charge on a trade. Mr. Mitchell instructed Ms. Amini to rebate the fee to Mr. Herrmann, and when Ms. Amini said that she could not do so, Mr. Mitchell attempted to resolve the situation by offering Mr. Herrmann $6.00 cash from his own pocket.

(7)    Both applicable NASD rules and Wachovia Securities' compliance code forbid employees from giving cash to clients.

16

(8)     Also in June 2003, Mr. Mitchell failed to promptly approve certain annuity trades engaged in by Ms. Amini, causing those trades to be referred to Wachovia Securities' Compliance Department.

(9)     Several weeks later, Mr. Mitchell was told that Ms. Amini feared for her job becaused of the repeated involvement of the Compliance Department in her trades.

(10)    During the time Mr. Mitchell was out of the Prices Corner office during 2003 and 2004, Ms. Amini could not refer clients to Mr. Mitchell.

(11)    Other than requesting an office, Mr. Mitchell did not take any specific steps to pursue the investment prospecting and referral strategy at Prices Corner in the months following the February 2004 meeting.

(12)    In July 2004, Mr. Gauthier and Ms. Beam met with Mr. Mitchell in person to discuss the fact that 80% of his production as an FA was coming from the Capitol Trail branch, where he was exceeding his sales goals, and only 20% of his production was coming from the Prices Corner branch.

(13)    Mr. Mitchell did not have any appointments with clients at Prices Corner at any time between November 2003 and December 2004, and he had visited the Prices Corner branch only two to three times during that period.

17

(14)   Mr. Mitchell does not recall anyone at Prices Corner saying anything negative or derogatory to him on any occasion when he was at that branch between November 2003 and December 2004.

(15)   In January 2005, Mr. Mitchell made his first internal complaint of discrimination to HR, alleging that Mr. Gauthier had removed him from Prices Corner because he is African-American.

(16)   No one at the Prices Corner branch ever said anything to Mr. Mitchell about his race or gender.

(17)   Mr. Gauthier also took branches away from other Financial Advisors in or around 2004, including Nancy Sorg and Beatrice Dufort, both white females, and Ed Duffy and Lou Pannucci, both white males.

(18)   No one at Wachovia Securities has ever subjected Mr. Mitchell to any corrective action, discipline or counseling at any time.

(c)   Except for rebuttal exhibits, schedules in the form set out in the attached Schedule (c) of:

(1)   All exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts, and other items expected to be offered in evidence, and

18

     (2)    Any demonstrative evidence and experiments to be offered during trial;[3]

   (d)    A list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witnesses identified on the list;[4]

Plaintiff:

     (1)    Plaintiff Kenneth S. Mitchell (will call)

     (2)    Defendant Dorothy DiFebo (will call)

     (3)    Defendant Todd Gauthier (will call)

     (4)    Defendant Carolyn Beam (will call)

     (5)    Ladan Amini (employee of defendant Wachovia) (will call)

     (6)    Frank Consalo (employee of defendant Wachovia) (will call)

     (7)    Robert F. Minnehan, Ph.D. (plaintiff's economic expert) (will call)

---

[3] Items not listed will not be admitted unless good cause is shown. Cumulative documents, particularly x-rays and photos, shall be omitted. Duplicate exhibits shall not be scheduled by different parties, but may be offered as joint exhibits. All parties shall stipulate to the authenticity of exhibits whenever possible, and this Order shall identify any exhibits whose authenticity has not been stipulated to and the specific reasons for the party's failure to so stipulate. As the attached Schedule (c) indicates, non-objected-to exhibits are received in evidence by operation of this Order, without any need for further foundation testimony. Copies of exhibits shall be made available to opposing counsel and a bench book of exhibits shall be prepared and delivered to the court at the start of trial unless excused by the court. If the trial is a jury trial and counsel desires to display exhibits to the members of the jury, sufficient copies of such exhibits must be made available so as to provide each juror with a copy, or alternatively, enlarged photographic copies or projected copies should be used.

[4] Each party shall indicate which witnesses *will* be called in the absence of reasonable notice to opposing counsel to the contrary, and which *may* be called as a possibility only. Any witness not listed will be precluded from testifying absent good cause shown, except that each party reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, without prior notice to the opposing party.

1724628/1

(8)     Frederick Kozma, Ph.D. (plaintiff's medical expert: psychology) (will call)

(9)     Jorge Pierra-Ogan, M.D. (plaintiff's medical expert: psychiatry) (will call)

(10)    Reynolds Agard, M.D. (plaintiff's medical expert: primary care physician) (may call)

(11)    Nancy Sorg (employee of defendant Wachovia) (may call)

(12)    James K. Finney (former employee of Wachovia) (may call)

*Defendant objects on the ground of relevance*

Defendants:

(1)     Defendant Dorothy DiFebo

(2)     Defendant Todd Gauthier

(3)     Defendant Carolyn Beam

(4)     Ladan Amini (employee of defendant Wachovia Bank)

(5)     Frank Consalo (employee of defendant Wachovia Securities)

(e)     Stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand;[5]

Plaintiff:

Frederick Kozma, Ph.D.

Dr. Kozma is a psychologist who has treated Mr. Mitchell for depression caused by his work environment at Wachovia.

---

[5] Only one expert witness on each subject for each party will be permitted to testify absent good cause shown. If more than one expert witness is listed, the subject matter of each expert's testimony shall be specified.

1724628/1

Jorge Pereira-Ogan, M.D.

> Dr. Pereira-Ogan is a psychiatrist who has treated Mr. Mitchell for depression caused by his work environment at Wachovia.

Reynold S. Agard, M.D.

> Dr. Agard, who is Mr. Mitchell's primary care physician, has treated Mr. Mitchell for depression caused by his work environment at Wachovia.

Robert F. Minnehan, Ph.D.

> Dr. Minnehan is an economist who will provide expert testimony concerning the financial harm suffered by Mr. Mitchell.

Defendants:

> Defendants do not stipulate that any of the "expert witnesses" listed by Plaintiff are indeed expert witnesses or that Plaintiff has accurately described the substance of their proposed testimony.

(f)    A list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;[6]

Plaintiff:

Kenneth S. Mitchell

---

[6] If any party objects to the admissibility of any portion, both the name of the party objecting and the grounds shall be stated. Additionally, the parties shall be prepared to present to the court, at such time as directed to do so, a copy of all relevant portions of the deposition transcript to assist the court in ruling *in limine* on the objection. All irrelevant and redundant material including all colloquy between counsel shall be eliminated when the deposition is read at trial. If a video deposition is proposed to be used, opposing counsel must be so advised sufficiently before trial to permit any objections to be made and ruled on by the court and to allow objectionable material to be edited out of the film before trial. If good cause is shown as to why objections to portions of a video tape deposition could not be made sufficiently before trial to permit the court to rule, objections shall be handled by a procedure prescribed by the court in accordance with D.Del. LR 30.4(e). Video tape depositions shall otherwise be handled at trial in accordance with D.Del. LR 30.4(d).

Todd D. Gauthier

Dorothy DiFebo

Carolyn Beam

Ladan Amini

Frank Consalo

Lynn Meyer

Defendants:

Same as Plaintiff.

(g)     An itemized statement of special damages;

*See* report of Robert F. Minnehan, Ph.D.

(h)     Waivers of any claims or defenses that have been abandoned by any party;

Plaintiff:

Plaintiff's claims under 42 *U.S.C.* §§1985 and 1986, the fraud and *prima facie* tort claims, and all claims against former defendant Lynn Meyer, have already been dismissed voluntarily by stipulation approved by the Court.

Defendants:

Not applicable.

(i)     For a jury trial, each party shall provide the following:

(1)     Trial briefs except as otherwise ordered by the court[7];

---

[7]   No party's trial brief shall exceed 15 pages without prior approval of the court **and all briefs and memoranda shall be double-spaced, with 1 inch margins, left justification and Times**

22

(2)     three sets of marked proposed jury instructions, verdict forms, and

special interrogatories, if any;[8] and

(3)     a list of the questions the party requests the court to ask

prospective jurors in accordance with Fed.R.Civ.P. 47(a) and

D.Del. LR 47.1(a);[9]

(j)     For a non-jury trial, each party shall provide proposed *Findings of Fact and*

*Conclusions of Law* in duplicate[10];

---

**New Roman 12 pt. font.** Trial briefs are intended to provide full and complete disclosure of the parties' respective theories of the case. Accordingly, each trial brief shall include statements of:

    (a) the nature of the case,
    (b) the contested facts the party expects the evidence will establish,
    (c) the party's theory of liability or defense based on those facts and the uncontested fact,
    (d) the party's theory of damages or other relief in the event liability is established, and
    (e) the party's theory of any anticipated motion for directed verdict.

The brief shall also include citations of authorities in support of each theory stated in the brief. Any theory of liability or defense that is not expressed in a party's trial brief will be deemed waived.

[8]   When this Order is filed, it shall be the responsibility of counsel for the plaintiff to file with the Clerk, in triplicate <u>and</u> on diskette, joint instructions <u>with</u> objections (i.e., the parties shall submit three separate, stapled copies of a single set of proposed jury instructions which shall include either side's objections to any given instruction along with their proposed instruction directly on the page following the instruction to which there is an objection).l Prior to this submission, counsel must confer and make every reasonable effort to resolve objections and to submit agreed upon proposed jury instructions  The joint instructions shall contain a table of contents. Each proposed jury instruction shall carry a descriptive title. Each instruction shall be numbered in such a way as to identify which party is the proponent or whether it has been submitted jointly. All instructions, including objections, shall be in writing and include citations of supporting authorities. Failure to object may constitute waiver of any objection.

At the time of trial, counsel for the Plaintiff shall submit an unmarked original set of instructions, verdict sheet, and any special interrogatories to the court in triplicate; to be sent to the jury room after being read to the jury. Supplemental requests for instructions during the course of the trial or at the conclusion of the evidence will be granted solely as to those matters that cannot be reasonably anticipated at the time of presentation of the initial set of instructions.

[9]   Special voir dire questions shall be filed in triplicate and on diskette along with this order but shall otherwise be filed in accordance with D.Del. LR 47.1(a).

23

(k)     A statement summarizing the history and status of settlement negotiations,

indicating whether further negotiations are ongoing and likely to be productive;

Plaintiff:

> Plaintiff extended a settlement demand prior to the filing of this legal
>
> action. Defendants have not expressed an interest in resolving the case
>
> through settlement.

Defendants:

> Plaintiff has withdrawn his pre-litigation demand, which Wachovia
>
> Securities had rejected, and Plaintiff has further indicated that he would
>
> propose a higher settlement demand, but has not done so. Defendants are
>
> willing to explore settlement discussions.

(l)     A statement that each party has completed discovery, including the depositions of

expert witnesses (unless the court has previously ordered otherwise). Absent

good cause shown, no further discovery shall be permitted;[11]

Plaintiff:

> Plaintiff confirms that all discovery has been completed except for
>
> updating medical records and bills for treatment provided and expenses
>
> incurred between the time of the filing of this Final Pretrial Order and the

---

[10] These shall be listed separately stated in separately numbered paragraphs. Findings of Fact should contain a detailed listing of the relevant material facts the party intends to prove. They should not be in formal language, but should be in simple narrative form. Conclusions of Law should contain concise statements of the meaning or intent of the legal theories set forth by counsel.

[11] If this is a case in which (contrary to the normal requirements) discovery has not been completed, this Order shall state what discovery remains to be completed by each party.

24

trial date.  Plaintiff does not object to Defendant taking the deposition of Plaintiff's economic expert.

Defendants:

Defendant confirms that all discovery has been completed, except for the deposition of Plaintiff's financial expert.

(m)    Motions *in limine*:  **No party shall file more than five (5) motions in Limine without prior approval of the court.  Briefs (opening, answering and reply) on all such motions shall be due at the time of the filing of this Pretrial Order.  Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages.  The parties should submit an original and two (2) copies, excluding appendices, declarations, affidavits and exhibits.**

3.    Trial of this case is expected to take five days.

4.    [Indicate the type of trial by placing an X in the appropriate box]

Jury ◙        Non-jury ▫

5.    The parties recommend that 8 jurors be selected at the commencement of the trial.

6.    This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest justice.

7.    Possibility of settlement of this case was considered by the parties.

Plaintiff:

Plaintiff extended a settlement demand prior to the filing of this legal action.  Defendants never responded, and they have not expressed an interest in resolving the case through settlement.

25

<u>Defendants</u>:

Plaintiff has withdrawn his pre-litigation demand, which Wachovia Securities had

rejected, and Plaintiff has further indicated that he would propose a higher

settlement demand, but has not done so.  Defendants are willing to explore

settlement discussions.



_____

United States District Judge

April _____, 2008


BIGGS AND BATTAGLIA                             MORRIS JAMES LLP


/s/  Steven F. Mones                                  /s/  James H. McMackin, III
Steven F. Mones  (Del. Bar #2611)         James H. McMackin, III
921 N. Orange Street                               500 Delaware Avenue, Suite 1500
P.O. Box 1489                                         P.O. Box 2306
Wilmington, DE  19899-1489                  Wilmington, DE  19899-2306
Tel:  302-655-9677                                  Tel:  302-888-5849
Fax: 302-655-7924                                  Fax: 302-571-1750
smones@batlaw.com                              jmcmackin@morrisjames.com
Attorneys for Plaintiff


                                                              SEYFARTH SHAW LLP
                                                              Devjani Mishra
                                                              Tara Williams
                                                              620 Eighth Avenue
                                                              New York, NY  10018-1405
                                                              Tel:  212-
                                                              Fax: 212-
                                                              dmishra@seyfarth.com
                                                              tawilliams@seyfarth.com

                                                              Attorneys for Defendants

26

Schedule (c)

<u>Exhibits</u>

Plaintiff:

| No. | Description | Objections |
|-----|-------------|------------|
| 1 | E-mails 11/18/04-11/19/04 (Gauthier Dep. Ex.-1) | FRE 403 - Irrelevant; Amini's conduct not at issue |
| 2 | E-mails 12/15/04 (Gauthier Dep. Ex.-2) | FRE 403 - Irrelevant |
| 3 | Employment Application (Mitchell Dep. Ex.-2) | None |
| 4 | Employment Letter 08/06/02 (Mitchell Dep. Ex.-3) | None |
| 5 | Letter 02/04/05 (Mitchell Dep. Ex.-8) | None |
| 6 | TBRK Memorandum 08/01/05 (Beam Dep. Ex.-1) | None |
| 7 | E-mails 10/19/04-10/20/04 (Beam Dep. Ex.-4) | FRE 403 -Irrelevant |
| 8 | E-mails 08/27/04 (Beam Dep. Ex.-5) | FRE 403 - Irrelevant |
| 9 | Monthly FA/FSL Meeting Doc. (Beam Dep. Ex.-6) | FRE 403 - Irrelevant |
| 10 | Wachovia notes summary (WACH000788) | None |
| 11 | E-mail 12/15/05 (WACH000303) | None |
| 12 | E-mails 08/19/04-08/20/04 | Document not identifiable as described by Plaintiff |
| 13 | Wachovia summary of FA branches (WACH000780) | None |
| 14 | FA/FS goals (Ex.-E to Ex-12 of MSJ Opp. Brief) | None |
| 15 | Sales summary (Ex-F to Ex-12 of MSJ Opp. Brief) | None |
| 16 | Finney Discrim. Chrg. (Ex.to Ex-13 of MSJ Opp. Brf.) | Hearsay; FRE 401, 403, 404(b) |
| 17 | Charts and graphs from R. Minnehan expert report | FRE 403 - Irrelevant |
| 18 | Chart and diagram of K. Mitchell commissions (2002- ) | Document not identifiable as described by Plaintiff |

27

| 19 | Medical and billing records of F. Kozma, Ph.D. | Hearsay; diagnosis not probabitve of whether discrimination occurred; FRE 702, 403 |
| 20 | Medical and billing records of J. Pereira-Ogan, M.D. | Hearsay; diagnosis not probabitve of whether discrimination occurred; FRE 702, 403 |
| 21 | Medical and billing records of R. Agard, M.D. | Hearsay; diagnosis not probabitve of whether discrimination occurred; FRE 702, 403 |
| 22 | Defendants' answers to plaintiff's interrogatories | None |
| 23 | Selected pages from the transcripts of the depositions taken of all witnesses in this case | |

**Defendants:**

In addition to those exhibits listed by Plaintiff, Defendants designate the following:

| No. | Description | Objections |
|-----|-------------|------------|
| 1 | Selected transcript pages from deposition of Kenneth Mitchell taken on December 14, 2007 | None |
| 2 | Employment Application (Mitchell Dep. Ex.-2) | None |
| 3 | Employment Letter 08/06/02 (Mitchell Dep. Ex.-3) | None |
| 4 | Charge of Discrimination (Mitchell Dep. Ex.-7) | None |
| 5 | Letter dated 02/04/05 (Mitchell Dep. Ex.-8) | None |
| 6 | Email re; "Newark and Meadowood" (Mitchell Dep. Ex.-9) | None |
| 7 | Email re: "Meadowood branch" (Mitchell Dep. Ex.-10) | None |
| 8 | Selected transcript pages from deposition of Ladan Amini taken on December 23, 2007 | None |

1724628/1

| 9 | Selected transcript pages from deposition of Frank Consalo taken on January 4, 2008 | None |
|---|---|---|
| 10 | Selected transcript pages from deposition of Todd Gauthier taken on December 18, 2007 | None |
| 11 | Selected transcript pages from deposition of Carolyn Beam taken on December 28, 2007 | None |
| 12 | Selected transcript pages from deposition of Lynn Meyer taken on December 20, 2007 | None |
| 13 | Selected transcript pages from deposition of Dorothy DiFebo taken on October 23, 2007 | None |
| 14 | Plaintiff's Answers to Defendants' First Set of Interrogatories | None |
| 15 | Plaintiff's Responses to Defendants' First Request for Production of Documents | Outside scope of admissibility under FRCPs |
| 16 | Plaintiff's Response to Defendant's First Expert Request for Production of Documents | Outside scope of admissibility under FRCPs |
| 17 | Demonstrative exhibit concerning organization structures of Wachovia Securities and Wachovia Bank | Documents not identifiable and have never been produced |
| 18 | Demonstrative exhibits concerning Mr. Mitchell's performance at Capitol Trail and Prices Corner | Document not identifiable; possibly no objection if identifed in advance of pretrial conference |
| 19 | Enlarged versions of exhibits already listed as demonstrative aids to the jury | Objection if intended to be submitted to the jury during deliberations |
| 20 | 2006 Handbook (WACH 894-2011) | Objection unless specific pages or sections identified so as to be able to make meaningful evaluation as to relevance |
| 21 | 2005 and 2007 Associate Guides (WACH 2012-2597) or excerpts thereof | Objection unless specific pages or sections identified so as to be able to make |

| | | meaningful evaluation as to relevance |
|---|---|---|
| 22 | 2002-05 Associate Guide (WACH 2598-6319) or excerpts thereof | Objection unless specific pages or sections identified so as to be able to make meaningful evaluation as to relevance |