IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH S. MITCHELL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-725 (GMS) |
| | ) | |
| WACHOVIA CORPORATION, t/a | ) | JURY TRIAL DEMANDED |
|     WACHOVIA SECURITIES, | ) | |
| WACHOVIA SECURITIES, L.L.C., | ) | |
| WACHOVIA SERVICES, INC., | ) | |
| WACHOVIA BANK OF DEL, N.A., | ) | |
| TODD D. GAUTHIER, | ) | |
| CAROLYN J. BEAM, and | ) | |
| DOROTHY A. DIFEBO, | ) | |
|     Defendants. | ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO BAR
EVIDENCE OF JAMES FINNEY'S CHARGE OF DISCRIMINATION

BIGGS AND BATTAGLIA
Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE 19899-1489
Tel: 302-655-9677
Fax: 302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

April 10, 2008

Plaintiff Kenneth S. Mitchell responds as follows to defendants' motion in limine seeking to bar evidence of a Charge of Discrimination against Wachovia filed by a former employee:

Plaintiff, a Financial Advisor employed by the Wachovia defendants, is pursuing claims of race and gender discrimination, and other related claims, under federal and state law. Among the witnesses plaintiff identified for trial is James Finney, a former Wachovia employee who filed a Charge of Discrimination against Wachovia alleging racial and gender discrimination. Plaintiff submits that evidence of Mr. Finney's charge is relevant, probative, and should be admitted.

Mr. Finney, an African-American male, worked as a teller at the Wachovia Prices Corner branch from March to December 2006. Affidavit of James K. Finney (copy attached as Exhibit-1). Mr. Finney was, during that time period, the only African-American male, and indeed, the only male, in the branch. Finney Affidavit.

Plaintiff and Mr. Finney worked at Prices Corner during different time periods, but they were the only African-American males in the branch during the time they worked there. Mr. Finney alleged that he was harassed and treated poorly and disrespectfully by Wachovia white female employees due to his race or gender. Finney Affidavit.

In general, evidence of an employer's conduct towards other employees is relevant and admissible. *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 521 (3d Cir. 2003). This general rule applies in this case as, contrary to defendants' assertions, there are common grounds between the claims of plaintiff and Mr. Finney.

A key element of commonality between the allegations of plaintiff and Mr. Finney, aside from them being the only African-American males in the branch, is that the Financial Center Manager ("FCM" or "branch manager") was defendant Dorothy A. DiFebo. Mr. Mitchell has

2

leveled detailed allegations of wrongful conduct against Ms. DiFebo in this action. Mr. Finney has asserted that Ms. DiFebo did nothing to stop the harassment directed at him despite his protests up the branch chain of command. Finney Affidavit. Ms. DiFebo was in the same chain of command as Mr. Finney (on the "bank" side of Wachovia), and was the ultimate decision-maker as to the running of the Prices Corner branch. *See, e.g.*, Deposition of Dorothy A. DiFebo at 34:19-35:20 (excerpts attached as Exhibit-2) (bank tellers reported to a Teller Manager who reported to Ms. DiFebo). Defendants' reliance on this Court's evidentiary decision in *Keller v. City of Wilmington*, 2006 WL 839406, mem. op. at 2 (D.Del. Mar. 30, 2006) (copy attached as Exhibit-3), is, therefore, misplaced as the Court noted there that evidence of other claims of discrimination would have been admissible had the others been exposed to the same decision-maker.

Despite being the branch manager, and hence responsible for all business conducted at the branch, Ms. DiFebo testified that she did not even know the exact nature of Mr. Finney's Charge of Discrimination despite it having been made less than one year before her deposition. Ms. DiFebo testified, under oath, that she believed Mr. Finney had filed a claim against Wachovia for unemployment compensation, not discrimination. DiFebo Dep. 81:25-83-1. Plaintiff respectfully submits that the jury must weigh Ms. DiFebo's credibility in this case, and Mr. Finney's testimony, and the Charge of Discrimination itself, bear on that issue.

The Third Circuit has ruled that "evidence as to [a supervisor's] attitude toward other older employees and the manner in which he treated them was relevant" to a discrimination analysis. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214-1215 (3d Cir. 1995). If one substitutes "African-American" for "older," and "she" for "he," one would have an accurate description of

3

the hostile atmosphere towards African-Americans created or fostered by Ms. DiFebo within her branch.

Defendants argue that Mr. Finney worked for a different Wachovia entity than did plaintiff. As pointed out in detail in plaintiff's brief opposing defendants' motion for summary judgment, a Wachovia "bank" (financial center) served as the base of operations for several Wachovia entities possessing different appellations. Operation of the bank itself falls under the "Wachovia Bank" name, while the securities and brokerage activities fall under the "Wachovia Securities" name. A Financial Specialist nominally employed by "Wachovia Bank" may also act under a "Wachovia Securities" securities license when engaging in trades. As a result, the specific entity which provided Mr. Finney with a paycheck is irrelevant to the issue of whether he suffered discriminatory conduct under the Wachovia roof managed by Ms. DiFebo.

Under Rule 402 of the Federal Rules of Evidence, "All relevant evidence is admissible" unless otherwise excluded by specific rule or authority. Evidence pertaining to the only two African-American males in a white female-dominated office is directly relevant to plaintiff's claims. In particular, both Mr. Finney and plaintiff were subjected to the discriminatory conduct while they were each the only African-American male in the branch. This evidence is specific, probative, and relevant.

Defendants appear to be equating the situation involving Mr. Finney with that in *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306 (3d Cir. 2003). There, in a bad faith insurance claim case, plaintiff was allowed to pursue a line of questioning concerning the existence of hundreds of bad faith lawsuits against the insurer. No specifics of the hundreds of cases were mentioned, and there was a legitimate concern that the jury would automatically equate the case at bar with the hundreds of other cases about which no other information had been presented. By

contrast, in this case, we are dealing with *one* other individual, having *one* specific claim, that relates to *one* office in which both he and plaintiff worked, and which *one* office was managed by a defendant. There is no likelihood of misleading or confusing the jury in this case.

Defendants' contention that Mr. Finney's testimony would lead to a "mini-trial" is unfounded given the narrow scope of his testimony. Moreover, any evidence defendants would need is already in their possession as they previously investigated and defended his claim. The extra time involved is insignificant compared to the probative value of the testimony concerning the overtly hostile and discriminatory atmosphere in the Prices Corner branch towards African-American males.

Lastly, defendants object to the admissibility of Mr. Finney's charge of discrimination on the grounds that it has not been authenticated. That is simply incorrect. The Charge of Discrimination was authenticated in, and a copy attached to, Mr. Finney's affidavit which was included as Exhibit-13 of the Appendix to Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment (another copy attached hereto as Exhibit-1).

Therefore, plaintiff respectfully asks the Court to deny defendants' motion to bar testimony of, and evidence concerning, witness James K. Finney.

                                                BIGGS AND BATTAGLIA

                                                /s/  Steven F. Mones
                                                Steven F. Mones  (Del. Bar #2611)
                                                921 N. Orange Street
                                                P.O. Box 1489
                                                Wilmington, DE  19899-1489
                                                Tel:  302-655-9677
                                                Fax: 302-655-7924
                                                smones@batlaw.com
April 10, 2008                                 Attorneys for Plaintiff Kenneth S. Mitchell

5

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

KENNETH S. MITCHELL,           )
                Plaintiff,      )
                                )
        v.                      )   C.A. No. 06-12-725 (GMS)
                                )
WACHOVIA CORPORATION, t/a       )   JURY TRIAL DEMANDED
   WACHOVIA SECURITIES,         )
WACHOVIA SECURITIES, L.L.C.,    )
WACHOVIA SERVICES, INC.,        )
WACHOVIA BANK OF DELAWARE,      )
   N.A.,                        )
TODD D. GAUTHIER,               )
LYNN G. MEYER,                  )
CAROLYN J. BEAM, and            )
DOROTHY A. DIFEBO,              )
                Defendants.     )

## AFFIDAVIT

James K. Finney, being duly sworn according to law, states as follows:

1. I make this affidavit on personal knowledge, and the information in this affidavit is true and correct to the best of my knowledge.

2. I was employed by Wachovia as a bank teller at Wachovia's Prices Corner financial center ("branch") from March 2006 through December 2006.

3. During the time I served as a teller at Prices Corner, I was the only male, and only African-American male working as a teller in the branch.

4. During the time I worked at Prices Corner, I was subjected to harassing and discriminatory conduct by Petra Rash, a white woman serving as the Wachovia Teller Manager, as well as by other white female tellers. Such conduct including being touched inappropriately and being struck with papers.

1

5. I made complaints to Mattie Owens in Wachovia's Human Resources Department, and to Gerri Dougherty a Service Leader, but Wachovia took no action to stop the inappropriate conduct directed at me. At no time did the Financial Center Manager ("FCM"), Dorothy DiFebo, take any action to stop the inappropriate conduct directed at me despite the fact that she was aware of it.

6. Prior to my working at Prices Corner, I had worked as a "rover" (roving temporary teller) at Wachovia's Capitol Trail branch. The Prices Corner and Capitol Trail branches were only about one mile apart on Kirkwood Highway, in Wilmington. However, the general atmosphere I experienced was completely different at the two branches. I experienced no conflicts at Capitol Trail, but I experienced inappropriate and harassing conduct at Prices Corner based on the fact that I was an African-American male. The FCM, Ms. DiFebo, did not seem to care about how I was treated by the other employees.

7. Wachovia failed to take any steps to remedy the inappropriate treatment directed at me, and I was forced to resign in December 2006. When notified of my resignation, Teller Manager Ms. Rash threw my resignation letter at me.

8. On January 22, 2007, I filed a Charge of Discrimination with the Delaware Department of Labor/Equal Employment Opportunity Commission alleging that I suffered racial and gender discrimination. A true and correct copy of my Charge of Discrimination is attached as Exhibit-A to this affidavit.

9. I understand that Kenneth S. Mitchell has asserted race and gender discrimination claims against Wachovia in connection with conduct directed towards him at the Prices Corner branch. I did not discuss my complaints with him, and he did not discuss his complaints with me, until recently during the course of his lawsuit against Wachovia.

2

_James K. Finney_ (signature)

Sworn to and subscribed before me
this 22nd day of January, 2008.

_Notary Public_ (signature)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
April S. Woodberry, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Aug. 3, 2010
Member, Pennsylvania Association of Notaries

3

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | 17C-2007-00183 |

Delaware Department of Labor _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. James K. Finney | (302) 377-6324 | 03-29-1986 |

Street Address: 1110 Graylyn Road, Wilmington, DE 19803

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| WACHOVIA | 15 - 100 | (302) 636-4307 |

Street Address: 2701 Kirkwood Hwy, Newark, DE 19711

DISCRIMINATION BASED ON (Check appropriate box(es).)
[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11-13-2006    Latest: 11-13-2006
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Jurisdiction:** Charging Party was employed at Respondent's Pennsylvania Branch #95086 and Delaware Branch # 95073 as a Teller since 6/05
**Charging Party's protected class:** Race (Black), Gender (male)
**Adverse employment action:** Discipline, Harassment, Terms and Conditions of Employment, constructive Discharge
**Brief statement of allegations:** Charging Party alleges that based on race and sex he was discriminated against when he was subjected to harassment different terms and conditions of employment and discipline by the Respondent. Specifically, Charging Party alleges that he found Assistant Manager/Teller (Jill Altervolt-W/F) statement of "bite me" to be quite offensive. Additionally, on 9/29/06, Teller manager (Petra Rash-W/F), who is Charging Party supervisor, pressed her finger against Charging Party's forehead and said "use your head!". Moreover, Charging Party stated that on 11/13/06 he was struck on the hand with a stack of papers by a white female co-worker (Nancy Valiante). Charging Party states that these acts have been directed towards him for no reason and states that if he does make a mistake, he should not be subjected to these actions. Charging Party states that he reported the incident's to the Respondent specifically, (Mattie Owens in a recorded conversation and Gerri Doucherty W-F). Further, Charging Party states that at a later date during conversation Doucherty stated to him that the incidents were grounds for termination but nothing was done. Furthermore, Charging Party alleges that his treatment continued with other acts of harassment specifically, by Petra Rash that included Rash angrily throwing a copy of his notice of resignation onto his desk. Charging Party states that because of his race and being the only male Teller he was forced to resign.
**Respondent's explanation:** None given
**Applicable law(s):** Title VII of the Civil Rights Act of 1964, Delaware Discrimination Employment Act
**Comparators(s) or other specific reason(s) for alleging discrimination:** Charging Party alleges that based on race and sex he was discriminated against when his treatment by the Respondent was different then his similarly situated co-workers. Charging Party states after he made his complaints to Doucherty but Doucherty during a meeting held on 12/6/06 only attempted to minimize the impact of his treatment. Charging Party states after approximately three weeks nothing was done and he was forced to resign. Additionally, Charging Party alleges that his treatment and Doucherty's actions are a continuation of Respondent's unwillingness to address gender/racially motivated treatment by his co-workers. Charging Party states that these latest acts of Gender/ racially motivated treatment are not the first acts of discrimination. Charging Party states that he was transferred by Doucherty from Pennsylvania Branch 95086 because a co-worker had made racial comments towards him.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Jan 22, 2007 _____ /s/ James Finney _____
Date     Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

# EXHIBIT 2

DOROTHY DI FEBO

Page 34

```
 1      Q      In the time frame we're looking at, from
 2   2003 to the present, Prices Corner has always had
 3   two financial specialists; correct?
 4      A      Yes.
 5      Q      And it's got a total of 10 tellers?
 6      A      Yes.
 7      Q      And the manager, you?
 8      A      Yes.
 9      Q      Other than that and you mentioned a
10   small business banker that may have been there
11   earlier, any other categories of personnel?
12      A      Not permanently stationed at that
13   office.
14      Q      Who would come in temporarily?
15      A      A financial advisor.
16      Q      Okay.  That would be Mr. Mitchell or
17   someone else?
18      A      Yes.
19      Q      So in your day-to-day work, you
20   supervised the 10 tellers or were they supervised
21   by somebody else?
22      A      There was a teller manager.
23      Q      At the branch or somewhere else?
24      A      No, at the branch.
25      Q      Okay.  Did you have any direct reports?
```

1      A      The teller manager.

2      Q      Because I think you told me earlier that
3  you didn't actually supervise anyone and that the
4  tellers had a different chain of command or line of
5  reporting, however you want to characterize it.

6             MS. WILLIAMS:  Objection.
7  BY MR. MONES:

8      Q      Did I miss something?

9             MS. WILLIAMS:  You can answer or
10 clarify.

11            THE WITNESS:  Okay.  Ask me what -- what
12 do you want me to clarify again?
13 BY MR. MONES:

14     Q      Well, I thought you had said earlier
15 that as manager you didn't have any direct
16 reporting; people didn't report to you directly,
17 that the tellers reported to someone else.  Am I
18 stating --

19     A      The tellers reported to the teller
20 manager.  The teller manager reports to me.

21     Q      That clarifies that.  I appreciate that.
22 Okay.  So the teller manager was the only one that
23 you directly supervised?

24     A      Yes.

25     Q      We had been talking about Mr. Mitchell

DOROTHY DI FEBO

Page 81

1  there. Gracie, but I'm not sure what her last name
2  is. I have not met her.
3      Q     It sounds like Wachovia moves people
4  around frequently. How have you managed to stay in
5  one place for 22 years?
6      A     Dedicated employee.
7      Q     Do you know how Mr. Mitchell is doing at
8  Meadowood?
9      A     No.
10     Q     You've never talked to any of the branch
11 managers at Meadowood about Mr. Mitchell?
12     A     No.
13     Q     Bear with me just a second.
14     A     Sure.
15           MR. MONES: That's all I have,
16 Ms. DiFebo. Thank you.
17           MS. WILLIAMS: I do have a few follow-up
18 questions.
19                    EXAMINATION
20 BY MS. WILLIAMS:
21     Q     A few minutes ago there was a few
22 questions about James Finney. Do you remember that
23 part of your deposition?
24     A     Yes.
25     Q     Can you tell us what kind of claim -- to

Page 82

1    the best of your knowledge, what kind of claim he
2    filed?  What kind of complaint he filed?
3         A    Only by what I was told.
4         Q    What were you told?
5         A    That he was filing -- that because --
6    how did she say it to me -- I'm trying to think how
7    she put it.  In other words, in her words, that he
8    was being picked upon because he was the only male
9    in the office.
10        Q    Okay.  Did he make that complaint only
11   to someone at Wachovia?
12        A    I don't think it was made to somebody at
13   Wachovia.  I think she said it came from
14   unemployment.  I'm not quite sure, because I didn't
15   really -- it was one of those things like do you
16   believe that --
17        Q    Do you believe, based on your
18   conversation with this individual who told you the
19   story, that the complaint was made in the context
20   of Mr. Finney trying to obtain unemployment
21   benefits?
22        A    I think so.
23        Q    Do you know if the complaint was made in
24   any other context outside of him trying to secure
25   unemployment benefits?

```
 1      A      No.
 2             MS. WILLIAMS:  Okay.  No further
 3   questions.  Thank you.
 4             MR. MONES:  Just a follow-up to that.
 5             FURTHER EXAMINATION
 6   BY MR. MONES:
 7      Q      Have you ever seen any of the charges of
 8   discrimination or claims or any documents or
 9   pleadings filed by Mr. Finney?
10      A      No.
11      Q      So do you have any actual firsthand
12   knowledge of what it is that he is asserting
13   happened at Prices Corner?
14      A      No, not exactly.
15      Q      A moment ago when you were thinking back
16   on what you knew about it, you said, "She told me
17   something."  Who was it that told you about this?
18      A      Petra.
19      Q      Petra.  Okay.  Do you know whether she
20   was served with any kind of pleadings or documents?
21      A      That -- she said she was served with
22   something.
23      Q      And you don't know whether the case is
24   still active or has been resolved?
25      A      No, I don't.
```

# EXHIBIT 3

# Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 839406 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Keller v. City of Wilmington
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John R. KELLER, et al., Plaintiffs,
v.
CITY OF WILMINGTON, et al., Defendants.
Nos. Civ.A.03-774 JJF, Civ.A.04-899 JJF.

March 30, 2006.

Philip B. Bartoshesky, of Biggs and Battaglia, Wilmington, Delaware, for Plaintiffs.
Marvin C. Meltzer, of City of Wilmington Law Department, Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*

FARNAN, J.
**\*1** Pending before the Court is Plaintiff's Motion For New Trial (D.I.157). For the reasons discussed, the Motion will be denied.

I. BACKGROUND

On August 1, 2003, Plaintiffs filed a complaint alleging racial discrimination, hostile work environment, and harassment in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000(e) et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Plaintiff Carla Perez is a Caucasian female and was previously employed in the Sanitation Department of the City of Wilmington. Plaintiff Ramon Perez is a Hispanic male who previously worked in the Sanitation Department and who is currently working in the Street Cleaning Division of the City of Wilmington. Plaintiffs contend that they have been subjected to a continuing course of race-based employment discrimination by Defendants.

This case was originally assigned to Chief Judge Robinson. Prior to transfer, Judge Robinson ruled on several motions in limine. As a result of those rulings, the testimony of other City of Wilmington employees alleging discrimination was excluded absent evidence that the employees were exposed to the same decision makers as Plaintiffs. The Court also ruled that Mayor Baker's testimony regarding the 1995 layoffs and Mayor Sills' comments about those layoffs were inadmissible.

The Court held a pretrial conference on January 23, 2006, at which the Court affirmed Judge Robinson's previous in limine rulings. The Court conducted a four-day trial beginning February 6, 2006. The jury returned a verdict in favor of Defendants. Plaintiffs now move for a new trial on the basis that the Court committed prejudicial error by excluding certain testimony during trial.

II. Standard of Review

In relevant part, Rule 59 of the Federal Rules of Civil Procedure provides:
A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

*Fed.R.Civ.P.* 59(a). The district court has broad discretion to grant or deny a new trial. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980)."A new trial may be granted where the verdict is against the clear weight of the evidence, damages are excessive, the trial was unfair, or substantial errors were made in the admission or rejection of evidence or the giving or refusing of instructions."*Threadgill v. Manville Corp. Asbestos Disease Compensation Fund,* 1990 U.S. Dist. LEXIS 19083, at \*3 (D.Del.1990) (citing *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 576 F.Supp. 107, 124 (D.Del.1983)). A new trial is warranted based on a court's decision to admit or exclude evidence if that ruling affects a substantial right of a party. *Becker v. ARDCO Chem. Co.,* 207 F.3d 176, 180 (3d Cir.2000).

III. Discussion

Plaintiffs contend that the Court erred with respect to two evidentiary rulings: (1) the decision to exclude as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00725-GMS   Document 66-2   Filed 04/10/2008   Page 14 of 14

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2006 WL 839406 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

unduly prejudicial and confusing the testimony of Mayor Baker as it related to the 1995 lay-offs and comments made by then-Mayor Sills and (2) the decision to exclude as unduly prejudicial the testimony of other City of Wilmington employees who alleged discriminatory employment practices.

*2 As to Mayor Baker's testimony, Judge Robinson determined, and parties agreed, that Plaintiffs' instant claims of discrimination have no connection to the 1995 lay-off or the comments made by then-Mayor Sills (D.I. 157, Exhibit 1 at 11, 13). Specifically, Judge Robinson concluded that Mayor Sills' comments were directed solely to the 1995 lay-offs and litigation following those lay-offs, and therefore, such evidence would be unduly prejudicial because it was too far removed from Plaintiffs' situation. The Court agrees and concludes that because the 1995 lay-offs and related comments have no connection to Plaintiffs' claims, the danger of unfair prejudice substantially outweighs any probative value the testimony may have. *Fed.R.Evid.* 403. Furthermore, the introduction of such evidence would likely confuse the jury by creating the appearance that Plaintiffs were somehow connected to the 1995 lay-offs. Accordingly, the Court concludes that exclusion of this evidence was not a substantial error requiring a new trial.

Second, Plaintiffs challenge the Court's "blanket" exclusion of the testimony of other employees who allege that Defendants subjected them to discriminatory employment practices. Plaintiffs, however, misinterpret the Court's Order. The Court's November 8, 2005 Order (D.I.124) states that such evidence would be admissible provided that Plaintiffs could show that the witnesses offering the testimony were exposed to the same decision makers as Plaintiffs. This was not a blanket exclusion; only those witnesses whose employment conditions were impacted by decision makers different than those of Plaintiffs were excluded from testifying at trial. Judge Robinson properly concluded that testimony regarding the circumstances of employees subjected to different conditions would serve only to confuse and mislead the jury, a result which would cause undue prejudice to Defendants. *Fed.R.Evid.* 403; *United States v. Butch*, 256 F.3d 171, 175-76 (3d Cir.2001) (even where evidence could be admissible under Rule 404(b), the Court must conduct a balancing test to determine whether the probative value is substantially outweighed by the prejudicial effect). The jury would likely interpret the testimony of these witnesses, who were not similarly situated to Plaintiffs, as evidence of racial discrimination against Plaintiffs, when Plaintiffs were employed in different departments, performing different jobs, and working under different supervision. Accordingly, the Court concludes that the evidence was properly excluded, and Plaintiffs' Motion For New Trial will be denied.

IV. CONCLUSION

For the reasons discussed, the Court will deny Plaintiffs' Motion For New Trial (D.I.157).

An appropriate Order will be entered.

D.Del.,2006.
Keller v. City of Wilmington
Not Reported in F.Supp.2d, 2006 WL 839406 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.