IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH S. MITCHELL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-725 (GMS) |
| | ) | |
| WACHOVIA CORPORATION, t/a | ) | JURY TRIAL DEMANDED |
| WACHOVIA SECURITIES, | ) | |
| WACHOVIA SECURITIES, L.L.C., | ) | |
| WACHOVIA SERVICES, INC., | ) | |
| WACHOVIA BANK OF DEL, N.A., | ) | |
| TODD D. GAUTHIER, | ) | |
| CAROLYN J. BEAM, and | ) | |
| DOROTHY A. DIFEBO, | ) | |
| Defendants. | ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE
TO PRECLUDE TESTIMONY OF PLAINTIFF'S ECONOMIC EXPERT

BIGGS AND BATTAGLIA
Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

April 10, 2008

Plaintiff Kenneth S. Mitchell responds as follows to defendants' motion in limine seeking to bar or limit the scope of the testimony of plaintiff's economic expert:

Plaintiff, a Financial Advisor employed by the Wachovia defendants, is pursuing claims of race and gender discrimination, and other related claims, under federal and state law. Plaintiff identified Robert F. Minnehan, Ph.D., an economic consultant, as his economic expert for trial. Plaintiff submits that defendants' objections to Dr. Minnehan's testimony go to the weight of the evidence, not to the admissibility of the evidence, and hence, should be denied.

Admissibility of expert testimony under the "gatekeeper" standard is governed by *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). There are no definite standards for evaluating the admissibility of expert testimony. Consistent with the Federal Rules of Evidence (particularly Rule 702), key factors include the expert's qualifications and experience, whether the evidence is reliable, and whether the evidence will assist the trier of fact in evaluating the issues. *Id.* at 591-593. Courts favor a liberal policy towards expert testimony, and "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Finch v. Hercules, Inc*., 941 F.Supp. 1395, 1415 (D.Del. 1996) (quoting *In re Japanese Elec. Prods. Antitrust Litig*., 723 F.2d 238, 278 (3d Cir. 1983), rev'd on other grounds, *sub nom*. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986)).

In this case, plaintiff is seeking to offer testimony of a well-respected economic consultant[1] who: (a) interviewed plaintiff on several occasions; (b) reviewed and analyzed financial information based on plaintiff's past performance with Wachovia; (c) reviewed and analyzed financial information about Wachovia itself and its Financial Advisors; and (d) extrapolated future figures from the past information, the likely economic trends, as well as

---

[1]   Dr. Minnehan has testified before in this Court as an economic expert. *Schatzman v. Martin Newark Dealership, Inc*., 233 F.Supp. 620, 622 (D.Del. 2001).

information he obtained from plaintiff.  That is far more than the disparaging description of "self-serving speculation" recited by defendants.  Defendants' Motion at 3.

Contrary to the characterization by defendants, Dr. Minnehan took great pains to document the figures he used and conclusions he reached.  His narrative report, which is two pages in length, contains another two pages of detailed notes and discussion concerning the conclusions he reached.  *See* Report of Robert F. Minnehan, Ph.D. (copy attached as Exhibit-1).

Defendants state baldly that Dr. Minnehan based his figures and calculations on plaintiff's own assumptions.  That is simply incorrect.  In fact, the detailed notes establish that Dr. Minnehan critically considered a variety of well-accepted economic factors in his analysis.

Dr. Minnehan obtained a base figure of $350,000.00 as an estimate by plaintiff of his expected commissions in 2005 had he not experienced the discriminatory conduct at the heart of this case.  Dr. Minnehan reviewed this figure and reported that he used it "as it is compatible with 2003 and 2004 numbers."  Dr. Minnehan also reviewed commissions figures for ten other Wachovia Financial Advisors.  The commissions ranged from a high of $1,006,039 to a low of $229,402.  Nine of the ten were between $537,914 and $229,402, and the average was $440,007.  See Exhibit-2 (data and graph which were not included in final report).  Mr. Mitchell's figure fell within the range and was actually below the average figure.  Accordingly, the figure used by Dr. Minnehan is reasonable and justified by the data.  Defendants may disagree, but that is a matter for cross-examination, not for deciding admissibility of the evidence.

Defendants also point to comments made by Dr. Minnehan in the introduction of his report as somehow invalidating the economic analyses that come later.  In his "background" section, Dr. Minnehan states that plaintiff's reassignment in December 2004 (from Prices Corner) resulted in a substantial decrease in plaintiff's financial production.  Defendants refer to

that statement as speculation, but it is fact.  It cannot be disputed that plaintiff's financial production fell dramatically after December 2004 because Wachovia's own records document the precipitous decline.  It is the *cause* of the decline that is at issue in this case (and for the jury to decide), but Dr. Minnehan is not offering any opinions as to whether discrimination actually occurred.  Indeed, Dr. Minnehan's testimony is relevant only to damages, not liability.

Defendants criticize Dr. Minnehan's comment that the closing of the Capitol Trail office in October 2006 "complicated" plaintiff's situation.  Again, that is fact;  Wachovia closed the Capitol Trail office in October 2006 and moved plaintiff to the Meadowood office where he had never before worked.  Had plaintiff not been removed from Prices Corner in 2004, he would not have been subsequently transferred from Capitol Trail to Meadowood in 2006.

Dr. Minnehan fully documented the other projections he made and reasons therefore.  For instance, with respect to anticipated commissions growth, Dr. Minnehan noted that he used growth figures of 10% and 5% respectively for years 2006 and 2007 based on plaintiff's past performance and Wachovia's rate of growth per financial center as reported in Wachovia's own federal 10-K filing.  Furthermore, Dr. Minnehan used 0% growth during 2008 due to prevailing economic conditions.  Starting in 2009, Dr. Minnehan used 5% growth starting in 2009 based on his professional view that this was a "conservative figure."  Future projections may provide fertile ground for cross-examination, but they are admissible at trial.  *Coleman v. Dydula*, 139 F.Supp.2d 388, 395 (W.D.N.Y. 2001) (future economic testimony permitted; defendant's admissibility challenge "best left to cross-examination").

With respect to methodology, the figures were discounted to present value pursuant to standard economic practice.  Defendants question why Dr. Minnehan calculated back pay and front pay figures at different interest rates.  Dr. Minnehan followed Delaware law for calculating

4

interest on past losses (5% above the Federal Discount Rate, 6 *Del.C.* §2301), and he applied a figure of 6% for future losses based on long-term investment rates.

Defendants recite a number of other alleged problems with Dr. Minnehan's methodology, yet they cite no contrary authorities or figures. Defendants simply refer to the methodology as "highly questionable." That argument goes to the weight of the evidence, not the admissibility of the evidence. *Coleman*, 139 F.R.D. at 395 ("The fact that defendants believe [expert] has used the wrong method and the wrong conclusion does not render [expert's] testimony inherently unreliable. Again, these kinds of disagreements are best left to cross-examination.").

As a fall-back position, if Dr. Minnehan is permitted to testify, defendants seek to have his report barred from evidence because "the *subjective belief or unsupported speculation* that permeates Dr. Minnehan's report will undoubtedly confuse rather than assist the trier of fact." Defendants' Motion at 4-5 (emphasis in original). That conclusory statement ignores both the detailed content of the report, and the fact that the report contains nothing that Dr. Minnehan cannot testify to on the witness stand. Full disclosure will avoid any potential confusion.

Defendants' attempt to bar Dr. Minnehan from testifying is based on nothing more than unsupported adversarial disagreement. Plaintiff respectfully requests that the Court deny defendants' motion in limine seeking to bar or limit the scope of Dr. Minnehan's testimony.

<div style="margin-left: 50%;">

BIGGS AND BATTAGLIA

/s/ Steven F. Mones
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE 19899-1489
Tel: 302-655-9677
Fax: 302-655-7924
smones@batlaw.com
Attorneys for Plaintiff Kenneth S. Mitchell

</div>

April 10, 2008

# EXHIBIT 1

# Economic Analysis and Statistical Evaluation Services

Economic Analysis

Case: **Kenneth S. Mitchell
v. Wachovia, et al**

Prepared for

**Steven F. Mones**

Biggs and Battaglia
Wilmington, Delaware

Prepared by

**Robert F. Minnehan, Ph.D.**

Consulting Economist and Statistician

Report Dated December 21, 2007

**Robert F. Minnehan ▾ 765 Arbour Drive ▾ Newark, Delaware 19713**
Voice: 302/368-4807; Fax: 302/454-1290

## Background

Kenneth Mitchell, age 52[1], began working with Wachovia as a "Financial Advisor" in late 2002 after being recruited from Merrill Lynch. He worked at two branch bank locations for Wachovia at first (Prices Corner and Capitol Trail branches), but was then assigned to work at only one branch bank location in December 2004 (Capitol Trail). This reassignment resulted in a substantial decrease in Mr. Mitchell's "production" of the sale of financial products in 2005 and 2006 which effect was complicated by the closing of the Capitol Trail branch in October 2006. There are claims of discrimination and harassment that caused this litigation.

## Economic Loss Claim

At this date at the end of the year 2007 it is apparent that Mr. Mitchell has earned substantially less per year in 2005-2007 than he did in 2003-2004. He is claiming that Wachovia's handling of his personnel situation has caused a loss in his 2005-2007 earnings. This loss will be projected.

If the earnings pattern seen in 2005-2007 continues into 2008 then Mr. Mitchell will suffer additional economic losses in the future. I have also projected the potential economic effect for 2009-2016 and Mr. Mitchell reaching age 62.

## Economic Factors and Projections

A basic past and future earnings loss projection table has been prepared. The earnings loss is based on the loss of the "gross commission" revenue for Wachovia. The Financial Advisor's earnings are based on this gross commission measure of "production". The comparative gross commission numbers are seen in this figure below.



The big decline in gross commission income for Wachovia, as produced by Mr. Mitchell, can be by comparing the 2003-2004 period versus the 2005-2007 period.

---

[1] . His birthdate is January 15, 1955.

Earnings Loss Projection:  **Kenneth S. Mitchell v. Wachovia, et al.**

The earnings loss is a changing fraction of the projected gross commission loss. Wachovia has a variable "production" to "payout" ratio; the rates vary from a low of 20% on the first $200 thousand in 2007-2008 to 41% on gross commissions over $1,500,000 in 2007 (raised to $1,600,000 in 2008)[2].

The specific earnings loss projection that accompanies the loss in gross compensation production pictured above is found in Table 1. The past loss, for 2005-2007, is projected as $276,519 including past interest and an employer's 3.0% of earnings contribution to Mr. Mitchell's 401(k) plan. The loss for 2008 is projected as $61,060 with discounting; while the loss for 2009 is projected as $60,484 in discounted dollars. The loss for 2010-2016 totals to a discounted $347,794.

Combining the 2005-2016 numbers you get $745,857 as the probable and potential loss value for Mr. Mitchell.

These numbers are seen at the bottom right side of Table 1.

A more complete explanation of the projection methodology and assumptions is provided in the pages following.

I believe these are realistic and reasonable economic projections for Mr. Mitchell's past and future earnings loss potential based on the case specific material I reviewed, an interview with Mr. Mitchell, the other assumptions and references that I cite, and my experience. Please call with questions.

Appended:     Discussion of the Projections,
              Table 1 – Earnings Loss Projection Table,
              Table 2 – Comparing 2004 and 2005 Gross Commission Numbers
              Brief Vita for RFM

---

[2] . I have reviewed the Wachovia Securities, Investment Services Group _____ Financial Advisor Compensation Plans for each of the years 2005 to 2008.

Earnings Loss Projection:   **Kenneth S. Mitchell v. Wachovia, et al.**

### Discussion of the Projection Table

The numbers in Table 1 include both actual past numbers and projected past and future numbers. The sources of these numbers are discussed here, as follows:

Actual Gross Commissions for Mr. Mitchell

These numbers for Mr. Mitchell are found on a one-page printout individualized from Wachovia titled "FA's Commissions Report as of 11/30/2007". I did increase the 2007 gross commission's number to $70,000 as an estimate for a full 12 months based on $64,000 through November 2007[3]. Mr. Mitchell provided a copy to me.

I do show the past numbers on my page 1 figure.

I want to note that the gross commission numbers are rounded to the nearest thousand dollars. There are other forms which show the exact dollar and cents amounts for this historical data.

I have included, in Table 2, a comparison of commission numbers for the years 2004 and 2005 which shows that Mr. Mitchell's gross commission numbers decreased by over 50% from 2004 to 2005.

The monthly numbers are shown, with a 12 month total and average shown to the nearest dollar. I also include an 11 month total and average where I "trim" out the highest month. Mr. Mitchell had a very good month in March 2004 and this "trim" eliminates the effect of this single month. Even with this trim Mr. Mitchell's numbers decreased by over 50% for 2004 to 2005.

Some Comparative Data

The year 2007 gross commission data for a set of 10 Wachovia employees, to mid-December, showed a range of $229,402 to $1,006,039. The middle four of ten financial advisor's year-to-date commission numbers ranged from $353 to $401 thousand.

Mr. Mitchell's commissions number through November 2007 was just $64 thousand. His 2003 and 2004 numbers were much better.

Actual earnings – personal income

The past earnings numbers are complicated by two factors:

(1) Wachovia does provide some non-commission income to purchase items like health insurance and other types of fringe benefits such as dental and vision coverage. This income was between $4,000 and $5,000 per year in the 2003-2006 period. This source of income can be treated as "before-tax deductions" so does not always show up on the W-2 form. There is also an employee 401(k) contribution which lowers the taxable income.

(2) Mr. Mitchell received "forgivable loans" of $40 and $68 thousand in 2003 and 2004. This type of income is reported on the W-2 forms along with the payout from the commission income earned for Wachovia. However, the reporting of the forgivable loans is spread out from 2003 to 2009 so you get a total for the annual W-2 earnings which is not based solely on that year of work.

I have tried to isolate this complication by focusing only on the loss of payout based on the commission earnings for Wachovia.

Commission Growth

In our discussion Mr. Mitchell emphasized that he would have a gross commission value of $350,000 in 2005 had he not been moved and had his one branch location situation been more harmonious. I used this number as an earnings base for projection as it is compatible with the 2003 and

---

[3] . I will amend my commission and loss projection numbers for 2007 when I receive the final numbers for 2007.

Earnings Loss Projection:   **Kenneth S. Mitchell v. Wachovia, et al.**

2004 numbers. I assumed gross commission value growth of 10% per year for 2006 and 5% for 2007. I note that the Wachovia General Bank group "core deposit growth" was 40% from 2004 to 2006 with an 18% two year growth of revenue per financial center[4].

I assumed no growth for 2008 based on the current financial news. I then assumed 5% annual growth starting in 2009. I think these are conservative numbers for a Financial Advisor who is developing his business. I note that Jeremy Siegel, a relatively well known student of the stock market, is forecasting an 10% growth in stock prices for 2008[5].

I projected the employment period through to the end of 2016 and almost to age 62 which would be in January 2017[6].

Commission to Payout to Earnings

This progression of numbers is based on the projected "Deficit in Gross Commissions" found in Table 1. I then convert this deficit into a payout for the loss years of 2005 through 2008 based on the actual Wachovia payout percentages[7].

This is a slightly complicated calculation as the payout percentages per range of commission values change several times in the 2005-2008 period.

Projecting the Earnings Loss – the Back and Front Pay Loss

The ratio of the actual gross commissions to expected gross commissions is calculated for the years 2005 through 2008 in Table 1. The ratios are 40.0% for 2005, then 27.8% for 2006, and a projected 17.3% for 2007.

This ratio is increased for 2008. I am assuming a 50% ratio – a big improvement that is conservative given what happened in 2005-2007. The 50% ratio is assumed for the years after 2008.

The payouts, from gross commissions, for the years after 2008 are based on the projected 2008 payout ratio.

Discounting Back and Front Pay Loss

The back pay loss, for 2005 to 2007 is calculated with a simple, non-compounding, 11% interest rate for 2005 and 2006 and with a 10% rate for 2007[8]. This interest rate will be close to the precise numbers, which I developed for a recent case, but I will wait for a final date to calculate this past interest.

The future, or front, pay loss is discounted with a 4.0% rate for 2008 and then a 6.0% rate for 2009 and after. The 6.0% rate is high for a bond interest rate for the end of 2007. The discount rate going forward is compounded.

Summing up the Numbers

The discounted numbers are summed at the bottom of Table 1.

The basic calculation flow is to project the lost payout from lower commission income for Wachovia. Then calculate the discounting factor and multiply this with the lost payout to get the discounted loss. Then sum up the year-by-year loss projections.

I show totals for several periods. The five years from 2005 through 2009 add to $398,063 for example. The next seven years amount to $347,794.

---

[4] . I reviewed the Form 10-K for the Wachovia Corporation for the year ending December 31, 2006.

[5] . This forecast appears in a "Yahoo! Finance" article posted on December 14, 2007.

[6] . Mr. Mitchell mentioned the age 62 retirement date. At his age of nearly 53 a typical college educated male has a worklife expectancy of over 12 years.

[7] . I used the Wachovia Securities, Investment Services Group _____ Financial Advisor Compensation Plans for 2005-2008.

[8] . The interest rate used for the past or back pay is the Federal Reserve Discount rate plus 5.0%. This discount rate has changed four times this year. There is also another Federal Reserve interest rate.

Earnings Loss Projection:   Kenneth S. Mitchell v. Wachovia, et al.

## Table 1
## Earnings Loss Projection

| Year | Gross Commissions | Wachovia W-2 (SS) Number |
|---|---|---|
| 2003 | 233,000 | 90,901.50 |
| 2004 | 296,000 | 99,885.59 |
| 2005 | 140,000 | 72,841.75 |
| 2006 | 107,000 | 37,757.04 |
| 2007 | 70,000 <- est. | 37,121.00  <- based on 12/14/2007 pay statement, includes $18,179 forgivable loan value. |

**Factors and Assumptions**

| | | |
|---|---|---|
| Gross Commission Value for 2005 | $350,000 | |
| Commission growth from 2005 | 10.0% | for 2006 |
| | 5.0% | for 2007 |
| | 0.0% | for 2008 |
| | 5.0% | after 2008 |
| Commission Loss ratio from 2008 | 50.0% | of Expected Gross Commission |
| 401(K) match from employer | 3.0% | of earnings |
| Working to age 62, date is: | 1/15/2017 | Assume stops working end of 2016 |
| Discount rates  Past | 11.0% | higher 2005-2006 |
| Future | 4.0% | 6.0% lower for 2008, then higher; compounded |

for past interest, not compounded - will be calculated precisely if settled

| Year | Actual & Projected Gross Commissions | Expected Gross Commissions | Ratio: Actual to Expected | Deficit in Gross Commissions | Potential Payout Loss | Payout Ratio | Discounted Potential Payout Loss | Discount Factor from 1/1/2008 |
|---|---|---|---|---|---|---|---|---|
| | *Actual* | | | | | | | |
| 2003 | 233,000 | 233,000 | | 0 | | | | |
| 2004 | 296,000 | 296,000 | | 0 | | | | |
| 2005 | 140,000 | 350,000 | 40.0% | 210,000 | 62,500 | 29.76% | $79,688 | 1.275 |
| 2006 | 107,000 | 385,000 | 27.8% | 278,000 | 81,350 | 29.26% | $94,773 | 1.165 |
| 2007 | 70,000 <- estimated | 404,250 | 17.3% | 334,250 | 89,529 | 26.78% | $94,005 | 1.050 |
| | *Projected* | | | | | | | |
| 2008 | 202,125 | 404,250 | 50.0% | 202,125 | 60,465 | **29.91%** | $59,281 | 0.9806 |
| 2009 | 212,231 | 424,463 | | 212,231 | 63,478 | as above | $58,722 | 0.9251 |
| 2010 | 222,843 | 445,686 | | 222,843 | 66,652 | as above | $58,168 | 0.8727 |
| 2011 | 233,985 | 467,970 | | 233,985 | 69,985 | as above | $57,619 | 0.8233 |
| 2012 | 245,684 | 491,368 | | 245,684 | 73,484 | as above | $57,076 | 0.7767 |
| 2013 | 257,968 | 515,937 | | 257,968 | 77,158 | as above | $56,537 | 0.7327 |
| 2014 | 270,867 | 541,734 | | 270,867 | 81,016 | as above | $56,004 | 0.6913 |
| 2015 | 284,410 | 568,820 | | 284,410 | 85,067 | as above | $55,476 | 0.6521 |
| 2016 | 298,631 | 597,261 | | 298,631 | 89,320 | as above | $54,952 | 0.6152 |

| Summing up | | From Above | Add 401(k) | Combined | Cumulative |
|---|---|---|---|---|---|
| Past | 2005-2007 | $268,465 | $8,054 | $276,519 | $276,519 |
| Next year | 2008 | $59,281 | $1,778 | $61,060 | $337,579 |
| | 2009 | $58,722 | $1,762 | $60,484 | $398,063 |
| | 2010-2016 | $337,664 | $10,130 | $347,794 | $745,857 |

RFM, December 2007, page 5

Earnings Loss Projection:   **Kenneth S. Mitchell v. Wachovia, et al.**

Table 2
**Comparing the Gross Commission Numbers for 2004 and 2005**

MTD Personal Production

| Month | 2004 | 2005 | Difference: 2004-2005 |
|---|---|---|---|
| January | 20,904 | 8,359 | 12,545 |
| February | 28,597 | 1,097 | 27,500 |
| March | 74,162 | 20,759 | 53,403 |
| April | 17,099 | 16,469 | 630 |
| May | 4,860 | 5,995 | -1,135 |
| June | 15,444 | 10,594 | 4,850 |
| July | 35,412 | 13,864 | 21,548 |
| August | 19,216 | 40,785 | -21,569 |
| September | 17,446 | 7,420 | 10,026 |
| October | 20,651 | 4,424 | 16,227 |
| November | 28,583 | 6,159 | 22,424 |
| December | 20,810 | 3,811 | 16,999 |
| Total | $303,184 | $139,736 | $163,448 |
| Average | $25,265 | $11,645 | $13,621 |

Comment: 2004 numbers twice 2005 numbers

| | | | |
|---|---|---|---|
| *Total less Highest Mo.* | *229,022* | *98,951* | *130,071* |
| *Average* | *20,820* | *8,996* | *$11,825* |

Comment: 2004 numbers twice 2005 numbers



Earnings Loss Projection:   **Kenneth S. Mitchell v. Wachovia, et al.**

<div align="center">

**BRIEF VITA for ROBERT F. MINNEHAN**

**Focusing on experience appropriate for Lawcase Evaluations**

</div>

| | |
|---|---|
| **LAWCASE EXPERIENCE** | Since 1972 I have prepared advice and reports on over 1,750 cases. Most of these cases have been prepared for Delaware attorneys, but I have also worked with attorneys in Pennsylvania, Maryland, New Jersey, South Carolina, Virginia and the District of Columbia. Appearances in court or deposition over 175 times; with experience in Federal District, State Superior, Chancery and Family courts. Prepare testimony for both plaintiffs and defense. |
| **EDUCATION** | BS Civil Engineering, Univ. of Washington, Seattle, 1958.<br>Ph.D. Business and Economics, Univ. of California, Berkeley, 1967.<br>Continuing Education, Statistics and Forensic Evaluation (e.g. 1-'00, 1-'02, 3-'03, 1-'04, 2-'05, 3-'06, 1-'07). |
| **EMPLOYMENT HISTORY** | Currently I operate one self-owned research and consulting firm: FAXUAL DATA and SUPPORTING STATISTICS. I formerly operated a second firm, PROGRAM EVALUATION and PLANNING SERVICES, but stopped reporting under this tax ID number at the end of 2004. This former firm was a full-time venture focusing on government programs from 1978 to 1983, then was part-time while I worked at Thiokol, and was part-time before 1978. In the past I did contract research on evaluation of government programs; with specific areas such as youth employment, adolescent drug and alcohol use, HeadStart, Aging programs, mental and physical health clinical operations, Community Services and environmental problems. Federal agency contracts included DHEW/DHHS, DOL, and EPA in the U.S. and some government work in Canada. The newer firm has focused on economic and statistical data retrieval, analysis and publishing -- with an orientation towards data for litigation. |

<u>Employment Chronology</u>
1990-2007: primarily working on litigation consulting.
1983-1990: with Thiokol Corporation, working on projections of sales, profit, manpower, and cost analysis plus work on using statistics for process control predictions.
1978-1983: primarily consulting on health care program evaluation.
1971-1978: Associate professor at the University of Delaware.
1969-1971: Worked with consultants in Manhattan and Montreal.
1958-1969: employed by the Federal government on a full-time and part-time basis.

| | |
|---|---|
| **RELATED PUBLICATIONS** | "Types of Loss Claims in Catastrophic Injury Cases"; Published Notes for a presentation for the Defense Counsel of Delaware Seminar, Sept. 24, 1999, 17 pages. "An Application of the 9/11 Victim Compensation Fund Procedures As a General Economic Model for Establishing Punitive Damages"; 1st Annual Trans-Atlantic Dialogue, National Association of Forensic Economics, Edinburgh, Scotland, May 2004. "Victim Compensation Funds and Schedules of Damages"; 4th Annual Trans-Atlantic Dialogue, National Association of Forensic Economics, Barcelona, Spain, May 2007. |
| **RESEARCH INTERESTS** | I continue to do research and reading now, as I did when was a faculty member, but the primary focus is on economic and statistical topics related to law cases. There are several current interests including: (1) special projection problems for the older worker (such as total pension income including Social Security), and (2) economic loss projections and valuation in employment cases. |
| **SOCIETIES & READINGS** | I am a member of the National Association of Forensic Economists. I receive and read about 10 professional periodicals, plus daily financial newspapers.                 June 2007 |

Phone:   (302)-368-4807
Fax:       (302)-454-1290
E-mail: minnehan5@comcast.net

Address:
765 Arbour Drive
Newark, Delaware  19713

# EXHIBIT 2

| Code | YTD | | Code |
|---|---|---|---|
| 1 | 1,006,039 | High | 525 |
| 2 | 537,914 | | 559 |
| 6 | 514,951 | | 521 |
| 7 | 400,942 | | 518 |
| 4 | 397,223 | | 515 |
| 3 | 383,410 | | 568 |
| 5 | 353,072 | | 566 |
| 9 | 325,518 | | 561 |
| 10 | 251,600 | | 511 |
| 8 | 229,402 | Low | 567 |
| Average | 440,007 | | |



```
ROCO                                          12/17/07 12:05:02 001/020
FUNC LAST                 << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L525  T                            T/S T DATE 1207 SUB 020
L525
REP TOTAL                 TODAY       M-T-D                    Y-T-D
GRAND TOTAL:              1,431      50,476                1,006,039
                             25         903                   26,476
```

```
*********************************************************************
REP GRAND TOTALS:          1,431      50,476                1,006,039
                              25         903                   26,476
```

END OF INQUIRY.

```
ROCO                                                    12/17/07 12:05:23 001/020
FUNC LAST                      << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L559  T                                T/S T DATE 1207 SUB 020
L559
REP TOTAL                   TODAY       M-T-D                        Y-T-D
GRAND TOTAL:                   422      26,928                      537,914
                              156         782                       19,590




**********************************************************************
REP GRAND TOTALS:             422      26,928                      537,914
                              156         782                       19,590
END OF INQUIRY.
```

```
ROCO                                                12/17/07 12:05:52 001/020
FUNC LAST                    << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L568  T                                  T/S T DATE 1207 SUB 020
L568  ███████████████████
REP TOT███                   TODAY      M-T-D                       Y-T-D
GRAND TOTAL:                     0     20,426                     383,410
                                 4        372                       5,509




***********************************************************************
REP GRAND TOTALS:                0     20,426                     383,410
                                 4        372                       5,509
END OF INQUIRY.
```

LOCATION:                          RX TIME  04/09 '08 10:51

```
ROCO                                         12/17/07 12:06:06 001/020
FUNC LAST                    << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L515  T                        T/S T DATE 1207 SUB 020
L515
REP TOTAL                     TODAY      M-T-D                  Y-T-D
GRAND TOTAL:                      0     27,132                397,223
                                 5        217                  9,505




****************************************************************************
REP GRAND TOTALS:                0     27,132                397,223
                                 5        217                  9,505
END OF INQUIRY.
```

```
ROCO                                      12/17/07 12:06:16 001/020
FUNC LAST              << COMMISSION SUMMARY SCREEN >>
INQUIRY R                                 T/S T DATE 1207 SUB 020
L566
REP TOTAL              TODAY      M-T-D                    Y-T-D
GRAND TOTAL:              0     10,786                   353,072
                         2         87                     5,881



***********************************************************************
REP GRAND TOTALS:        0     10,786                   353,072
                         2         87                     5,881
END OF INQUIRY.
```

```
ROCO                                    12/17/07 12:07:12 001/020
FUNC LAST              << COMMISSION SUMMARY SCREEN >>
INQUIRY ▓▓▓▓▓▓▓▓▓▓         T/S T DATE 1207 SUB 020
L511
REP TOTAL          TODAY      M-T-D                    Y-T-D
GRAND TOTAL:         281      5,030                  251,600
                      3        254                    4,640




*******************************************************************
REP GRAND TOTALS:         281      5,030                  251,600
                            3        254                    4,640

END OF INQUIRY.
```

```
ROCO                                          12/17/07 12:07:01 001/020
FUNC LAST                << COMMISSION SUMMARY SCREEN >>
INQUIRY                                  T/S T DATE 1207 SUB 020
L561
REP TOTAL               TODAY      M-T-D                    Y-T-D
GRAND TOTAL:                0      7,708                  325,518
                            2        365                    6,061




***************************************************************************
REP GRAND TOTALS:           0      7,708                  325,518
                            2        365                    6,061
END OF INQUIRY.
```

```
ROCO                                        12/17/07 12:06:44 001/020
FUNC LAST                 << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L567  T                            T/S T DATE 1207 SUB 020
L567  ████████████
REP TOTAL               TODAY      M-T-D                    Y-T-D
GRAND TOTAL:              95       11,700                  229,402
                         12          148                    3,873
```

```
****************************************************************
REP GRAND TOTALS:         95       11,700                  229,402
                         12          148                    3,873
END OF INQUIRY.
```

```
ROCO                                            12/17/07 12:06:36 001/020
FUNC LAST                    << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L518  T                              T/S T DATE 1207 SUB 020
L518
REP TOTAL                    TODAY      M-T-D                    Y-T-D
GRAND TOTAL:                 1,575      15,034                 400,942
                                 7         369                  10,543
```

```
******************************************************************
REP GRAND TOTALS:            1,575      15,034                 400,942
                                 7         369                  10,543
END OF INQUIRY.
```

```
ROCO                                          12/17/07 12:06:27 001/020
FUNC LAST              << COMMISSION SUMMARY SCREEN >>
INQUIRY R  L521  T                            T/S T DATE 1207 SUB 020
L521
REP TOTAL            TODAY       M-T-D                      Y-T-D
GRAND TOTAL:             0      16,287                    514,951
                       39         427                      9,779




**********************************************************************
REP GRAND TOTALS:           0      16,287                   514,951
                           39         427                     9,779
END OF INQUIRY.
```