IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH S. MITCHELL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WACHOVIA CORPORATION, t/a WACHOVIA SECURITIES, WACHOVIA SECURITIES, LLC, WACHOVIA SERVICES, INC., WACHOVIA BANK OF DELAWARE, N.A., TODD D. GAUTHIER, LYNN G. MEYER, CAROLYN J. BEAM, and DOROTHY A. DIFEBO,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 06-725 (GMS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION *IN LIMINE*
TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE
CONCERNING JAMES FINNEY'S CHARGE OF DISCRIMINATION**

P. Clarkson Collins, Jr., (Bar I.D. #739)
pcollins@morrisjames.com
David H. Williams (Bar I.D. #616)
dwilliams@morrisjames.com
James H. McMackin, III (Bar I.D. #4284)
jmcmackin@morrisjames.com

MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800

Dated: April 17, 2008

David Bennet Ross (admitted *pro hac vice*)
dross@seyfarth.com
Devjani Mishra (admitted *pro hac vice*)
dmishra@seyfarth.com
Tara Smith Williams (admitted *pro hac vice*)
tawilliams@seyfarth.com

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendants

Defendants, by and through their undersigned counsel, respectfully submit this reply brief in further support of their motion *in limine* for an order precluding Plaintiff Kenneth Mitchell ("Plaintiff" or "Mitchell") from introducing any evidence concerning or referencing at trial any alleged harassment or discrimination of James K. Finney.

Plaintiff's Response in Opposition to Defendants' Motion *in Limine* to Bar Evidence of James Finney's Charge of Discrimination ("Pl. Br.") fails to establish that Finney's alleged experience at Wachovia's Prices Corner branch is relevant to the instant matter or that the probative value of Finney's testimony would outweigh its prejudicial effect. Critically, Plaintiff cannot show either (1) that Finney was similarly situated to him in any respect or (2) that Finney was subjected to the same alleged unlawful treatment.

Plaintiff ignores the fact that he and Finney are not similarly situated to one another. Instead, Plaintiff spends the bulk of his opposition brief making gross generalizations about Finney's employment and emphasizing that Defendant DiFebo was branch manager while both Finney and Plaintiff worked in Prices Corner. However, this fact alone is immaterial, particularly because DiFebo did not supervise either Finney or Plaintiff or control the terms or conditions of their employment.

A plaintiff seeking to cite the treatment of another employee as evidence of discrimination must first establish that he and the other employee are similarly situated in all material respects. *See EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990). This court has applied this concept in the precise context presented here, where a plaintiff seeks to introduce testimony of other employees who allege discrimination. For example, in *Keller v. City of Wilmington*, Nos. 03-774, 04-889 (JJF), 2006 U.S. Dist. LEXIS 14136, at *2 (D. Del. Mar. 30,

1

2006)¹, the court considered motions *in limine* to exclude testimony of other City employees alleging discrimination. The ruling judge's exclusion of the evidence was upheld because the court found that "[t]he jury would likely interpret the testimony of these witnesses, who were *not similarly situated* to Plaintiffs, as evidence of racial discrimination against Plaintiffs, when Plaintiffs were employed in different departments, performing different jobs, and working under different supervision." *Id.*, 2006 U.S. Dist. LEXIS 14136, at *6 (emphasis added).

Contrary to Plaintiff's contention, *Keller* is not only applicable but directly on point. *See* Pl. Br. at 3. As in *Keller*, Plaintiff and Finney are not similarly situated. *See Lepore v. LanVision Sys.*, No. 03-3619, 2004 U.S. App. LEXIS 21742, at *7 (3d Cir. 2004) ("[S]imilarly situated" means that two employees "work in the same area in approximately the same position"); *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004) (similarly situated employees have "the same job responsibilities"). Rather, as stated in Defendant's moving papers, Finney and Plaintiff worked for two different Wachovia entities, and did not have the same position, share any manager or supervisor or work in the same chain of command at any time. Indeed, Plaintiff even concedes that "Plaintiff and Mr. Finney worked at Prices Corner during different time periods" (Pl. Br. at 2), meaning that neither could have any first hand knowledge of the other's working conditions. In short, Finney and Plaintiff are not similarly situated and share nothing in common, other than that both happen to be African American males who worked in the Prices Corner branch at some point in time. Accordingly, as in *Keller*, it is proper to exclude Finney's testimony because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

---

¹ Unreported opinions are attached in the order in which they appear.

Further, Finney and Mitchell allege different kinds of discrimination by different actors. Finney claims that he was "touched inappropriately" and "struck with papers" by Petra Rash, a Teller Manager at Prices Corner. *See* Finney Aff. ¶ 4. Plaintiff, on the other hand, complains of alleged misconduct by various other individuals, none of whom is the subject of any of Finney's complaints. In *Keller*, the Court held that "testimony regarding the circumstances of employees subjected to *different conditions* would serve only to confuse and mislead [a] jury, a result which would cause undue prejudice to Defendants." *Id.*, 2006 U.S. Dist. LEXIS 14136, at *5 (citing Fed. R. Evid. 403) (emphasis added). *See also Stair v. Lehigh Valley Carpenters Local Union No. 600*, 813 F. Supp. 1116 (E.D. Pa. 1993) (holding that incidents that are too dissimilar from a plaintiff's situation are not relevant). Here, too, testimony regarding Finney's unrelated experience and unproven allegations of mistreatment by different actors would surely confuse and mislead the jury, while adding no useful insights concerning Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion *in limine* and exclude any evidence concerning James Finney's Charge of Discrimination either through Finney or Mitchell's testimony or through the admission of Finney's Charge of Discrimination as a trial exhibit.

MORRIS JAMES LLP

_____
P. Clarkson Collins, Jr. (#739)
pcollins@morrisjames.com
David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800

SEYFARTH SHAW LLP

David Bennet Ross (admitted *pro hac vice*)
Devjani Mishra (admitted *pro hac vice*)
Tara Smith Williams (admitted *pro hac vice*)
620 Eighth Avenue, Suite 3100
New York, NY 10018
(212) 218-5500

Attorneys for Defendants

Dated: April 17, 2008

LEXSEE 2006 US DIST LEXIS 14136

JOHN R. KELLER, et al., Plaintiffs, v. CITY OF WILMINGTON, et al., Defendants.

Civil Action Nos.: 03-774-JJF, 04-899-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 14136

March 30, 2006, Decided

**PRIOR HISTORY:** *Keller v. City of Wilmington,* 2005 U.S. Dist. LEXIS 25847 (D. Del., Oct. 31, 2005)

**COUNSEL:** [*1] Philip B. Bartoshesky, Esquire of BIGGS AND BATTAGLIA, Wilmington, Delaware. Attorney for Plaintiffs.

Marvin C. Meltzer, Esquire of CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware. Attorney for Defendants.

**JUDGES:** Joseph J. Farnan Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION**

*MEMORANDUM OPINION*

March 30, 2006

Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Plaintiff's Motion For New Trial (D.I. 157). For the reasons discussed, the Motion will be denied.

**I. BACKGROUND**

On August 1, 2003, Plaintiffs filed a complaint alleging racial discrimination, hostile work environment, and harassment in violation of Title VII of the Civil Right Act of 1964, *42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981,* and *42 U.S.C. § 1983.* Plaintiff Carla Perez is a Caucasian female and was previously employed in the Sanitation Department of the City of Wilmington. Plaintiff Ramon Perez is a Hispanic male who previously worked in the Sanitation Department and who is currently working in the Street Cleaning Division of the City of Wilmington. Plaintiffs [*2] contend that they have been subjected to a continuing course of race-based employment discrimination by Defendants.

This case was originally assigned to Chief Judge Robinson. Prior to transfer, Judge Robinson ruled on several motions in limine. As a result of those rulings, the testimony of other City of Wilmington employees alleging discrimination was excluded absent evidence that the employees were exposed to the same decision makers as Plaintiffs. The Court also ruled that Mayor Baker's testimony regarding the 1995 layoffs and Mayor Sills' comments about those layoffs were inadmissible.

The Court held a pretrial conference on January 23, 2006, at which the Court affirmed Judge Robinson's previous in limine rulings. The Court conducted a four-day trial beginning February 6, 2006. The jury returned a verdict in favor of Defendants. Plaintiffs now move for a new trial on the basis that the Court committed prejudicial error by excluding certain testimony during trial.

**II. Standard of Review**

In relevant part, *Rule 59 of the Federal Rules of Civil Procedure* provides:

> A new trial may be granted to all or any of the parties and [*3] on all or part of the

issues . . . in an action which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

*Fed. R. Civ. P. 59(a)*. The district court has broad discretion to grant or deny a new trial. *Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S. Ct. 188, 66 L. Ed. 2d 193 (1980)*. "A new trial may be granted where the verdict is against the clear weight of the evidence, damages are excessive, the trial was unfair, or substantial errors were made in the admission or rejection of evidence or the giving or refusing of instructions." *Threadgill v. Manville Corp. Asbestos Disease Compensation Fund, 1990 U.S. Dist. LEXIS 19083, at *3 (D. Del. 1990)* (citing *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp., 576 F. Supp. 107, 124 (D. Del. 1983))*. A new trial is warranted based on a court's decision to admit or exclude evidence if that ruling affects a substantial right of a party. *Becker v. ARDCO Chem. Co., 207 F.3d 176, 180 (3d Cir. 2000)*.

### III. Discussion

Plaintiffs contend that the Court erred with respect [*4] to two evidentiary rulings: (1) the decision to exclude as unduly prejudicial and confusing the testimony of Mayor Baker as it related to the 1995 lay-offs and comments made by then-Mayor Sills and (2) the decision to exclude as unduly prejudicial the testimony of other City of Wilmington employees who alleged discriminatory employment practices.

As to Mayor Baker's testimony, Judge Robinson determined, and parties agreed, that Plaintiffs' instant claims of discrimination have no connection to the 1995 lay-off or the comments made by then-Mayor Sills (D.I. 157, Exhibit 1 at 11, 13). Specifically, Judge Robinson concluded that Mayor Sills' comments were directed solely to the 1995 lay-offs and litigation following those lay-offs, and therefore, such evidence would be unduly prejudicial because it was too far removed from Plaintiffs' situation. The Court agrees and concludes that because the 1995 lay-offs and related comments have no connection to Plaintiffs' claims, the danger of unfair prejudice substantially outweighs any probative value the testimony may have. *Fed. R. Evid. 403*. Furthermore, the introduction of such evidence would likely confuse the jury by creating the appearance [*5] that Plaintiffs were somehow connected to the 1995 lay-offs. Accordingly, the Court concludes that exclusion of this evidence was not a substantial error requiring a new trial.

Second, Plaintiffs challenge the Court's "blanket" exclusion of the testimony of other employees who allege that Defendants subjected them to discriminatory employment practices. Plaintiffs, however, misinterpret the Court's Order. The Court's November 8, 2005 Order (D.I. 124) states that such evidence would be admissible provided that Plaintiffs could show that the witnesses offering the testimony were exposed to the same decision makers as Plaintiffs. This was not a blanket exclusion; only those witnesses whose employment conditions were impacted by decision makers different than those of Plaintiffs were excluded from testifying at trial. Judge Robinson properly concluded that testimony regarding the circumstances of employees subjected to different conditions would serve only to confuse and mislead the jury, a result which would cause undue prejudice to Defendants. *Fed. R. Evid. 403*; *United States v. Butch, 256 F.3d 171, 175-76 (3d Cir. 2001)* (even where evidence could be admissible [*6] under *Rule 404(b)*, the Court must conduct a balancing test to determine whether the probative value is substantially outweighed by the prejudicial effect). The jury would likely interpret the testimony of these witnesses, who were not similarly situated to Plaintiffs, as evidence of racial discrimination against Plaintiffs, when Plaintiffs were employed in different departments, performing different jobs, and working under different supervision. Accordingly, the Court concludes that the evidence was properly excluded, and Plaintiffs' Motion For New Trial will be denied.

### IV. CONCLUSION

For the reasons discussed, the Court will deny Plaintiffs' Motion For New Trial (D.I. 157).

An appropriate Order will be entered.

### ORDER

At Wilmington, this 30 day of March 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion For New Trial (D.I. 157) is ***DENIED***.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

LEXSEE 2004 U.S. APP. LEXIS 21742

JANE LEPORE, Appellant v. LANVISION SYSTEMS, INC.

No. 03-3619

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

113 Fed. Appx. 449; 2004 U.S. App. LEXIS 21742

September 28, 2004, Submitted Under Third Circuit L.A.R. 34.1(a)
October 19, 2004, Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court For the Eastern District of Pennsylvania. (Civ. No. 00-cv-04144). District Judge: Honorable Petrese B. Tucker.
Lepore v. Lanvision Sys., 2003 U.S. Dist. LEXIS 15555 (E.D. Pa., July 31, 2003)

**DISPOSITION:** Affirmed.

**COUNSEL:** For JANE LEPORE, Appellant: Michael J. Wietrzychowski, Cureton Caplan, Delran, NJ.

For LANVISION SYS INC, Appellee: Alan J. Hartman, David W. Burleigh, Deters, Benzinger & Lavelle, Cincinnati, OH.

**JUDGES:** Before: ROTH, BARRY, and GARTH, Circuit Judges.

**OPINION BY:** Garth

**OPINION**

[*450] Garth, Circuit Judge:

Appellant Jane Lepore appeals from the District Court's grant of summary judgment in favor of Appellee LanVision Systems, Inc. ("LanVision") on Lepore's claims of sex and/or pregnancy discrimination and retaliation. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

I.

Because we write solely for the benefit of the parties, we recount the facts and procedural history only as they are relevant to the following discussion.

[**2] LanVision is a software developer with its headquarters located in Cincinnati, Ohio. Jane Lepore began working for LanVision at its headquarters on July 8, 1996, as a Project Manager. In February 1997, LanVision reorganized and Lepore was transferred to Indirect Sales as an Application Specialist. Several months later, Lepore assisted her supervisor, Paul Burke, in the search for two additional application specialists to join the Indirect Sales team. That search resulted in the hiring of Nick Jovings and Mark Zajicek.

As a result of a second reorganization, in April 1998, the Indirect Sales team was dissolved and Lepore, Jovings and Zajicek were transferred to Direct Sales. Lepore retained her position as Application Specialist and began reporting to Larry Smeage, the National Director of Sales. One [*451] month later, Jovings left Direct Sales and was assigned to Professional Services.

Lepore was pregnant and nearing her due date when she was transferred. Smeage assigned Lepore to work under Terry Costello, a Direct Sales team leader, for the interim period before her maternity leave was to commence. Prior to Lepore's leave, Smeage and Lepore had a discussion about Lepore's upcoming [**3] childbirth and issues related to childcare. Smeage conveyed his wife's difficulty with leaving her child and returning to work, and in particular their difficulties in

finding childcare. According to Smeage, "basically [he] let her [Lepore] know that as far as childcare, and so on, that she may want to look into that . . . proactively, since she - you know, part of her job is to be on the road traveling." Smeage Dep. at 18. After Lepore told Smeage that she had already arranged for childcare, Smeage responded "I don't know, you might change your mind after having your first baby, you might not want to come back to work." *Id.* at 204-205. Lepore testified that she did not believe Smeage's raising the childcare issue was discriminatory, but that she "was dumbfounded that he would discourage [her] . . . ." *Id.* at 205-206.

Lepore went on medical leave on May 11, 1998. She gave birth on May 21, 1998, at which time her maternity leave officially began. During her leave, Lepore moved to Philadelphia, Pennsylvania with her husband and child. Lepore's statutorily-mandated 12-week maternity leave expired on July 21, 1998. Lepore informed Terry Costello that she did not intend to [**4] return to work until August 12, 1998, taking a combination of paid and unpaid leave for the remaining period.

Adopting a program of company-wide downsizing, between February 1, 1998 and January 31, 1999, LanVision reduced its workforce from 123 to 75 employees through terminations and resignations. In particular, management decided to keep only one Application Specialist in the Direct Sales group. Smeage chose to keep Terry Costello, the team leader. Lepore testified that Costello was the right person to retain because of her seniority and experience. *See* Lepore Dep. at 294. On August 6, 1998, Smeage informed Lepore that she had been terminated. LanVision laid off 12 percent of its workforce during that time. Zajicek transferred to Professional Services on the West Coast for one month until he too was laid off in September 1998.

II.

The District Court granted summary judgment in favor of LanVision. First, it found that Lepore failed to make out a *prima facie* case of gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq.*, the Family and Medical Leave Act ("FMLA"), *29 U.S.C. § 2601* [**5] *et seq.*, and the *Pennsylvania Human Relations Act* ("PHRA"), *43 P.S. § 951 et seq.*, in connection with her termination by LanVision. The District Court determined that Lepore was terminated as part of a corporate reorganization that included a reduction in force, and that no similarly situated individuals outside the protected class were retained.

Second, the District Court rejected Lepore's FMLA claim for LanVision's failure to reinstate her upon her return from maternity leave, finding that Lepore failed to satisfy her evidentiary burden of demonstrating either discriminatory intent or retaliation.

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court, i.e., whether there are any [*452] genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff. *Fed. R. Civ. P. 56(c)*; *Debiec v. Cabot Corp., 352 F.3d 117, 128 n. 3 (3d Cir. 2003)* (citation omitted). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses [**6] . . . ." *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Applying that standard here, we conclude that the District Court properly granted summary judgment in favor of LanVision.

A. Title VII and PHRA

In order to make out a *prima facie* case of discrimination in a reduction in force case arising under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position in question, (3) she was terminated, and (4) individuals not within the protected class were retained. *In re Carnegie Center Assocs., 129 F.3d 290, 294-95 (3d Cir. 1997)* (citation omitted). Once the *prima facie* case is successfully made, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. *See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*; *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. If the defendant meets this burden, the plaintiff must then prove that the defendant's reason was a pretext for a discriminatory [**7] motive. *Burdine, 450 U.S. at 254*. Claims arising under the PHRA are governed by the same legal standard as that applied to Title VII. *See Gomez v. Allegheny Health Servs., 71 F.3d 1079, 1083-84 (3d Cir. 1995)* (citations omitted).

The central issue here is whether Lepore satisfied the fourth prong of the *prima facie* case, that is, whether she demonstrated that individuals not within the protected

class were retained. In a reduction in force case, the persons outside the protected class are those employees who are "similarly situated," that is, they work in the same area in approximately the same position. *See Anderson v. CONRAIL, 297 F.3d 242, 249-50 (3d Cir. 2002)*.

Lepore points to Jovings and Zajicek as the retained individuals outside the protected class. She claims that these "two male peers with less seniority and experience . . . were retained" while she was terminated. Lepore Br. at 7. We agree with Lepore that the comparison to Jovings and Zajicek was proper. We conclude, however, that neither of those individuals was retained and therefore Lepore fails to make a successful *prima facie* case.

As [**8] to Jovings, it is undisputed that he transferred out of Direct Sales before Lepore left for maternity leave and before the August 1998 reduction in force. With respect to Zajicek, while it is true that he transferred to Professional Services for one month, it is undisputed that he was laid off in September 1998 as part of the same reduction in force that resulted in Lepore's termination. Because Lepore cannot point to any similarly situated employees outside of the protected class who were retained, the District Court correctly concluded that Lepore failed to establish a *prima facie* discrimination case.

In the alternative, Lepore argues that she has produced direct evidence of discrimination and that therefore we should also analyze her claim under the mixed motives analysis set forth in *Price Waterhouse v. Hopkins, 490 U.S. 228, 276, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989)*. A plaintiff attempting to prove discrimination by direct evidence faces a "high hurdle." *Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998)*. Specifically, [*453] the evidence must demonstrate that the "decision makers placed substantial negative reliance on an illegitimate criterion [**9] in reaching their decision." *Id.* In putting forth her mixed motives claim, Lepore relies mainly on her childcare conversation with Smeage, a conversation she admitted was not discriminatory. Furthermore, Lepore offers no evidence that "addresses directly the reasons for implementing the [reduction in force]." *Anderson, 297 F.3d at 249*. Based on the foregoing, we find Lepore has not cleared the high evidentiary hurdle of *Price Waterhouse*. Her mixed motives claim was therefore properly rejected.

**B. FMLA**

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. *Conoshenti v. Public Svce. Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004)*. Once a plaintiff makes out a *prima facie* case, the usual *McDonnell Douglas*, see *supra*, burden shifting framework is implicated. *See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001)*.

The District Court found that Lepore successfully made out a *prima facie* case under the FMLA. However, [**10] in its analysis, it appears to have confused the requirements for a *prima facie* retaliation case with those for a *prima facie* discrimination case. Consequently, on appeal, the parties argue at length about whether the temporal proximity of Lepore's termination to the end of her maternity leave satisfies the causal connection prong of a *prima facie* retaliation case. We need not decide that here, however, because even assuming *arguendo* that Lepore made out a *prima facie* retaliation case, summary judgment was still proper.

In response to Lepore's claim of retaliation, LanVision proffers the reduction in force as its legitimate, non-discriminatory business reason for terminating her. Lepore offers no evidence that the reduction in force was pretextual. Indeed she offers no evidence that directly addresses the decision to implement the reduction in force in any way. Lepore's only evidence is her conversation with Smeage which, as we noted above, Lepore herself admitted was not discriminatory. Consequently, Lepore fails to carry her burden of proof on her FMLA retaliation claim and summary judgment was properly awarded. [1]

> 1   Like the District Court below, we need not address LanVision's contention that the FMLA is inapplicable under *29 U.S.C. § 2611(2)(B)(ii)* (FMLA does not cover an employee who is employed at a worksite at which the employer employs less than 50 employees if the total number of employees working within 75 miles of that worksite is less than 50) because Lepore's FMLA claim fails on the merits.

[**11] **III.**

LanVision moved to impose costs and sanctions on Lepore, or, in the alternative, to dismiss Lepore's appeal, claiming that Lepore engaged in an undue pattern of delay. We will deny both motions.

### IV.

Accordingly, we will AFFIRM the judgment of the District Court.